Matthew J. Craig (SBN 350030)
*mcraig@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Telephone: (929) 294-2542
Facsimile: (212) 564-0883

John C. Quinn*
*jquinn@heckerfink.com*
Benjamin S. Spiegel*
*bspiegel@heckerfink.com*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883

*Counsel for Defendants Wirtz Law APC and Richard M. Wirtz*

* *Pro hac vice* application pending

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KNIGHT LAW GROUP LLP; STEVE B. MIKHOV; AMY MORSE; ROGER KIRNOS; DOROTHY BECERRA; THE ALTMAN LAW GROUP; BRYAN C. ALTMAN; WIRTZ LAW APC; and RICHARD M. WIRTZ,<br><br>Defendants. | Case No.: 2:25-cv-04550-MWC-PVC<br><br>**DEFENDANTS WIRTZ LAW APC AND RICHARD M. WIRTZ'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: December 12, 2025<br>Time: 1:30 pm<br>Judge: Hon. Michelle Williams Court<br>Courtroom: 6A<br>Trial Date: None Set |

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 12, 2025 at 1:30 pm, or as soon thereafter as the matter shall be heard, in Courtroom 6A of the First Street Courthouse, located at 350 West 1st Street, Los Angeles, California 90012, before the Honorable Michelle Williams Courts, Defendants Wirtz Law APC and Richard M. Wirtz, by and through their counsel of record, will move for an order dismissing with prejudice the complaint of Plaintiff Ford Motor Company alleging violations of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is based on this notice of motion and motion; the accompanying memorandum of points and authorities; the concurrently filed motion of Defendants Knight Law Group LLP, Steve B. Mikhov, Amy Morse, Roger Kirnos, and Dorothy Becerra; and such other further evidence and argument as may be presented at any hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place via telephone on July 17, 2025. *See* Declaration of Matthew J. Craig.

Dated: Los Angeles, CA
July 25, 2025

Respectfully submitted,

Matthew J. Craig
HECKER FINK LLP

*Counsel for Defendants Wirtz Law APC and Richard M. Wirtz*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT FACTUAL BACKGROUND ................................................................2

ARGUMENT ................................................................................................................3

    I.    Ford Has Not Pleaded That The Wirtz Defendants Directed The Alleged Enterprise ....................................................................................4

    II.    Ford Fails To Plausibly Allege That The Wirtz Defendants Engaged In A Pattern Of Racketeering ......................................................6

    III.    Ford Fails To Plausibly Allege That Wirtz Defendants Were Parties To Any Rico Conspiracy ............................................................10

CONCLUSION ...........................................................................................................12

- i -

DEFENDANTS WIRTZ LAW APC AND RICHARD M. WIRTZ'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acres Bonusing, Inc. v. Ramsey*,
   No. 19 Civ. 05418, 2022 WL 17170856 (N.D. Cal. Nov. 22, 2022) ................4

*Allwaste, Inc. v. Hecht*,
   65 F.3d 1523 (9th Cir. 1995) ...................................................................................9

*Baumer v. Pachl*,
   8 F.3d 1341 (9th Cir. 1993) ...................................................................................11

*Boyle v. United States*,
   556 U.S. 938..............................................................................................................5

*Chung Goh v. Prima Fin. Grp., Inc.*,
   03630, 2017 WL 7887860 (C.D. Cal. July 26, 2017)........................................10

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   No. 09 Civ. 0511, 2010 WL 384736 (N.D. Cal. Jan. 29, 2010) .........................8

*H.J., Inc. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989).............................................................................................7, 9

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992)..................................................................................................8

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ......................................................................9, 10, 11

*I.T.C. Int'l, LLC v. Am. Voyage Corp., Inc.*,
   No. 08 Civ. 844, 2008 WL 11342745 (C.D. Cal. Sept. 26, 2008) ....................9

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .............................................................................8

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ............................................................................11

- ii -

DEFENDANTS WIRTZ LAW APC AND RICHARD M. WIRTZ'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Mattel, Inc. v. MGA Ent., Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................................. 8

