Gregor A. Hensrude, Bar No. 226660
ghensrude@klinedinstlaw.com
Yumeng (Abby) Jiang, Bar No. 348718
ajiang@klinedinstlaw.com
KLINEDINST PC
501 West Broadway, Suite 1100
San Diego, California 92101
(619) 400-8000/FAX (619) 238-8707

Attorneys for Defendants THE ALTMAN
LAW GROUP and BRYAN C. ALTMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KNIGHT LAW GROUP LLP; STEVE B. MIKHOV; AMY MORSE; ROGER KIRNOS; DOROTHY BECERRA; THE ALTMAN LAW GROUP; BRYAN C. ALTMAN; WIRTZ LAW APC; and RICHARD M. WIRTZ,<br><br>Defendant. | Case No.: 2:25-cv-04550 MWC (PVC)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTMAN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:     Nov. 21, 2025<br>Time:    1:30 p.m.<br>Judge:   Hon. Michelle W. Court<br>Courtroom: 6A |

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTMAN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................ 1

II. STATEMENT OF FACTS .......................................................................... 3

    1. *Margeson* (12/15/2017): ................................................................. 3

    2. *Brown* (11/21/2018) ....................................................................... 3

    3. *Coon* (2/4/2019) ............................................................................. 4

    4. *Anderson* (5/28/2019) .................................................................... 4

    5. *Berroteran* (5/20/2022) .................................................................. 4

    6. *Volkswagen* (8/5/2020) .................................................................. 5

III. FORD'S RICO CLAIMS AGAINST ALTMAN FAIL AS A MATTER OF LAW ..................................................................................................... 5

    A. Ford's Allegations Against Altman Defendants Failed to Meet Heightened Pleading Standard for Fraud. ................................................ 5

        1. Ford's Case-Specific Allegations Against Altman Defendants Failed to Allege Any Misconduct. ........................... 6

        2. Ford's General Allegations Failed to Allege Any Misconduct and Lacks Particularity. ............................................ 7

        3. Ford's Own Allegations Defeat The Alleged Common Purpose of A RICO Enterprise. ...................................................... 8

        4. Ford's Implied Allegations Should Also Fail. ............................. 8

    B. Ford Failed to Allege Sufficient Predicate Acts to Establish An "Ongoing Organization." ........................................................................ 9

    C. Ford's RICO Claims Are Barred by the Four-Year Statute of Limitation. ................................................................................................ 10

    D. Ford's RICO Claims Are Barred by Claim and Issue Preclusion ........ 11

IV. CONCLUSION ......................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*
    483 U.S. 143 (1987) .................................................................................................. 10

*Calcasieu Marine Nat. Bank v. Grant*
    943 F.2d 1453 (5th Cir. 1991) ..................................................................................... 9

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*
    751 F.3d 990 (9th Cir. 2014) ....................................................................................... 6

*Edwards v. Marin Park, Inc.*
    356 F.3d 1058 (9th Cir. 2004) ..................................................................................... 6

*H.J. Inc. v. Nw. Bell Tel. Co.*
    492 U.S. 229 (1989) .................................................................................................... 9

*In re Hughes*
    347 F. App'x 359 (9th Cir. 2009) .............................................................................. 11

*Kougasian v. TMSL, Inc.*
    359 F.3d 1136 (9th Cir. 2004) ................................................................................... 11

*Odom v. Microsoft Corp.*
    486 F.3d 541 (9th Cir. 2007) ....................................................................................... 9

*Rotella v. Wood*
    528 U.S. 549 (2000) .................................................................................................. 11

*Rotella. Evans v. Ariz. Cardinals Football Club, LLC*
    761 F. App'x 701 (9th Cir. 2019) .............................................................................. 11

*Sedima, S.P.R.L. v. Imrex Co.*
    473 U.S. 479 (1985) .................................................................................................... 6

*United States v. Turkette*
    452 U.S. 576 (1981) .................................................................................................... 9

