Matthew J. Craig (SBN 350030)
*mcraig@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Telephone: (929) 294-2542
Facsimile: (212) 564-0883

John C. Quinn*
*jquinn@heckerfink.com*
Benjamin S. Spiegel*
*bspiegel@heckerfink.com*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883

*Counsel for Defendants Wirtz Law APC and Richard M. Wirtz*

* Admitted pro hac vice

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>KNIGHT LAW GROUP LLP; STEVE B. MIKHOV; AMY MORSE; ROGER KIRNOS; DOROTHY BECERRA; THE ALTMAN LAW GROUP; BRYAN C. ALTMAN; WIRTZ LAW APC; and RICHARD M. WIRTZ,<br><br>Defendants. | Case No.: 2:25-cv-04550-MWC-PVC<br><br>**DEFENDANTS WIRTZ LAW APC AND RICHARD M. WIRTZ'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: November 21, 2025<br>Time: 1:30pm<br>Judge: Hon. Michelle Williams Court<br>Courtroom: 6A<br>Trial Date: None Set |

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 21, 2025 at 1:30pm, or as soon thereafter as the matter shall be heard, in Courtroom 6A of the First Street Courthouse, located at 350 West 1st Street, Los Angeles, California 90012, before the Honorable Michelle Williams Court, Defendants Wirtz Law APC and Richard M. Wirtz, by and through their counsel of record, will move for an order dismissing with prejudice the First Amended Complaint of Plaintiff Ford Motor Company alleging violations of 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is based on this notice of motion and motion; the accompanying memorandum of points and authorities; the concurrently filed motion of Defendants Knight Law Group LLP, Steve B. Mikhov, Amy Morse, Roger Kirnos, and Dorothy Becerra; and such other further evidence and argument as may be presented at any hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place via telephone on September 5, 2025. *See* Declaration of Matthew J. Craig.

Dated: Los Angeles, CA
September 12, 2025

Respectfully submitted,

Matthew J. Craig
HECKER FINK LLP

*Counsel for Defendants Wirtz Law APC and Richard M. Wirtz*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT FACTUAL BACKGROUND ........................................................... 2

ARGUMENT ....................................................................................................... 4

    I.    Ford Has Not Pleaded That The Wirtz Defendants Directed The Alleged Enterprise .................................................................................. 5

    II.   Ford Fails To Plausibly Allege That The Wirtz Defendants Engaged In A Pattern Of Racketeering ..................................................... 8

    III.   Ford Fails To Plausibly Allege That The Wirtz Defendants Were Parties To Any RICO Conspiracy ..................................................... 12

CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Acres Bonusing, Inc. v. Ramsey*,
No. 19 Civ. 05418, 2022 WL 17170856 (N.D. Cal. Nov. 22, 2022) ...............5

*Allwaste, Inc. v. Hecht*,
65 F.3d 1523 (9th Cir. 1995) .........................................................................11

*Anderson v. Ford Motor Co.*,
No. 39-2013-00299512 (Cal. Super. Ct., San Joaquin Cnty.) .............3, 7, 9, 10

*Baumer v. Pachl*,
8 F.3d 1341 (9th Cir. 1993) ...........................................................................13

*Beltran v. FCA US LLC*,
No. BC617905 (Cal. Super. Ct., L.A. Cnty.)...........................................3, 7, 10

*Borrego Cmty. Health Found. v. Inland Valley Invs., LLC*,
No. 21 Civ. 01417, 2023 WL 2518844 (S.D. Cal. Mar. 13, 2023) ..................7

*Boyle v. United States*,
556 U.S. 938 (2009)..........................................................................................7

*Choi v. BMW of N. Am. LLC*,
No. BC638274 (Cal. Super. Ct., L.A. Cnty.)...........................................3, 7, 10

*Chung Goh v. Prima Fin. Grp., Inc.*,
No. 17 Civ. 03630, 2017 WL 7887860 (C.D. Cal. July 26, 2017).................12

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
No. 09 Civ. 0511, 2010 WL 384736 (N.D. Cal. Jan. 29, 2010) ......................9

*Election Integrity Project California, Inc. v. Weber*,
113 F.4th 1072 (9th Cir. 2024) ......................................................................13

*Fraser v. Team Health Holdings, Inc.*,
No. 20 Civ. 04600, 2022 WL 971579 (N.D. Cal. Mar. 31, 2022)....................9

