Gregor A. Hensrude, Bar No. 226660
ghensrude@klinedinstlaw.com
Abby Y. Jiang, Bar No. 348718
ajiang@klinedinstlaw.com
KLINEDINST PC
501 West Broadway, Suite 1100
San Diego, California 92101
(619) 400-8000/FAX (619) 238-8707

Attorneys for Defendants THE ALTMAN
LAW GROUP and BRYAN C. ALTMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KNIGHT LAW GROUP LLP; STEVE B. MIKHOV; AMY MORSE; ROGER KIRNOS; DOROTHY BECERRA; THE ALTMAN LAW GROUP; BRYAN C. ALTMAN; WIRTZ LAW APC; and RICHARD M. WIRTZ,<br><br>Defendant. | Case No.: 2:25-cv-04550 MWC (PVC)<br><br>THE ALTMAN DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT<br><br>Hearing Date: December 12, 2025<br>Time: 1:30 pm<br>Judge: Hon. Michelle Williams Court<br>Courtroom: 6A<br>Trial Date: None Set |

# I. INTRODUCTION

Ford's Omnibus Opposition to Defendants' Motion to Dismiss ("Ford's Opposition") inevitably admitted that, other than the admittedly non-fraudulent "background allegations," the only factual wrongdoing that the FAC alleged against the Altman Defendants was that they were instructed to "pad bills" by Mikhov and directed Becerra to do so. ECF No. 103, 81. However, Ford failed to point to any example or result of such fictitiously padded billing records, except the "facially suspicious time entries" of ".07 and .08 hours"[1] for reviewing case file, documents, repair order, discovery in "nearly every case." *Id*.

Billing 0.7 or 0.8 hour in different cases to review a case file as trial counsel is hardly "suspicious" by itself. The allegations against the Altman Defendants, even taken as true and construed in the light most favorable to Ford, failed to move the FAC into the realm of the plausible claims. The reasonableness of these entries were also necessarily decided by state courts over Ford's line-by-line objection. Ford's RICO claims against the Altman Defendants are also time-barred because the first submission of the allegedly fraudulent billing records occurred in 2017, and the subsequent settlement was not a "new and independent" injury that would trigger the separate accrual rule. For the reasons stated herein and in the KLG Defendants' motion to dismiss and reply, which are incorporated by reference, Ford's allegations are insufficient to state a claim against Altman Defendants.

# II. ARGUMENT

## A. THE FAC FAILED TO IDENTIFY ANY MISCONDUCT TO DEMONSTRATE ALTMAN DEFENDANTS' PARTICIPATION IN THE ENTERPRISE.

As Ford's Opposition conceded, despite its million-dollar investigation of fee data, ECF No. 103 at 14, Ford was unable to find any temporal impossibilities or irregularities related to Altman or his firm. Ford also conceded that the Altman

---

[1] The FAC alleged that "0.7 or 0.8" hour, not ".07 or .08 hour," was billed for "Reviewed case file, documents, repair orders, discovery." FAC ¶54. It appears the use of the latter in the opposition is a typographical error.

Defendants' sublease of office space, the weekly meetings, cross-billing, advancements of funds are not "fraudulent" but only background information alleged by Ford to demonstrate "associations between the defendants." *Id.* at 82. However, mere associations, without any instance of *wrongdoing*, cannot plausibly support the existence of a RICO enterprise.

Even though the FAC failed to allege any non-contemporaneous billing practice by the Altman Defendants, Ford asked the court to make such inference in its Opposition, based on the ".07 and .08 hours" the Altman Defendants billed on nearly all four cases they participated in. ECF No. 103, 81. The court should decline such invitation because it is unreasonable. *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)) ("courts do not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (internal quotation marks omitted). Billing 0.7 or 0.8 hour to familiarize a new counsel with facts of the case is not outrageous. Even if the facts of these cases differ from each other, they are against the same auto-manufacturer involving similar Lemon Law claims. It cannot be reasonably inferred that billing 0.7 or 0.8 hour to review case files would suggest non-contemporaneous billing, or to imagine that Ford suffered millions of dollars of injury from such allegedly "padded" billing.

Because Ford failed to point to any improper billing or temporal impossibilities, Ford failed to sufficiently allege any fraud that the Altman Defendants committed. The FAC and Ford's opposition also failed to point out any act by the Altman Defendants that would constitute mail or wire fraud. Ford's non-background allegations are: (1) Mikhov directed Altman to pad bills (FAC ¶11), (2) Becerra, Mikhov's employee, padded bills for Mikhov and Altman (FAC ¶28), and (3) Becerra then did so at the direction of Mikhov, Kirnos, Morse, Altman, and Wirtz (FAC ¶ 29). If the allegations are to be believed, Mikhov told Altman to pad the bills, then Mikhov and Altman both told Becerra to pad the bills, then Becerra

did so. If the claims were not so serious, attempting to allege a conspiracy simply by adding Altman as a second source redundantly commanding Mikhov's employee to do what Mikhov had already told her to do would be laughable.

More to the point, from this silly alleged chain of command, the only result of such bill padding is the 0.7 or 0.8 hours billed for at most three of the four cases to review a file upon receipt. To suggest that a RICO claim can be established on this one specific allegations is absurd.