*Natomas Gardens Inv. Grp., LLC v. Sinadinos*,
    710 F. Supp. 2d 1008 (E.D. Cal. 2010) ............................................................. 10

*Religious Tech. Ctr. v. Wollersheim,* |
    971 F.2d 364, 366 (9th Cir. 1992) ................................................................... 10

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ................................................................................. 4, 5, 6

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................................. 5

*Tatung Co. v. Shu Tze Hsu*,
    217 F. Supp. 3d 1138 (C.D. Cal. 2016) ........................................................... 4, 5

*Turner v. Cook*,
    362 F.3d 1219 (9th Cir. 2004) ........................................................................ 6, 9

*United States v. Fernandez*,
    388 F.3d 1199, 1230 (9th Cir. 2004) ........................................................... 10, 11

*Van Galder v. Clark*,
    No. 17 Civ. 1623, 2018 WL 1071708 (S.D. Cal. Feb. 27, 2018) ..................... 10

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................... 8

*Wagh v. Metris Direct Servs., Inc.*,
    348 F.3d 1102 (9th Cir. 2003) ......................................................................... 11

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) ........................................................................... 6

*In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011) ......................................................... 6, 7

- iii -

DEFENDANTS WIRTZ LAW APC AND RICHARD M. WIRTZ'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**STATUTES**

18 U.S.C. § 1961(5) ............................................................................................................6

18 U.S.C. § 1962(c) .........................................................................................................4, 6

18 U.S.C. § 1964(c) ............................................................................................................8

Cal. Civil Code § 1790 .......................................................................................................2

- iv -

DEFENDANTS WIRTZ LAW APC AND RICHARD M. WIRTZ'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**PRELIMINARY STATEMENT**

Plaintiff Ford Motor Company aims most of its complaint at Defendant Knight Law Group LLP ("KLG"), three KLG attorneys, and a KLG paralegal (together, the "KLG Defendants"). But no doubt aware that it could not make out a RICO claim premised on the alleged conduct of a single law firm and its employees, Ford reached to expand the number of parties to this action. But in naming Defendants Wirtz Law APC and Richard Wirtz (together, the "Wirtz Defendants"), Ford has done little more than add two paragraphs to the "Parties" section of its complaint and then rely on impermissible group allegations to try to paint all Defendants with the same brush.

In fact, Ford alleges just one instance of billing irregularity by Richard Wirtz and one instance by another Wirtz Law attorney (who is not a party to this suit)—and both alleged instances occurred in litigation *that did not involve Ford*. As for the single alleged case against Ford in which the Wirtz Defendants did appear as counsel, Ford identifies no billing errors at all, much less any billing fraud, in connection with the $38,270.98 fee award that the Wirtz Defendants received from the presiding court.

The claims against all Defendants should be dismissed for the numerous reasons set forth in KLG Defendants' brief. And given the few flimsy and off-the-mark allegations about them, there are yet additional reasons to dismiss the claims against the Wirtz Defendants. Ford does not allege that the Wirtz Defendants directed the purported RICO enterprise, and the three identified cases in which they co-counseled with the KLG Defendants certainly do not permit an inference that the Wirtz Defendants somehow managed a scheme that involved tens of thousands of separate litigations. Nor does Ford allege that the Wirtz Defendants themselves engaged in a pattern of racketeering activity, let alone one that harmed Ford. Ford's RICO conspiracy claim fails as well, including because the complaint does not plead or permit an inference that the Wirtz Defendants assented to a scheme that allegedly involved more than $100 million in unlawful billing. As set forth more fully below, Ford's claims against the Wirtz Defendants should be dismissed with prejudice.