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ..................................................................................... 6

**STATUTES**

California Civil Code section 1794(d) ........................................................................... 12

Federal Rules of Civil Procedure, Rule 9(b) ................................................................ 5, 6

Title 18 United States Code section 1961(5) .................................................................. 9

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Title 18 United States Code section 1962(c) .................................................................................. 5

Title 18 United States Code section 1964(c) ................................................................................ 10

Title 28 United States Code section 1738 .................................................................................... 11

iii
TABLE OF AUTHORITIES

## I. INTRODUCTION

While it is unclear why Ford insists on joining the Altman Defendants in this case despite the lack of even *allegations* of any particular wrongdoing, it is clear that the best Ford can do for their *second* attempt is to add some even more general conclusory statements, many on "information and belief," and make claims about one more case the Altman Defendants won against Ford in 2019. Despite Ford's best effort, its specific allegations against the Altman Defendants remain incredibly sparse and legally inadequate. Ford's 31 pages of billing entry analysis across different cases (*see* Exs. A & B to First Amended Complaint ("FAC")) fail to name a single entry showing the Altman Defendants' purported billing impossibilities or improper billing tasks. Ford even went as far as utilizing Altman Defendants' past cases against another automobile manufacturer to imply misconduct, further evidencing that Ford could not find any billing irregularities by the Altman Defendants, despite the alleged "extensive work" Ford has done to amend its Complaint. FAC ¶77. Yet Ford's "extensive work" did not reveal *a single specific instance of Altman Defendants' alleged fraud?*

There remains, then, one inescapable truth: Ford has no particular allegations of any billing misconduct by the Altman Defendants. None.

The truth is Ford is retaliating against Altman because of his track record of successfully holding Ford to account before the California public. Defendant Altman is a distinguished trial counsel with almost 40 years of experience in civil trials. From 2017 to 2019, Mr. Altman and his trial team, the Altman Law Group (collectively, the "Altman Defendants"), were brought onto several cases against Ford as plaintiffs' trial counsel, and managed to obtain some of the biggest jury verdicts against Ford in Lemon Law cases.[1]

---

[1] In 2018, Bryan Altman secured three of the highest consumer protection verdicts against Ford. *See Nolan v. Ford*, Case No. RIC1307491, Riverside Cnty. Superior Court (filed on Jun. 28, 2013) (judgment entered in the amount of $8,244,269.82); *Brown* (judgment entered in the amount of $7,689,564.84); and *Coon*

1
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTMAN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

But the truth is Ford made a decision to try every Lemon Law case, represented by 7-12 law firms at the time,[2] unless plaintiffs accept Ford's existing offers.[3] This was their first attempt to stop consumers from bringing Lemon Law litigation in California, and was particularly targeted toward the consumers' lawyers: Altman and Knight.[4]  But it failed.  Instead the firms pushed their clients' cases forward zealously, and juries awarded millions of dollars in favor of the plaintiffs for violation of the Song-Beverly Act, violation of the Consumer Legal Remedies Act, and common-law fraud, with actual damages, civil penalties, and punitive damages. After prevailing at these trials, the Altman Defendants petitioned the court for attorney's fees associated with their time actually spent during trial. And the state courts granted Altman Defendants' petitions.

And since 2017, Ford has been fighting the fee applications using "line by line" analysis.[5] Ford is also aware of the fact that the Altman Defendants did not submit any new application for attorney's fees in Lemon Law cases against Ford after 2020.[6] Ford failed to allege any claim about the attorney's fees against the Altman Defendants from 2017 to 2019 and also failed to allege any claim when it discussed settlement of these attorney's fees with the Altman Defendants in 2022.

As noted in the Memorandum of Points and Authorities in Support of

---

(judgment entered in the amount of $1,599,525.00).