- ii -

WIRTZ DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*H.J., Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989)..............................................................................8, 10, 11

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992).....................................................................................10

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ...............................................................11, 12, 13

*I.T.C. Int'l, LLC v. Am. Voyage Corp., Inc.*,
    No. 08 Civ. 844, 2008 WL 11342745 (C.D. Cal. Sept. 26, 2008) .................11

*Jordan v. FCA US LLC*,
    No. RG16820118 (Cal. Super. Ct., Alameda Cnty.) ..............................3, 7, 10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ......................................................................10

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ......................................................................13

*Mattel, Inc. v. MGA Ent., Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ..........................................................10

*Natomas Gardens Inv. Grp., LLC v. Sinadinos*,
    710 F. Supp. 2d 1008 (E.D. Cal. 2010) ........................................................12

*Religious Tech. Ctr. v. Wollersheim*,
    971 F.2d 364 (9th Cir. 1992) ........................................................................11

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).....................................................................................5, 8

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ..........................................................................6

*Tatung Co. v. Shu Tze Hsu*,
    217 F. Supp. 3d 1138 (C.D. Cal. 2016) .......................................................5, 7

*Torres v. Ford Motor Co.*,
    No. 2:18 Civ. 07983 (C.D. Cal.)................................................................2, 7, 10

- iii -

*Turner v. Cook*,
   362 F.3d 1219 (9th Cir. 2004) ...................................................................8, 11

*United States v. Fernandez*,
   388 F.3d 1199, 1230 (9th Cir. 2004) ..............................................12

*Van Galder v. Clark*,
   No. 17 Civ. 1623, 2018 WL 1071708 (S.D. Cal. Feb. 27, 2018) ...................11

*Vargas v. FCA US LLC*,
   No. 30-2016-00845431 (Cal. Super. Ct., Orange Cnty.).......................3, 7, 10

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .........................................................10

*Wagh v. Metris Direct Servs., Inc.*,
   348 F.3d 1102 (9th Cir. 2003) .........................................................14

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ...........................................................8

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   865 F. Supp. 2d 1002 (C.D. Cal. 2011) ..........................................7, 9

**STATUTES**

18 U.S.C. § 1961(5) ...........................................................................8

18 U.S.C. § 1962(c) .......................................................................5, 8

18 U.S.C. § 1964(c) .........................................................................10

Cal. Civil Code § 1790 .......................................................................2

WIRTZ DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**PRELIMINARY STATEMENT**

Plaintiff Ford Motor Company aims most of its complaint at Defendant Knight Law Group LLP ("KLG"), three KLG attorneys, and a KLG paralegal (together, the "KLG Defendants"). But no doubt aware that it could not make out a RICO claim premised on the alleged conduct of a single law firm and its employees, Ford reaches to expand the number of participants in the alleged scheme, including by adding two anonymous law firms with its recent amendment. In naming Wirtz Law APC and Richard Wirtz (the "Wirtz Defendants"), however, Ford has done little more than include two paragraphs in the "Parties" section of its complaint and then rely on impermissible group allegations to try to paint all Defendants with the same brush.

In fact, Ford alleges just one instance of billing irregularity by Richard Wirtz and one instance by another Wirtz attorney—and both occurred in litigation that did not involve Ford and thus caused the company no harm. In the two alleged cases against Ford in which the Wirtz Defendants were counsel, Ford does not allege that they committed any billing errors, much less fraud: in one, an alleged error by a different firm was removed after a meet-and-confer; in the other, Ford alleges no billing errors at all in connection with the $38,270.98 award that the Wirtz Defendants received.

The claims against all Defendants should be dismissed for the numerous reasons set forth in the KLG Defendants' brief. And given the few flimsy and off-the-mark allegations about them, there are yet additional reasons to dismiss the claims against the Wirtz Defendants. Ford does not allege that the Wirtz Defendants directed the purported RICO enterprise, and the few identified cases in which they co-counseled with the KLG Defendants certainly do not permit an inference that the Wirtz Defendants somehow managed a scheme that involved thousands of separate litigations. Nor does Ford allege that the Wirtz Defendants themselves engaged in a pattern of racketeering activity, let alone one that harmed Ford. Ford's RICO conspiracy claim fails as well, including because the complaint does not permit an

inference that the Wirtz Defendants assented to a scheme that allegedly involved more than $100 million in unlawful billing. Ford's recent amendment has done nothing to salvage its claims against the Wirtz Defendants. As set forth more fully below, the claims against the Wirtz Defendants should be dismissed with prejudice.