**B. ALTMAN DEFENDANTS' FEE SETTLEMENT DISCUSSIONS CONTRADICTS THE ALLEGED COMMON PURPOSE.**

The alleged common purpose of the enterprise is to defraud Ford by submitting fraudulent billing records. ECF No. 103 at 41. Altman Defendants' role was allegedly "to win trials so KLG and the other enterprise members could lie their way to outsized fee awards[.]" *Id*. Ford fails to identify any fraudulent billing records from Altman, except the 0.7 or 0.8 hour billed for reviewing case files. Ford did not mention the fact that without the 11 law firms Ford hired the fee awards would not have been so "outsized" either. Furthermore, Ford failed to answer the question that: If Altman Defendants shared the common purpose with the other defendants to defraud Ford by submitting inflated bills, why would they negotiate with Ford, *excluding its alleged "co-conspirators,"* for settlements less than the fee awards that they successfully obtained against Ford?

**C. FORD'S SETTLEMENT PAYMENT IS NOT A "NEW AND INDEPENDENT INJURY."**

Ford's next argument, the separate accrual rule should salvage its RICO claims because Ford suffered "injury" when it paid settlements to the Altman Defendants, citing *Grimmett v. Brown*, 75 F.3d 506 (9th Cir. 1996), also fails. Ford failed to explain why such injury is new and independent from its primary injury allegedly resulted from the fraudulent billing practices.

In *Grimmett v. Brown*, the Ninth Circuit held that Plaintiff's claims are *barred* under the statute of limitations because Plaintiff's primary injury of lost interest in

Defendant's medical practice has been perfected upon the reorganization and filing of bankruptcy petition of the practice . *Id.* at 513-14. The court *declined* to find any "new and independent act" inflicting a new injury because each act Plaintiff alleged post-filing-of-bankruptcy is part of the same scheme and the injuries claimed are identical to those alleged prior to that time. *Id.* at 514. Here, Ford's primary injury has been perfected when the Altman Defendants first submitted its fee application in *Margeson* on December 15, 2017 (FAC ¶ 73), or at the latest when the court issued fee awards against Ford for the first time in *Brown* on January 16, 2019. FAC ¶ 72. Ford's 2022 settlement discussion with Altman derives from the same fee awards and was about the same primary and single injury – Ford's monetary loss due to the attorney's fees awards. Ford's 2022 settlement payment naturally flows from not only the settlement discussion but also the fee application in 2017 and the fee awards in 2019. This injury is not a "new and independent" one that would warrant application of the separate accrual rule and certainly does not warrant circumventing the injury discovery rule altogether.

      Realizing that Ford cannot possibly prevail on the statute, Ford advances a self-contradictory position in an attempt to allege an act inside the limitations period by alleging that settlement payment is a "new and independent injury" that Ford suffered. *Id*. Ford has to allege the settlement discussion as part of the alleged RICO scheme and did so in FAC ¶ 70-73, Ex. C to FAC Entry Nos. 8, 12, 15, because it knows that without the settlement, Ford's claims against the Altman Defendants would be time-barred by the four-year statute of limitation. And so now Ford would have the court believe that where Altman obtains a fee judgment for $100,000—for example—he re-starts the limitations period by agreeing to accept $80,000 in payment of the same. How reducing the amount recovered would *further* the scheme is intellectually impossible to reconcile.

**D. FORD'S RICO CLAIMS WERE NECESSARILY DECIDED BY STATE COURTS.**

Ford's argument that the FAC is not precluded by the state fee awards fails for the reasons stated in the co-defendants' brief, as incorporated herein, but as to Altman also because unlike the other Defendants, Ford has not alleged any temporal billing impossibilities, improper billing across the different cases, or anything new to Ford after 2019. Ford alleged in its FAC and Opposition the temporal billing impossibilities by other defendants and KLG's alleged practice of non-contemporaneous billing record that it found out in 2024, which may or may not change the context of these cases for issue preclusion; but none of these allegations change the context of the cases as to the Altman Defendants. Ford examined the fee applications line-by-line, objected to them, and the state courts have necessarily decided on the fee awards. Ford has alleged zero new facts in its FAC against the Altman Defendants, *e.g.*, the 0.7 or 0.8 hour billed for reviewing case files, that was news to Ford at the time of opposing Altman Defendants' fee applications. Since the reasonableness of the 0.7 or 0.8 hour for reviewing case files was necessarily decided by the state courts and Ford fails to allege any other specific allegations against the Altman Defendants to show how they fraudulently inflated bills, Ford's "changed context" argument does not prevail as against the Altman Defendants.

### III. CONCLUSION

Based on the foregoing, Ford's FAC should be dismissed. As Ford acknowledges multiple times in its opposition, the Altman Defendants may be dismissed from this action. ECF No. 103, 17, 49. Because Ford had the opportunity and insight from a prior motion, attempted to amend, and failed, further leave to amend should be denied.

DATED: October 17, 2025

KLINEDINST PC

By: /s/ Gregor A. Hensrude
Gregor A. Hensrude
Abby Y. Jiang
Attorneys for Defendants THE ALTMAN LAW GROUP and BRYAN C. ALTMAN