# RELEVANT FACTUAL BACKGROUND

Ford alleges that, since 2015, Defendants have conspired to fraudulently inflate the attorneys' fees to which they were entitled following successful litigation against automakers under California's Lemon Law, the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq. See* Compl. ¶¶ 1–5, 19–23. Ford characterizes Steve Mikhov, KLG's former managing partner, as the purported "ringleader" of the alleged scheme, *id.* ¶¶ 2, 68, and names as co-conspirators KLG, two other KLG attorneys and a KLG paralegal; the Altman Law Group and a former Altman Law Group partner (together, the "Altman Defendants"); and the Wirtz Defendants, *id.* ¶¶ 7–15. A full summary of Ford's complaint is set forth in the KLG Defendants' brief. *See* ECF 65-1 ("KLG Br.") 15–19.

Ford makes only three allegations about the Wirtz Defendants.

*First*, Ford alleges that two Wirtz attorneys working on two concurrent cases—identified as *Choi v. BMW of N. Am. LLC,* No. BC638274 (Cal. Super. Ct., L.A. Cnty.), and *Jordan v. Ford Motor Co.*, No. RG16820118 (Cal. Super. Ct., Alameda Cnty.)—submitted billing entries that exceeded 24 hours in connection with different trials on the same day. Specifically, Ford claims that Richard Wirtz billed 29 hours on July 24, 2018, to attend both trials, and that Amy Smith billed 25.2 hours on July 18, 2018, to work on both trials and to work on an unidentified third case. Compl. ¶¶ 32–33. Ford does not make specific allegations regarding scienter, but more to the point, Ford misidentifies the defendant in *Jordan*. That case is captioned *Jordan v. FCA US LLC*, meaning Fiat Chrysler Automobiles, not Ford, was the defendant who paid the fee award. *See* ECF 65-9, 2. How that could still support a claim by Ford, the complaint does not say.

*Second*, Ford alleges that the Wirtz Defendants served as co-counsel with the KLG Defendants on two cases, *Beltran v. FCA US LLC*, No. BC617905 (Cal. Super. Ct., L.A. Cnty.), and *Vargas v. FCA US LLC*, No. 30-2016-00856531 (Cal. Super. Ct., Orange Cnty.), for which KLG received checks reflecting both firms' work.

Compl. ¶ 52. Ford does not identify any fraud by the Wirtz Defendants in connection with those fee payments—and certainly does not explain how it could be injured as a result of payments made by another automaker. To the contrary, Ford itself explains that it "will often make a single payment via check to both KLG and [another] firm" to pay fee awards in cases involving multiple firms, *id.* ¶ 51, obviating any insinuation that there is something inappropriate about a single check being issued in such circumstances. In all events, both of the cases were against Fiat Chrysler—not Ford.

*Third*, Ford alleges that it made a $38,270.98 payment via FedEx to the Wirtz Defendants on May 10, 2022, in connection with the case *Anderson v. Ford Motor Co.*, No. 39-2013-00299512 (Cal. Super. Ct., San Joaquin Cnty.), in which the KLG Defendants served as co-counsel. *See* Compl. ¶ 57. This time at least Ford identifies a case in which it was the defendant. But, critically, it identifies no improper billing. Although Ford makes an impermissible conclusory allegation that "[o]n information and belief" "all of [its] checks were sent in reliance on false, fraudulent, and inflated fee applications or billing statements," Ford does not identify any errors, let alone fraud, in the fee application that Richard Wirtz submitted in the *Anderson* case. *Id.* ¶¶ 57–58. In other words, *Anderson* is the only instance specified in the entire complaint in which the Wirtz Defendant served as counsel in a case against Ford, and Ford cannot allege anything improper about the billing, or about the basic concept of having two law firms appear in a single case.

Put simply, Ford's complaint identifies no alleged improper billing by the Wirtz Defendants—to say nothing of fraud, conspiracy, or participation in a RICO enterprise—that Ford claims caused it harm.

## ARGUMENT

Consistent with the Court's order permitting reallocation of pages among Defendants' briefs, *see* ECF 51, the KLG Defendants have identified more than half a dozen independent bases on which to dismiss the claims against all Defendants: the

*Noerr-Pennington* doctrine bars this Court from hearing Ford's claims;[1] Ford fails to allege any of the basic elements of a substantive RICO claim against any Defendant; Ford fails to state a RICO conspiracy claim against any Defendant, both because its substantive RICO claim fails and because the conspiracy claim rests on impermissible conclusory allegations; Ford's claims are beyond the statute of limitations; and Ford's claims are barred by the doctrines of claim and issue preclusion. The Wirtz Defendants incorporate each of the arguments from the KLG Defendants' brief into their own motion.