[2] *See, e.g.*, Ex. J to FAC, ¶43 (Ford was represented by 12 law firms in lemon law and California Legal Remedies Act cases); Ex. D to FAC, ¶28 (Ford was represented by 11 law firms in lemon law actions against KLG); and Ex. F to FAC, ¶112 (Ford utilized at least 21 attorneys and 7 law firms in the defense of *Berroteran v. Ford*.)

[3] On January 11, 2018, Ford's counsel, Mr. Spencer P. Hugret of Gordon & Rees LLP wrote a letter to KLG announcing Ford's new litigation strategy to decline settlement and push every case to trial. Ex. D to FAC, ¶29.

[4] Ford' counsel Justin Sanders of Sanders Roberts wrote in an electronic exchange that he was "focused on putting Mikhov and Altman out of business!" Ex. G to FAC, ¶35.

[5] Attached as Exhibits D-J to the FAC are declarations submitted by the KLG Defendants in support of attorneys' fees where Altman Defendants' experience, hourly rates, and attorney's fees awarded in other cases are delineated in details. *See, e.g.*, Ex. D to FAC, ¶94; Ex. H to FAC ¶95; Ex. I to FAC ¶62.

[6] After reorganizing the sequence of time of Ford's specific allegations against the Altman Defendants, Ford's FAC did not allege any new attorney's fees application was submitted against Ford after the Altman Defendants last applied for attorney's fees in *Anderson v. Ford* on May 28, 2019. FAC ¶74.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Defendants KNIGHT LAW GROUP LLP, STEVE B. MIKHOV, AMY MORSE, ROGER KIRNOS, and DOROTHY BECERRA'S Motion to Dismiss the First Amended Complaint (the "KLG Motion"), incorporated herein, Ford's FAC is fatally deficient, includes time-barred allegations, and seeks to turn this court into an appellate court for attorneys' fees *briefed and decided* by dozens of Superior Courts across the state. This court should decline that invitation.

## II. STATEMENT OF FACTS

Ford's FAC alleges the Altman Defendants were involved in six cases, one of which does not even involve Ford.

### 1. *Margeson* (12/15/2017):

On December 15, 2017, the Altman Defendants and Defendant Knight Law Group submitted their application for attorney's fees in *Margeson v. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC549430). FAC ¶73. Ford alleged, in Exhibit C to the complaint, that mail service of this motion is proof of "selected violation" of mail fraud. Ex. C to FAC, Entry No. 1.[7] On Jul. 26, 2022, Ford sent the Altman Defendants a check for settlement of the awarded attorney's fees. FAC ¶73; Ex. C to FAC, Entry No. 20.[8]

### 2. *Brown* (11/21/2018)

The second case alleged in Ford's complaint is *Brown v. Ford Motor Company* (Butte County Superior Court, Case No. 160060). FAC ¶72. Altman Defendants submitted their application for attorney's fees on Nov. 21, 2018. *Id*. The court awarded attorney's fees on Jan. 16, 2019. *Id*. On Jun. 6, 2022, Ford mailed a settlement check to the Altman Defendants. *Id*.

---

[7] Ford's FAC deleted the fact regarding the state court awarding attorney's fees, which was contained in its original complaint. ECF No. 1, ¶56. ("KLG sought $523,494.00 in fees, and ALG sought $353,205 in fees. […] the court awarded $741,839.70 in total attorney's fees.").

[8] While Ford alleges the check was mailed on July 26, 2022 in the FAC, Exhibit C states the check was mailed on Aug. 17, 2022. This mismatch occurs twice in the complaint with the limited allegations Ford alleged against the Altman Defendants, which suggests the method Ford is using to cross-reference dates and billing records is prone to errors.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

3
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTMAN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

### 3. *Coon* (2/4/2019)

Ford then alleges that in *Coon v. Ford Motor Company* (Riverside County Superior Court, Case No. MCC1300767), the Altman Defendants submitted their application for attorney's fees on Feb. 4, 2019. FAC ¶71. Ford did not mention it opposed the motion for attorney's fees, and the issue was litigated and decided in that proceeding.[9] ECF No. 63, 205-6. Ford agreed to settle the awarded attorney's fees at a lower amount with the Altman Defendants. FAC ¶71.