## RELEVANT FACTUAL BACKGROUND

Ford alleges that, since 2015, Defendants have conspired to fraudulently inflate the attorneys' fees to which they were entitled following successful litigation against automakers under California's Lemon Law, the Song-Beverly Consumer Warranty Act, Cal. Civil Code § 1790 *et seq. See* ECF 83 ("FAC") ¶¶ 1–8, 19–20. Ford characterizes Steve Mikhov, KLG's former managing partner, as the purported "ringleader" of the alleged scheme, *id.* ¶¶ 4, 11, and names as co-conspirators KLG, two other KLG attorneys and a KLG paralegal; the Altman Law Group and a former Altman Law Group partner (together, the "Altman Defendants"); and the Wirtz Defendants, *id.* ¶¶ 10–18. Ford also alleges that an unnamed "Attorney A" at "Law Firm 1" and "Attorney B" at "Law Firm 2" participated in the enterprise. *Id.* ¶ 20. A full summary of Ford's complaint is set forth in the KLG Defendants' brief. *See* ECF 89-1 ("KLG Br.") at 17–21.

Across the 280 pages of its amended pleading and accompanying exhibits, Ford makes only a handful of allegations about the Wirtz Defendants.

*First*, Ford identifies two cases that the Wirtz Defendants litigated against Ford. Importantly, Ford does not allege any fraud by the Wirtz Defendants in connection with either. In *Torres v. Ford Motor Company*, No. 2:18 Civ. 07983 (C.D. Cal.), Ford alleges that KLG provided Ford an invoice as part of a meet-and-confer that reflected time entries from a nonparty KLG attorney relating to attendance at a deposition that a Wirtz attorney had taken. FAC ¶ 48. After Ford flagged those KLG time entries, the KLG attorney's "time was removed" and not submitted to the court as part of any fee application. *Id.* Ford does not allege that the Wirtz Defendants had anything to do with KLG's time entries or improperly billed for the deposition. *Id.*

In *Anderson v. Ford Motor Company*, No. 39-2013-00299512 (Cal. Super. Ct., San Joaquin Cnty.), Ford alleges that it made a $38,270.98 payment via FedEx to the Wirtz Defendants in May 2022. FAC ¶ 74. Ford does not identify any improper billing in connection with this payment either. Although Ford makes the impermissibly conclusory allegation (which must be set aside) that "all of [its] checks were sent in reliance on false, fraudulent, and inflated fee applications or billing statements," Ford does not identify any errors, let alone fraud, in the fee application that Richard Wirtz submitted in that case. *Id.* ¶ 75.

*Second*, Ford makes allegations about four cases that the Wirtz Defendants litigated against *other* car manufacturers. Ford alleges that two Wirtz attorneys working on two concurrent cases, *Choi v. BMW of North America LLC*, No. BC638274 (Cal. Super. Ct., L.A. Cnty.), and *Jordan v. FCA US LLC*, No. RG16820118 (Cal. Super. Ct., Alameda Cnty.), submitted billing entries that exceeded 24 hours in connection with different trials on the same day. FAC ¶¶ 43–44. Specifically, Ford claims that Richard Wirtz billed 29 hours on July 24, 2018, to attend both trials, and that Amy Smith billed 25.2 hours on July 18, 2018, to work on both trials and to work on an unidentified third case. *Id.* Ford does not make specific allegations regarding scienter, and it now concedes that billings in cases where it was not a defendant "did not harm [it]." *Id.* ¶ 45 n.3.

Ford also alleges that the Wirtz Defendants served as co-counsel with the KLG Defendants in two cases against Fiat, *Beltran v. FCA US LLC*, No. BC617905 (Cal. Super. Ct., L.A. Cnty.), and *Vargas v. FCA US LLC*, No. 30-2016-00845431 (Cal. Super. Ct., Orange Cnty.), for which KLG received checks reflecting both firms' work. FAC ¶ 69. Ford does not identify any fraud or impropriety by the Wirtz Defendants in connection with those fee payments. *See id.* Indeed, Ford explains that it "often would make a single payment via check to both KLG and [another] firm" to pay fee awards in cases involving multiple firms, *id.* ¶ 68, obviating any insinuation

- 3 -

that there is something inappropriate about a single check being issued in such circumstances.