Due to the paucity of allegations against the Wirtz Defendants, the claims against them should be dismissed for yet additional reasons. Those additional bases for dismissal are as follows.

## I. FORD HAS NOT PLEADED THAT THE WIRTZ DEFENDANTS DIRECTED THE ALLEGED ENTERPRISE

To be liable under RICO, a defendant must "'participate, directly or indirectly, in the conduct of [a RICO] enterprise's affairs,'" meaning that the defendant "must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (quoting 18 U.S.C. § 1962(c)). In evaluating this "conduct" element, courts in the Ninth Circuit consider "whether that defendant (1) gave or took directions; (2) occupied a position in the chain of command through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to the achievement of the enterprise's goal." *Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1152–53 (C.D. Cal. 2016) (internal citation and quotation marks omitted). To survive a motion to dismiss, a complaint

---

[1] For reasons similar to those underlying the *Noerr-Pennington* doctrine, "district courts from around the country have found that litigation activities will not serve as predicate acts unless there are allegations of wrongdoing outside of the litigation, such as out-of-court activity or corruption." *Acres Bonusing, Inc. v. Ramsey,* No. 19 Civ. 05418, 2022 WL 17170856, at *11 (N.D. Cal. Nov. 22, 2022). Because alleged litigation misconduct is the entire basis for Ford's claims against all Defendants, this line of cases provides a complementary but distinct reason to dismiss the complaint.

- 4 -

may not "merely lump multiple defendants together"; instead, it must "differentiate" its allegations to "inform" each defendant of the allegations particular to their alleged participation. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

There are multiple reasons why Ford fails to plausibly allege that *any* Defendant participated in the operation or management of a RICO enterprise: Ford has failed to plead anything separate from the alleged racketeering to show the requisite conduct in directing the purported enterprise; participation in normal business activities like a co-counsel relationship does not suffice to plead or permit an inference of enterprise conduct; and conduct undertaken to further a Defendant's own financial self-interest does not reflect conduct in furtherance of an enterprise's affairs. *See* KLG Br. 30–34.

The allegations with respect to the Wirtz Defendants contain even more deficiencies that leave the complaint well short of pleading that the Wirtz Defendants directed the alleged enterprise.

*First*, the only (impermissibly generalized) allegation that even hints at enterprise conduct is that the purported enterprise was "at certain times ... led by Defendants Mikhov and KLG." Compl. ¶ 68. Ford has not made even the same conclusory allegation with respect to the Wirtz Defendants, and certainly has not pleaded any facts indicating that the Wirtz Defendants took any steps to "direct[] the enterprise's affairs," as opposed to simply conduct "their own affairs." *Reves*, 507 U.S. at 179, 185. Indeed, the minimal allegations of actual conduct by the Wirtz Defendants—their submission of fee applications in the *Choi* and *Jordan* cases, their work as co-counsel in *Beltran* and *Vargas* cases in which the KLG Defendants deposited checks reflecting the full counsel group's fee award, and their work as co-counsel in the *Anderson* case in which the Wirtz Defendants applied for and received their own fee award, *see* Compl. ¶¶ 32–33, 52, 57—reflect the sort of independent conduct that is *inconsistent* with enterprise conduct. *See Tatung Co.*, 217 F. Supp. 3d at 1152–53; *see also Boyle v. United States*, 556 U.S. 938, 947 n.4 (RICO violation is

- 5 -

not established by showing that various defendants engaged in predicate acts "independently and without coordination").