### 4. *Anderson* (5/28/2019)

Ford similarly alleges that in *Anderson v. Ford Motor Company* (San Joaquin County Superior Court, Case No. 39-2013-00299512-CU-BC-STK), the Altman Defendants submitted their application for attorney's fees on May 28, 2019. *Id.*, ¶74. Again, Ford conveniently left out the fact that it opposed the motion with detailed objections to each entry of billing, and the court awarded attorney's fees after hearing Ford's argument, reducing the requested sum for attorney's fees.

Ford sent the Altman Defendants a settlement check on Jul. 28, 2022. *Id.*; Ex. C to FAC, Entry No. 18.[10]

### 5. *Berroteran* (5/20/2022)

The last case Ford alleged involving both Ford and the Altman Defendants is *Berroteran v. Ford Motor Company* (Los Angeles County Superior Court, Case No. BC542525). FAC ¶70.[11] Ford agreed to settle the attorney's fees award at a lower amount with the Altman Defendants. *Id*.

---

[9] Once again, Ford's FAC deleted the fact regarding court's awarding attorney's fees as contained in its original complaint. ECF No. 1, ¶54 ("KLG requested $866,754.00 […] the court awarded KLG $543,554.00 in attorney's fees.").

[10] Again, the alleged dates of when the check was mailed in the FAC and Exhibit C to FAC contradict each other, suggesting that Ford's method of cross-referencing the billing records is subject to errors.

[11] Ford deleted allegations about the court's ruling contained in its original complaint. ECF No. 1, ¶53. ("KLG sought $1,226,868.45 in attorney's fees, costs, and expenses […] The court issued a minute order on July 14, 2022, awarding $807,127.50 in attorneys' fees only.").

4
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTMAN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

### 6. *Volkswagen* (8/5/2020)

Ford also tries to use a case where the Altman Defendants filed against **Volkswagen** as support of Ford's RICO claims. FAC ¶59. Ford was never a party to this lawsuit, but apparently someone else's case is the best Ford can do against the Altman Defendants.

One fact Ford only mentioned *passim* in Exhibit C to the FAC, is the settlement discussion between Ford and the Altman Defendants where Ford's outside counsel agreed to settle the Altman Defendants' fee claims by paying the Altman Defendants in three cases: *Berroteran*, *Brown*, and *Coon*. Ex. C to FAC, Entry No. 8.

## III. FORD'S RICO CLAIMS AGAINST ALTMAN FAIL AS A MATTER OF LAW

Even viewed in a light most favorable to Ford, Ford's claims fail because they are barred for many reasons. Those grounds are set forth in the KLG Motion, but a few apply with particularity as to the Altman Defendants. Most significantly, besides legitimate business activities, Ford failed to point to any billing impossibilities or improper billing by the Altman Defendants. Neither did Ford even attempt to meet the RICO standard as to Altman Defendants. Second, the RICO claims as alleged against the Altman Defendants are barred by the four-year statute of limitation because the motions for attorney's fees in four of the five cases were filed and adjudicated in or before 2020. Last, Ford's claims are barred by issue and claim preclusion because the alleged fee-inflation was squarely in front of the state court when awarding attorney's fees to the Altman Defendants.

### A. Ford's Allegations Against Altman Defendants Failed to Meet Heightened Pleading Standard for Fraud.

Ford's claims against the Altman Defendants would not pass muster under the most lenient pleading standard, let alone Federal Rule of Civil Procedure 9(b).