*Third*, Ford alleges that "KLG assembled a team of employees" to "secretly creat[e] purported time entries and billing records for thousands of cases," and makes the generalized claim that that team created "purported records" for the Wirtz Defendants and others. *Id.* ¶ 28. Ford also includes Wirtz among a list of people at whose "direction" a KLG paralegal, Defendant Becerra, "created the fictious and fraudulent billing records." *Id.* ¶ 29. But Ford does not identify a single instance in which a KLG employee created time records for any of the Wirtz Defendants, or make any factual allegations about any supposed instance in which the Wirtz Defendants somehow "direct[ed]" Becerra. To the contrary, the FAC goes on to allege that "KLG received timesheets from … Wirtz [and] Wirtz Law," undercutting the suggestion that KLG created records for the Wirtz Defendants. *Id.* ¶ 31. Although the FAC alleges that KLG "further manipulated" these timesheets, it does not allege that the Wirtz Defendants were aware of this unspecified manipulation or link any such manipulation to any of the six lawsuits involving the Wirtz Defendants discussed above. *Id.*

*Finally*, Ford includes vague allegations about routine business practices that it does not even attempt to connect to alleged fraud. The FAC alleges that the Wirtz Defendants had "time billed through KLG billing invoices" in connection with unidentified cases involving unidentified Wirtz attorneys. FAC ¶ 50. The FAC does not suggest that this so-called "cross-bill[ing]" was improper or undisclosed. *Id.* Ford also alleges "on information and belief" that KLG "advanced funds" to the Wirtz Defendants. *Id.* ¶ 83. Here, too, Ford does not allege that advancing funds to another firm or being "financially intertwined" is improper, much less criminal. *Id.*

## ARGUMENT

Consistent with the Court's order permitting reallocation of pages among Defendants' briefs, *see* ECF 87, the KLG Defendants have identified numerous

independent bases on which to dismiss the claims against all Defendants: the *Noerr-Pennington* doctrine bars this Court from hearing Ford's claims;[1] Ford fails to allege any of the basic elements of a substantive RICO claim against any Defendant; Ford fails to state a RICO conspiracy claim against any Defendant, both because its substantive RICO claim fails and because the conspiracy claim rests on impermissible conclusory allegations; and Ford's claims are barred by the doctrines of claim and issue preclusion. The Wirtz Defendants incorporate each of the arguments from the KLG Defendants' brief into their own motion.

Due to the paucity of allegations against the Wirtz Defendants, the claims against them should be dismissed for yet additional reasons. Those additional bases for dismissal are as follows.

## I.    FORD HAS NOT PLEADED THAT THE WIRTZ DEFENDANTS DIRECTED THE ALLEGED ENTERPRISE

To be liable under RICO, a defendant must "'participate, directly or indirectly, in the conduct of [a RICO] enterprise's affairs,'" meaning that the defendant "must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (quoting 18 U.S.C. § 1962(c)). In evaluating this "conduct" element, courts in the Ninth Circuit consider "whether [a] defendant (1) gave or took directions; (2) occupied a position in the chain of command through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to the achievement of the enterprise's goal." *Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1152–53 (C.D. Cal. 2016) (internal

---

[1] For reasons similar to those underlying the *Noerr-Pennington* doctrine, "district courts from around the country have found that litigation activities will not serve as predicate acts unless there are allegations of wrongdoing outside of the litigation, such as out-of-court activity or corruption." *Acres Bonusing, Inc. v. Ramsey,* No. 19 Civ. 05418, 2022 WL 17170856, at *11 (N.D. Cal. Nov. 22, 2022). Because alleged litigation misconduct is the entire basis for Ford's claims against all Defendants, this line of cases provides a complementary but distinct reason to dismiss the complaint.

citation and quotation marks omitted). To survive a motion to dismiss, a complaint may not "merely lump multiple defendants together"; instead, it must "differentiate" its allegations to "inform" each defendant of the allegations particular to their alleged participation. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (per curiam) (quotation omitted).