*Second*, even if were permissible to consider co-counseling on litigation as potentially reflecting enterprise conduct, *but see* KLG Br. 30–34; *In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*, 865 F. Supp. 2d 1002, 1034–35 (C.D. Cal. 2011) ("[T]he existence of a business relationship … without more does not show that [defendant] conducted the enterprise."), the three cases in the complaint where the Wirtz Defendants co-counseled with the KLG Defendants hardly supports an inference that the Wirtz Defendants played a role in "directing th[e] affairs," *Reves*, 507 U.S. at 179, of a much broader RICO enterprise, one that allegedly carried out a fraudulent billing scheme across "tens of thousands of cases," Compl. ¶ 73. Indeed, Ford does not even allege that the Wirtz Defendants engaged in fraud in connection with any of the three specifically enumerated cases, and Ford does not allege that the Wirtz Defendants co-counseled or otherwise communicated with the Altman Defendants at any point. *Supra* at 2–3. At bottom, the enterprise conduct element requires more than "simply being involved" in an enterprise, and "[s]imply performing services for the enterprise does not rise to the level of direction." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). Ford has not even made plausible allegations that the Wirtz Defendants were involved in, let alone managed or operated, an enterprise that carried out a "massive and years-long scheme." Compl. ¶ 1.

## II. FORD FAILS TO PLAUSIBLY ALLEGE THAT THE WIRTZ DEFENDANTS ENGAGED IN A PATTERN OF RACKETEERING

Liability under RICO also requires that a defendant have participated in "a pattern of racketeering activity." 18 U.S.C. § 1962(c). A pattern requires there to be "at least two acts of racketeering activity within ten years of one another." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citing 18 U.S.C. § 1961(5)). But identifying two predicate acts is not itself sufficient to establish a pattern. Instead, a defendant must also plausibly allege "a relationship between the predicates and of the

threat of continuing activity." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238 (1989) (cleaned up).

The KLG Defendants have already outlined multiple reasons why Ford has failed to adequately allege racketeering as to any Defendant: the only allegation that comes close to satisfying Rule 9(b) (relating to the KLG Defendants' work on the *Buck* and *Duk* cases) is refuted by the litigation filings on which Ford relies; the allegations regarding the four categories of purported billing misconduct lack the necessary specificity and fail to allege the requisite injury; the allegations relating to use of mails and wires are untethered to any allegedly false statements; and Ford's conclusory allegations cannot make up for these other deficiencies. *See* KLG Br. 22–29.

Once again, there are additional reasons why the complaint falls well short of alleging that the Wirtz Defendants engaged in racketeering activity—or that any activity in which they engaged constitutes the requisite pattern.

*First*, beyond the deficiencies detailed by the KLG Defendants, most of Ford's allegations attempting to show racketeering activity have nothing to do with the Wirtz Defendants. Ford does not allege that the Wirtz Defendants had any role in the *Buck* or *Duk* cases, the cases for which Ford at least tries satisfying its obligations under Rule 9(b). *See* Compl. ¶¶ 3, 29, 50; KLG Br. 34–41. And Ford does not allege that the Wirtz Defendants engaged in "duplicative billing of the same vague task descriptions across multiple cases" or that they submitted "no-date time entries" either, which are the principal practices that the complaint claims constituted the purported "fraud" (but are often associated with nonparties). Compl. ¶¶ 27, 35–39, Exs. A–B; *see* KLG Br. 34–50. Because Ford does not make any allegations that would link the Wirtz Defendants to others' alleged predicate acts, those alleged acts cannot support a RICO claim against the Wirtz Defendants. *See In re Wellpoint*, 865 F. Supp. 2d at 1035 ("Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant." (emphasis in original));

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, No. 09 Civ. 0511, 2010 WL 384736, at *3 (N.D. Cal. Jan. 29, 2010) (dismissing claim where complaint did not allege that "each defendant conducted the enterprise through a pattern of racketeering activity, in particular lacking facts for the individual broker defendants who are alleged to have been involved in only one transaction, or a couple of transactions within a relatively short amount of time").