To state a claim under 18 U.S.C. § 1962(c), Ford must allege that *each*

*defendant*—including the Altman Defendants—(i) conducted the affairs (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The plaintiff only has standing if it has been injured in its business or property by the conduct constituting the violation. *Id*. To establish the second element, a plaintiff must plead that the enterprise has (a) a common purpose, (b) a structure or organization, and (c) longevity necessary to accomplish the purpose. *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). The fourth element requires predicate acts, and if the alleged predicate acts are mail and wire fraud, a plaintiff needs to allege (a) the formation of a scheme to defraud, (2) the use of mails or wires, and (3) the specific intent to defraud. *Id*.

In order to state a RICO claim based on mail and wire fraud, Ford must meet Rule 9(b)'s heightened pleading standard. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004). Under Rule 9(b), a plaintiff must state with particularity the circumstances constituting fraud, including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (cleaned up).  Ford fails to do so against Altman.

### 1. Ford's Case-Specific Allegations Against Altman Defendants Failed to Allege Any Misconduct.

The only case-specific allegations Ford asserts against Altman Defendants in the FAC are their applications for attorney's fees. *See* FAC ¶¶59 (application for attorney's fees in *In re Volkswagen*), 73 (application for attorney's fees in *Margeson*), 72 (application for attorney's fees in *Brown*), 71 (application for attorney's fees in *Coon*), and 74 (application for attorney's fees in *Anderson*). Ford only broadly asserts that these applications are false, but failed to point to any reason or billing entry that suggest any misconduct. In fact, in each of these applications, the court has done a line-by-line analysis based on Ford's line-by-line objection and has reduced the hourly rate and duplicative entries in the final awards.

Having failed to successfully object to Altman Defendants' application for attorneys' fees then, Ford now seeks to overturn the state court judges' judgments awarding attorney's fees by simply calling these applications "false." That attempt fails under any pleading standard.

### 2. Ford's General Allegations Failed to Allege Any Misconduct and Lacks Particularity.

Besides the above case-specific allegations, Ford also alleged general allegations of "fraudulent" activities of Altman Defendants, which are simply legitimate business practices of any law firm.

First, Ford alleges that KLG Defendant's Office "housed" the Altman Defendants. *Id.*, ¶¶10, 82. Even taken as true, a sublease of office space is not indicative of any misconduct.

Second, Ford alleges that the Altman Defendants participated in the alleged RICO enterprise by knowingly making, and/or allowing the creation of fraudulent entries for time not actually worked. *Id.*, 8-9. Again, Ford failed to point to any improper billing or fraudulent entry by the Altman Defendants in its 31 pages of billing entries.

Third, Ford alleges that the Altman Defendants routinely cross-bill with the other defendants. *Id.*, ¶50. To include billing entries for co-counsel in one submission for attorney's fees is common practice.

Fourth, Ford alleges the Altman Defendants billed "0.7 or 0.8 hours" on nearly every case for reviewing case file, documents, repair orders, and discovery. *Id.*, ¶54. Billing only 0.7 or 0.8 hours as a newly joined trial counsel to review the entire case file is hardly outrageous. Indeed, if it is impossible it is only so because it is *under*billed. Yet it is the only "improper billing" Ford can allege against the Altman Defendants.

Fifth, Ford alleges that based on its "information and belief," the Altman Defendants had weekly calendar meetings in KLG's office where Defendant Morse

7

delegated assignments. *Id.*, ¶82. Ford does not provide any specificity as to who is the "personnel" or their role at the Altman Law Group. If a weekly calendar meeting amongst co-counsel is a RICO conspiracy, many law firms in America should be concerned. The allegation would be laughable if the context was not so serious.

Lastly, Ford alleges that KLG Defendants advanced funds to the Altman Defendants. *Id.*, ¶83. Again, there is nothing inherently wrong in advancing funds in a co-counsel relationship.

It is clear that all these six general allegations failed to allege anything more than a legitimate legal practice of co-counsel relationship amongst different firms, these allegations fall far short of meeting the heightened pleading standard for civil fraud under a RICO claim.