There are multiple reasons why Ford fails to plausibly allege that *any* Defendant participated in the operation or management of a RICO enterprise: Ford has failed to plead anything separate from the alleged racketeering to show the requisite conduct in directing the purported enterprise; participation in normal business activities like a co-counsel relationship does not suffice to plead or permit an inference of enterprise conduct; and conduct undertaken to further a Defendant's own financial self-interest does not reflect conduct in furtherance of an enterprise's affairs. *See* KLG Br. 43–47.

The allegations with respect to the Wirtz Defendants contain even more deficiencies that leave the FAC well short of pleading that the Wirtz Defendants directed the alleged enterprise.

*First*, the principal allegations that Ford makes relating to this element—deficient in their own right, *see* KLG Br. 43–45—are not even made against the Wirtz Defendants. *See* FAC ¶ 11 (alleging that Mikhov "instructed other members of the enterprise, including Altman and ALG, to pad their bills and inflate their fees"); *id.* ¶ 20 (alleging that Attorney A and Attorney B submitted "timesheets at the direction of Mikhov, KLG, and other members of the enterprise"); *id.* ¶ 80 (alleging that the purported enterprise was "at certain times ... led by Defendants Mikhov and KLG"); *id.* ¶ 82 (alleging that other Defendants, but not the Wirtz Defendants, "shared office space" and "attended weekly calendar meetings").

The only allegation involving the Wirtz Defendants that invokes the concept of "direction" is the conclusory claim that Defendant Becerra, a former KLG paralegal, created "fictious and fraudulent billing records at the direction of Mikhov, Kirnos,

Morse, Altman, and Wirtz." FAC ¶ 29. But the FAC does not plead any facts about any instance in which the Wirtz Defendants supposedly directed any of Becerra's conduct, making this allegation precisely the kind of conclusory allegation that cannot support a RICO claim. *See, e.g.*, *Borrego Cmty. Health Found. v. Inland Valley Invs., LLC*, No. 21 Civ. 01417, 2023 WL 2518844, at *5 (S.D. Cal. Mar. 13, 2023) ("Because Plaintiff's allegations concerning Defendants' participation in the conduct of [the enterprise's] affairs are conclusory, it has failed to plead the element of conduct, and in turn, a RICO claim."); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) ("conclusory statement" that defendants were "involved in decision making … is too general to satisfy *Twombly's* pleading instructions").

*Second*, the few factual allegations of actual conduct by the Wirtz Defendants do not indicate that the Wirtz Defendants took any steps to "direct[] the enterprise's affairs," as opposed to simply conduct "their *own* affairs." *Reves*, 507 U.S. at 179, 185. The Wirtz Defendants' submission of fee applications in the *Choi* and *Jordan* cases, their work as co-counsel in the *Beltran* and *Vargas* cases in which the KLG Defendants deposited checks reflecting the full counsel group's fee award, and their work as co-counsel in the *Anderson* and *Torres* cases in which the Wirtz Defendants applied for and received their own fee award, *see* FAC ¶¶ 43–44, 48, 69, 74—these all reflect the sort of independent conduct that is *inconsistent* with enterprise conduct. *See Tatung Co.*, 217 F. Supp. 3d at 1152–53; *see also Boyle v. United States*, 556 U.S. 938, 947 n.4 (2009) (RICO violation is not established by showing that various defendants engaged in predicate acts "independently and without coordination").

*Finally*, even if co-counseling could reflect enterprise conduct, *but see* KLG Br. 43–47; *In re WellPoint*, 865 F. Supp. 2d at 1034–35 (C.D. Cal. 2011) ("[T]he existence of a business relationship … without more does not show that [defendant] conducted the enterprise."), the four cases in the FAC where the Wirtz Defendants co-counseled with the KLG Defendants hardly support an inference that the Wirtz

Defendants played a role in "directing th[e] … affairs," *Reves*, 507 U.S. at 179, of a much broader RICO enterprise, one that allegedly carried out a fraudulent billing scheme across "thousands of cases," FAC ¶ 14. At bottom, the enterprise conduct element requires more than "being involved" in an enterprise, and "[s]imply performing services for the enterprise does not rise to the level of direction." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). Ford has not even made plausible allegations that the Wirtz Defendants were involved in, let alone managed or operated, an enterprise that carried out a "massive and years-long scheme." FAC ¶ 2.