That leaves only the handful of alleged cases in which the Wirtz Defendants served as counsel. But *Beltran*, *Vargas*, and *Anderson* did not involve any alleged fraud or billing impropriety by Wirtz Defendants, Compl. ¶¶ 52, 57, and certainly are not accompanied by specific allegations that would give the Wirtz Defendants "notice of the particular misconduct so that they can defend against the charge," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009), including allegations that "set forth what is false or misleading about a [particular] statement," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). As a result, those cases cannot constitute predicate acts for purposes of RICO. The remaining cases—*Choi* and *Jordan*—are not cases in which Ford was a defendant and thus are not cases in which Ford paid any attorney's fees. *Supra* at 2. Thus, no matter what billing errors Ford might perceive, it cannot show that it was "injured … by reason of" any alleged conduct in connection with the *Choi* and *Jordan* cases, and those two cases provide no basis to keep the Wirtz Defendants in this case. 18 U.S.C. § 1964(c); *see Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO plaintiff must establish "direct relation between the injury asserted and the injurious conduct alleged"); *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 1023 (C.D. Cal. 2011) (recognizing that "[a]t least one of the defendant's predicate acts" must have been "the proximate cause of the plaintiff's injuries" (citation omitted)).

*Second*, Ford has not sufficiently alleged that Wirtz Defendants engaged in *a pattern* of racketeering activity. To establish a pattern, Ford must show "a relationship between the predicates and of the threat of continuing activity." *H.J., Inc. v. Nw. Bell*

- 8 -

*Tel. Co.*, 492 U.S. 229, 238 (1989) (cleaned up). "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241 (citation omitted).

Again, the only billing improprieties that Ford even attempts to connect to the Wirtz Defendants involve two days of billing entries in the *Choi* and *Jordan* cases. But two instances of alleged overbilling six days apart in July 2018, Compl. ¶¶ 32–33, cannot establish continuity. The Ninth Circuit has made clear that isolated allegations of even genuinely actionable predicate acts do not amount to "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J.*, 492 U.S. at 242; *see also, e.g.*, *Turner v. Cook*, 362 F.3d 1219, 1231 (9th Cir. 2004) ("Because almost all of the alleged fraudulent communications occurred during the two month period ... appellants have failed to allege a series of related predicates extending over a substantial period of time." (quotation marks and citation omitted)); *Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) ("Activity that lasts only a few months is not sufficiently continuous.").

Nor does an isolated billing issue seven years ago amount to a plausible allegation of open-ended continuity. A "bare assertion that Defendants' racketeering activity was 'interrelated and part of a common and continuous pattern of fraudulent schemes which had a real threat of continuing' is not sufficient to allege continuity absent additional facts that support this conclusion." *I.T.C. Int'l, LLC v. Am. Voyage Corp., Inc.*, No. 08 Civ. 844, 2008 WL 11342745, at *3 (C.D. Cal. Sept. 26, 2008) (citation omitted). That is all Ford has alleged. Compl. ¶ 1 (alleging that "this criminal enterprise would have continued unabated"). There are no non-conclusory allegations that "if proved, would suffice to establish that [the predicate acts] had become [Wirtz Defendant's] regular way of doing business." *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1529 (9th Cir. 1995). And the Wirtz Defendants' alleged conduct in July 2018 poses

no risk of recurring because the two cases associated with the billing have closed. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992) ("Since the only goal of the Greene defendants was the successful prosecution of the *Wollersheim* state tort suit, there was no threat of activity continuing beyond the conclusion of that suit."); *Van Galder v. Clark*, No. 17 Civ. 1623, 2018 WL 1071708, at *4 (S.D. Cal. Feb. 27, 2018) (concluding that "the predicates do not establish the threat of a continued racketeering activity as the intended purported scheme and fraud have now been completed" when the allegations were that the defendants "sought to and successfully defrauded the bankruptcy court" and "the bankruptcy case is now closed").