### 3. Ford's Own Allegations Defeat The Alleged Common Purpose of A RICO Enterprise.

Realizing the deficiencies in their pleading after reading the first Motion to Dismiss, Ford instead tries to simply remove those allegations to survive the second motion. In its FAC, Ford intentionally downplayed the fact that Ford agreed to settle Altman Defendants' attorney's fees in several cases, though it uses the settlement checks Ford mailed to the Altman Defendants as proof for "mail fraud." Ex. C to FAC, Entry Nos. 8, 12, 18, 20. Ford's deletion of what used to be a material fact in Ford's first complaint – the settlement discussion between Ford and the Altman Defendants[12] – attempts to evade the logical defect that the settlement between Altman Defendants and Ford contradicts the so-called "common purpose" of the alleged RICO enterprise.

### 4. Ford's Implied Allegations Should Also Fail.

Ford also attempted to use conclusory allegations to imply that the Altman Defendants allowed fraudulent billing entries by alleging that Defendant Becerra

---

[12] *Compare* ECF No. 1 ¶53, *with* FAC ¶70.

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTMAN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

created time records for Altman Defendants and at the direction of Altman, and that the KLG Defendants further manipulated Altman Defendants' timesheets after receiving it from counsel. *Id.*, ¶¶28, 29, 31. Not only are these allegations based on Ford's own "information and belief," they are completely groundless because Ford still fails to point to a single example in the entries that is problematic. Because they cannot do so.

In sum, Ford's amended allegations against the Altman Defendants failed to meet the heightened pleading standard for fraud. Its case-specific allegations consist of *adjudicated and settled* fee applications, four of which were submitted before 2020, and one does not even concern Ford. And even with that example, hundreds of hours of alleged analysis, and a second attempt, **Ford pleads not a single billing irregularity against Altman**.

### B. Ford Failed to Allege Sufficient Predicate Acts to Establish An "Ongoing Organization."

RICO requires a plaintiff to show the defendant committed at least two predicate acts of racketeering in a ten-year period. 18 U.S.C. § 1961(5). However, courts generally require more than two isolated acts. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989) (two is necessary but may not be sufficient). Ford also fails to plausibly allege an enterprise with "an ongoing organization, either formal or informal." *United States v. Turkette*, 452 U.S. 576, 583 (1981). This requires allegations that the members of the enterprise created a "vehicle for the commission of two or more predicate crimes" that is separate from themselves and the underlying racketeering acts. *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (cleaned up); *see also* Turkette, 452 U.S. at 583. Separate misdeeds or episodic acts of wrongdoing are insufficient to establish associational continuity. *Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1463 (5th Cir. 1991) (declining to find RICO claim sufficiently established even though the defendant engaged in misdeeds).

Here, after removal of Ford's conclusory statements of law from the FAC, Ford's RICO claims against the Altman Defendants consist of two acts: (1) the Altman Defendants moved for attorney's fees, and (2) the Altman Defendants reached a settlement agreement with Ford on attorney's fees where they obtained favorable judgments. Even if these two acts are fraudulent acts contemplated by the RICO Act, which they are not, the FAC fails to establish sufficient predicate acts to prove there was an ongoing organization.

First, Ford fails to iterate any instance where the Altman Defendants allegedly filed fictitious billing records as Ford alleged against other Defendants. FAC ¶5. Second, the Altman Defendants' settlement agreement with Ford defeats Ford's allegation of common purpose and specific intent to defraud. If the Altman Defendants were acting in an enterprise "orchestrated" by other defendants, by entering into a settlement agreement with Ford *without the other Defendants* undercuts the common purpose of the alleged fraudulent billing. *Id.*, ¶4. Second, all the alleged "fictitious" fee applications occurred before May 21, 2021, which means all of the case-specific allegations are barred by the statute of limitations.[13] Lastly, Altman Defendants' co-counsel relationship with the defendants ended years ago, which is why the complaint is silent as to allegations of any ongoing practice.