## II.    FORD FAILS TO PLAUSIBLY ALLEGE THAT THE WIRTZ DEFENDANTS ENGAGED IN A PATTERN OF RACKETEERING

Liability under RICO also requires that a defendant have participated in "a pattern of racketeering activity." 18 U.S.C. § 1962(c). A pattern requires there to be "at least two acts of racketeering activity within ten years of one another." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citing 18 U.S.C. § 1961(5)). But identifying two predicate acts is not itself sufficient to establish a pattern. Instead, a defendant must also plausibly allege "a relationship between the predicates and of the threat of continuing activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238 (1989) (cleaned up).

The KLG Defendants have already outlined multiple reasons why Ford has failed to adequately allege racketeering as to any Defendant: Ford's allegations of false statements untethered to specific fee petitions in cases against Ford fail to meet Rule 9(b); allegations regarding fee award payments without an alleged link to a false statement do not state a claim for fraud; and any claim premised on the eleven cases in which Ford alleges that it paid a fee based on an alleged misrepresentation is barred by the doctrines of claim and issue preclusion. *See* KLG Br. 35–43.

Once again, there are additional reasons why the FAC falls well short of alleging that the Wirtz Defendants engaged in racketeering activity—or that any activity in which they engaged constitutes the requisite pattern.

- 8 -

1    *First*, beyond the deficiencies detailed by the KLG Defendants, most of Ford's

2    allegations attempting to show racketeering activity have nothing to do with the Wirtz

3    Defendants. Although Ford at least tries to satisfy its obligations under Rule 9(b) in

4    connection with a handful of specific cases, KLG Br. 37–38, the only one of those

5    cases involving the Wirtz Defendants is *Anderson*, and the fraud alleged there

6    concerns a statement by Mikhov, not the Wirtz Defendants, about KLG's maintenance

7    of contemporaneous time records. FAC ¶ 74. Nor does Ford identify an instance in

8    which the Wirtz Defendants submitted a fee petition with a KLG attorney's time

9    before 2018 or with a billing entry for Amy Morse—the other supposed indicators of

10   fraud that Ford claims. *See id.* ¶ 90. Because Ford does not make any allegations that

11   link the Wirtz Defendants to others' alleged predicate acts, those alleged acts cannot

12   support a RICO claim against the Wirtz Defendants. *See In re Wellpoint*, 865 F. Supp.

13   2d at 1035 ("Where RICO is asserted against multiple defendants, a plaintiff must

14   allege at least two predicate acts by *each* defendant." (emphasis in original)); *Eclectic*

15   *Props. E., LLC v. Marcus & Millichap Co.*, No. 09 Civ. 0511, 2010 WL 384736, at

16   *3 (N.D. Cal. Jan. 29, 2010) (dismissing claim where complaint did not allege that

17   "each defendant conducted the enterprise through a pattern of racketeering activity,

18   in particular lacking facts for the individual broker defendants who are alleged to have

19   been involved in only one transaction, or a couple of transactions within a relatively

20   short amount of time").

21       Ford cannot overcome these deficiencies through the allegation that Becerra

22   created false records "at the direction of Mikhov, Kirnos, Morse, Altman, and Wirtz."

23   FAC ¶ 29. Not only is the allegation impermissibly conclusory, *supra* at 6–7, but also

24   "[a]llegations of predicate acts of mail and wire fraud in RICO claims must be pled

25   with specificity and satisfy the requirement of Rule 9(b)," *Fraser v. Team Health*

26   *Holdings, Inc.*, No. 20 Civ. 04600, 2022 WL 971579, at *10 (N.D. Cal. Mar. 31,

27   2022).

28

WIRTZ DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1      That leaves only the handful of alleged cases in which the Wirtz Defendants

2  served as counsel. But *Torres*, like *Anderson*, did not involve any alleged fraud or

3  billing impropriety by the Wirtz Defendants, FAC ¶¶ 48, 74, and neither case is

4  accompanied by specific allegations that would give the Wirtz Defendants "notice of

5  the particular misconduct … so that they can defend against the charge," *Kearns v.*

6  *Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009), including allegations that "set

7  forth what is false or misleading about a [particular] statement," *Vess v. Ciba-Geigy*

8  *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). As a result, those cases cannot

9  constitute predicate acts for purposes of RICO. The remaining cases—*Choi*, *Jordan*,

10  *Beltran*, and *Vargas*—are not cases in which Ford was a defendant and thus are not