### III. FORD FAILS TO PLAUSIBLY ALLEGE THAT WIRTZ DEFENDANTS WERE PARTIES TO ANY RICO CONSPIRACY

To state a RICO conspiracy claim, a plaintiff must plausibly allege that a defendant "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *United States v. Fernandez,* 388 F.3d 1199, 1230 (9th Cir. 2004). Knowing participation requires that a defendant was "aware of the essential nature and scope of the enterprise and intended to participate in it." *Howard*, 208 F.3d at 751.

As briefed by the KLG Defendants, Ford's conspiracy claims fails because Ford has not alleged any underlying substantive RICO claim, and because the allegation that "each Defendant knew about and agreed to facilitate the Enterprise's scheme," Compl. ¶ 97, is the exact sort of conclusory allegation that courts have consistently rejected. *See* KLG Br. 50–51; *see also, e.g.*, *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1022 (E.D. Cal. 2010) (recognizing that a statement that defendants "were aware of the fraudulent RICO enterprise and intended to participate in it" was "a conclusion [that], by itself, would not be enough to overcome a motion to dismiss"); *Chung Goh v. Prima Fin. Grp., Inc.*, No. 17

- 10 -

DEFENDANTS WIRTZ LAW APC AND RICHARD M. WIRTZ'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Civ.03630, 2017 WL 7887860, at *3 (C.D. Cal. July 26, 2017) ("Conclusory allegations that RICO defendants entered into an agreement are insufficient.").

The allegations as to the Wirtz Defendants are especially threadbare. Not only are there no specific allegation that the Wirtz Defendants "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise," *Fernandez*, 388 F.3d at 1230, but there are also no allegations of interactions between the Wirtz Defendants and the KLG Defendants that involved any fraud identified with particularity, and no allegations of interactions between the Wirtz Defendants and the Altman Defendants whatsoever, *supra* at 2–3. Accordingly, "the bare allegations of the complaint provide no basis to infer [the Wirtz Defendants'] assent to contribute to a common enterprise" that purportedly spanned tens of thousands of cases. *Baumer v. Pachl*, 8 F.3d 1341, 1347 (9th Cir. 1993); *see Howard*, 208 F.3d at 751.

\*   \*   \*

The Court should not allow Ford the opportunity to replead its claims against the Wirtz Defendants. Leave to amend is inappropriate where alleging additional facts would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1127–28 (9th Cir. 2000) (en banc). After engaging in what it characterized as an extensive audit, Ford believed it was armed with sufficient information to allege, in accordance with its obligations to this Court, that it had uncovered "thousands of hours in fictitious billings" in connection with "tens of thousands of cases." Compl. ¶¶ 1, 73. Yet it still could not muster anything of substance against the Wirtz Defendants, and there is no amount of clarifying the existing allegations that could somehow transform the Wirtz Defendants into actual participants in what Ford labels a "massive and years-long scheme." *Id.* ¶ 1. Especially given the "quasi-criminal" nature of civil RICO, and the "stigmatizing effect on those named as defendants," *Wagh v. Metris Direct Servs., Inc.*, 348 F.3d 1102, 1108–09 (9th Cir. 2003), Ford should not be allowed to delay the

Wirtz Defendants' dismissal from a case that they should never have been a part of in the first place.

## CONCLUSION

For the reasons above and in the KLG Defendants' brief, the Court should dismiss Ford's complaint against Wirtz Defendants with prejudice.

Dated: Los Angeles, CA
       July 25, 2025

Respectfully submitted,

Matthew J. Craig
HECKER FINK LLP

*Counsel for Defendants Wirtz Law APC and Richard M. Wirtz*

**LOCAL RULE 11-6.2 CERTIFICATION**

The undersigned counsel of record of Defendants Wirtz Law APC and Richard M. Wirtz certifies that this brief, when considered in conjunction with the concurrently filed briefs of the other Defendants, complies with the page limit set by the Court in its order dated July 16, 2025. *See* ECF 51.

Dated: Los Angeles, CA  
       July 25, 2025

Respectfully submitted,

_____  
Matthew J. Craig  
HECKER FINK LLP

*Counsel for Defendants Wirtz Law APC and Richard M. Wirtz*