## C. **Ford's RICO Claims Are Barred by the Four-Year Statute of Limitation.**

The Supreme Court has enforced a uniform four-year statute of limitation on RICO claims under § 1964(c) and (d). *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156 (1987). The Supreme Court in *Rotella* eliminated the Circuit split on whether pattern or injury discovery rule applies to the appropriate time of accrual, and held that the RICO limitations period based on constructive knowledge began when the plaintiff knew or should have known his injury. *Rotella*

---

[13] The fee application in *Berroteran* was filed in 2022, but the FAC failed to allege anything related to Altman Defendants' fee application in *Berroteran*. Compare ECF No. 1, ¶53, with FAC ¶¶70, 71.

*v. Wood*, 528 U.S. 549, 553-54 (2000). The Ninth Circuit has followed this injury discovery rule before Supreme Court's decision in *Rotella*. *Evans v. Ariz. Cardinals Football Club, LLC*, 761 F. App'x 701, 703 (9th Cir. 2019).

Ford filed this action on May 21, 2025, alleging only two RICO claims. The four-year statute of limitation on RICO claims bars any claim arose before May 21, 2021. In this case, it does not matter whether the injury discovery rule applies or the patter discovery rule because all the four applications were submitted and adjudicated before 2020.

Ford's FAC alleges four "fraudulent" attorney's fee applications submitted by the Altman Defendants against Ford: in *Margeson* (submitted on Dec. 15, 2017), *Brown* (submitted on Nov. 21, 2018), *Coon* (submitted on Feb. 4, 2019), and *Anderson* (submitted on May 28, 2019). Thus, Ford knew or should have discovered its injury in 2017. And even the pattern discovery rule bars Ford's RICO claims. In each of these cases, Ford was represented by counsel, fully opposed the application, and the court awarded attorney's fees after a hearing.

### D. Ford's RICO Claims Are Barred by Claim and Issue Preclusion

A federal court is required under 28 U.S.C. § 1738 to look to the preclusion law of the state court that rendered the earlier judgments to determine whether subsequent federal litigation is precluded. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1143 (9th Cir. 2004). A court may give preclusive effect to an order awarding attorney's fees if the prerequisite of awarding attorney's fees was squarely before the court. *In re Hughes*, 347 F. App'x 359, 361 (9th Cir. 2009) (finding the bankruptcy court properly gave preclusive effect to the state court order in finding willful and malicious conduct because the statutory prerequisite of awarding attorney's fees is plaintiff's lawsuit is deemed unreasonable, frivolous, meritless, or vexatious).

In awarding the Altman Defendants attorney's fees, a court is required to consider the reasonableness and time actually spent in the underlying litigation. *See*

Cal. Civ. Code §1794(d). The state courts universally adjusted the requested attorney's fees after careful deliberation delineated in the final attorney's fee awards. In *Brown*, the court particularly noted in it's minutes that it had reviewed Ford's "line-by-line analysis" of the billing and adjusted some of the hours and rates. *Id*.

This court should give preclusive effect to the four state court orders awarding attorney's fees because the reasonableness and actual time spent in those cases were squarely in front of the court and decided there.

## IV. CONCLUSION

In addition to the grounds for dismissal incorporated by reference in the KLG Motion, Ford's complaint should be dismissed against the Altman Defendants because the allegations failed to meet the heightened standard for fraud under a RICO claim, despite Ford's extensive audit and a second bite at the apple. Moreover, the four-year statute of limitation bars its RICO claims against the Altman Defendants in particular, as all the alleged fictitious fee applications fall outside of the limitations period. Last, the doctrines of issue and claim preclusion bar relitigation of the reasonableness and actual time spent in state court's awards of attorney's fees. The court should dismiss Ford's complaint against the Altman Defendants with prejudice.

KLINEDINST PC

DATED: September 12, 2025     By:     */s/ Yumeng Jiang*
                                       Gregor A. Hensrude
                                       Yumeng Jiang
                                       Attorneys for Defendants THE ALTMAN
                                       LAW GROUP and BRYAN C. ALTMAN