11  cases in which Ford paid any attorney's fees. *Supra* at 3. Thus, no matter what billing

12  errors Ford might perceive, it cannot show that it was "injured … by reason of" any

13  alleged conduct in connection with these cases, and these cases provide no basis to

14  keep the Wirtz Defendants in this case. 18 U.S.C. § 1964(c); *see Holmes v. Sec. Inv.*

15  *Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO plaintiff must establish "direct relation

16  between the injury asserted and the injurious conduct alleged"); *Mattel, Inc. v. MGA*

17  *Ent., Inc.*, 782 F. Supp. 2d 911, 1023 (C.D. Cal. 2011) (recognizing that "[a]t least

18  one of the defendant's predicate acts" must have been "the proximate cause of the

19  plaintiff's injuries" (citation omitted)). Ford now admits as much, conceding that

20  billings in cases involving other car manufacturers "did not harm [it]." FAC ¶ 45 n.3.

21      *Second*, Ford has not sufficiently alleged that the Wirtz Defendants engaged in

22  *a pattern* of racketeering activity. To establish a pattern, Ford must show "a

23  relationship between the predicates and of the threat of continuing activity." *H.J.* 492

24  U.S. at 239 (cleaned up). "'Continuity' is both a closed- and open-ended concept,

25  referring either to a closed period of repeated conduct, or to past conduct that by its

26  nature projects into the future with a threat of repetition." *Id.* at 241 (citation omitted).

27      Again, the only billing improprieties that Ford even attempts to connect to the

28  Wirtz Defendants involve two days of billing entries in the *Choi* and *Jordan* cases.

WIRTZ DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Supra* at 3. But two instances of alleged overbilling six days apart in July 2018, FAC ¶¶ 43–44, cannot establish continuity. The Ninth Circuit has made clear that isolated allegations of even genuinely actionable predicate acts do not amount to "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J.*, 492 U.S. at 242; *see also, e.g.*, *Turner v. Cook*, 362 F.3d 1219, 1231 (9th Cir. 2004) ("Because almost all of the alleged fraudulent communications occurred during the two month period ... appellants have failed to allege a series of related predicates extending over a substantial period of time." (quotation marks and citation omitted)); *Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) ("Activity that lasts only a few months is not sufficiently continuous.").

Nor does an isolated billing issue seven years ago amount to a plausible allegation of open-ended continuity. A "bare assertion that Defendants' racketeering activity was 'interrelated and part of a common and continuous pattern of fraudulent schemes which had a real threat of continuing' is not sufficient to allege continuity absent additional facts that support this conclusion." *I.T.C. Int'l, LLC v. Am. Voyage Corp., Inc.*, No. 08 Civ. 844, 2008 WL 11342745, at *3 (C.D. Cal. Sept. 26, 2008) (citation omitted). That is all Ford has alleged. FAC ¶ 3 (alleging that "this criminal enterprise would have continued unabated"). There are no non-conclusory allegations that "if proved, would suffice to establish that [the predicate acts] had become [the Wirtz Defendants'] regular way of doing business." *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1529 (9th Cir. 1995). And the Wirtz Defendants' alleged conduct in July 2018 poses no risk of recurring because the two cases associated with the billing have closed. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992) ("Since the only goal of the Greene defendants was the successful prosecution of the *Wollersheim* state tort suit, there was no threat of activity continuing beyond the conclusion of that suit."); *Van Galder v. Clark*, No. 17 Civ. 1623, 2018 WL 1071708, at *4 (S.D. Cal. Feb. 27, 2018) (concluding that "the predicates do not establish the

threat of a continued racketeering activity as the intended purported scheme and fraud have now been completed" when the allegations were that the defendants "sought to and have successfully defrauded the bankruptcy court" and "the bankruptcy case is now closed").

## III.   FORD FAILS TO PLAUSIBLY ALLEGE THAT THE WIRTZ DEFENDANTS WERE PARTIES TO ANY RICO CONSPIRACY

To state a RICO conspiracy claim, a plaintiff must plausibly allege that a defendant "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004). Knowing participation requires that a defendant was "aware of the essential nature and scope of the enterprise and intended to participate in it." *Howard*, 208 F.3d at 751.

As briefed by the KLG Defendants, Ford's conspiracy claim fails because Ford has not alleged any underlying substantive RICO claim, and because the allegation that "[e]ach Defendant knew about and agreed to facilitate the Enterprise's scheme," FAC ¶ 112, is the exact sort of conclusory allegation that courts have consistently rejected. *See* KLG Br. 57; *see also, e.g.*, *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1022 (E.D. Cal. 2010) (recognizing that a statement that defendants "were aware of the fraudulent RICO enterprise and intended to participate in it" was "a conclusion [that], by itself, would not be enough to overcome a motion to dismiss"); *Chung Goh v. Prima Fin. Grp., Inc.*, No. 17 Civ. 03630, 2017 WL 7887860, at *3 (C.D. Cal. July 26, 2017) ("Conclusory allegations that RICO defendants entered into an agreement are insufficient.").

The allegations as to the Wirtz Defendants are especially threadbare. Not only are there no specific allegations that the Wirtz Defendants "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise," *Fernandez*, 388 F.3d at 1230, but there are also no allegations of interactions between the Wirtz Defendants and the KLG Defendants that involved any

fraud identified with particularity, and no allegations of interactions between the Wirtz Defendants and the Altman Defendants, Law Firm 1, or Law Firm 2 whatsoever, *supra* at 2–4. Accordingly, "the bare allegations of the complaint provide no basis to infer [the Wirtz Defendants'] assent to contribute to a common enterprise" that purportedly spanned thousands of cases. *Baumer v. Pachl*, 8 F.3d 1341, 1347 (9th Cir. 1993); *see Howard*, 208 F.3d at 751.

*     *     *

The Court should not allow Ford another opportunity to replead its claims against the Wirtz Defendants. *See Lopez v. Smith*, 203 F.3d 1122, 1127–28 (9th Cir. 2000) (en banc). Prior to filing its original complaint, Ford engaged in what it characterized as an extensive audit, which purportedly revealed "thousands of hours in fictitious billings" in connection with "tens of thousands of cases." ECF 1 ¶¶ 1, 73. The Wirtz Defendants were missing from that account, and their original motion to dismiss explained all the ways that the minimal allegations against them failed to state a claim. ECF 66. In response to that motion and the motions filed by the other Defendants, Ford sought an extension of time so that it could "conduct additional factual and legal research" and "prepare an amended complaint." ECF 79 at 4. It now claims that it has reviewed "thousands" of time records, and that an analysis of "thousands of separate cases" reveals "Defendants' massive false, fraudulent, and inflated hours and billings." FAC ¶¶ 7, 34.

Yet Ford still cannot muster anything of substance against the Wirtz Defendants. A district court has "particularly broad" discretion to deny leave to amend "where the plaintiff has previously amended the complaint." *Election Integrity Project California, Inc. v. Weber*, 113 F.4th 1072, 1099 (9th Cir. 2024) (cleaned up). It is now even more obvious than before that there is no amount of clarifying the current allegations that could somehow transform the Wirtz Defendants into actual participants in what Ford labels a "massive and years-long scheme." FAC ¶ 2. Especially given the "quasi-criminal" nature of civil RICO, and the "stigmatizing

- 13 -

effect on those named as defendants," *Wagh v. Metris Direct Servs., Inc.*, 348 F.3d 1102, 1108–09 (9th Cir. 2003), Ford should not be allowed to delay the Wirtz Defendants' dismissal from a case that they should never have been a part of in the first place.

## CONCLUSION

For the reasons above and in the KLG Defendants' brief, the Court should dismiss Ford's claims against the Wirtz Defendants with prejudice.

Dated: Los Angeles, CA                                    Respectfully submitted,
        September 12, 2025

                                                         _____
                                                         Matthew J. Craig
                                                         HECKER FINK LLP

                                                         *Counsel for Defendants Wirtz*
                                                         *Law APC and Richard M. Wirtz*

## LOCAL RULE 11-6.2 CERTIFICATION

The undersigned counsel of record of Defendants Wirtz Law APC and Richard M. Wirtz certifies that this brief, when considered in conjunction with the concurrently filed briefs of the other Defendants, complies with the page limit set by the Court in its order dated September 9, 2025. *See* ECF 87.

Dated: Los Angeles, CA
      September 12, 2025

Respectfully submitted,

Matthew J. Craig
HECKER FINK LLP

*Counsel for Defendants Wirtz*
*Law APC and Richard M. Wirtz*

WIRTZ DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF