Matthew J. Craig (SBN 350030)
mcraig@heckerfink.com
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Telephone: (929) 294-2542
Facsimile: (212) 564-0883

John C. Quinn*
jquinn@heckerfink.com
Benjamin S. Spiegel*
bspiegel@heckerfink.com
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883

*Counsel for Defendants Wirtz Law APC and Richard M. Wirtz*

\* Admitted *pro hac vice*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KNIGHT LAW GROUP LLP; STEVE B. MIKHOV; AMY MORSE; ROGER KIRNOS; DOROTHY BECERRA; THE ALTMAN LAW GROUP; BRYAN C. ALTMAN; WIRTZ LAW APC; and RICHARD M. WIRTZ,<br><br>Defendants. | Case No.: 2:25-cv-04550-MWC-PVC<br><br>**DEFENDANTS WIRTZ LAW APC AND RICHARD M. WIRTZ'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Hearing Date: November 21, 2025<br>Time: 1:30 pm<br>Judge: Hon. Michelle Williams Court<br>Courtroom: 6A<br>Trial Date: February 8, 2027 |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 1

    I.    THE WIRTZ DEFENDANTS DID NOT DIRECT ANY ENTERPRISE ........................................................................................... 1

    II.   THE WIRTZ DEFENDANTS DID NOT ENGAGE IN A PATTERN OF RACKETEERING ...................................................... 3

    III.  THE WIRTZ DEFENDANTS WERE NOT PARTIES TO ANY CONSPIRACY ............................................................................... 5

CONCLUSION .......................................................................................................... 6

# TABLE OF AUTHORITIES

**CASES** Page(s)

*Acres Bonusing, Inc. v. Ramsey*,
    No. 19 Civ.05418, 2022 WL 17170856 (N.D. Cal. Nov. 22, 2022) ................4

*Chung Goh v. Prima Fin. Grp., Inc.*,
    No. 17 Civ. 03630, 2017 WL 7887860 (C.D. Cal. July 26, 2017)....................6

*Corley v. Rosewood Care Ctr., Inc. of Peoria*,
    388 F.3d 990 (7th Cir. 2004) .........................................................................3

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    No. 09 Civ. 0511, 2010 WL 384736 (N.D. Cal. Jan. 29, 2010) ........................4

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989)......................................................................................5

*Mattel, Inc. v. MGA Ent., Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) .............................................................3

*Piper v. Gooding & Co. Inc.*,
    334 F. Supp. 3d 1009 (D. Az. 2018)................................................................5

*Relevant Group, LLC v. Nourmand*,
    No. 19 Civ. 05019, 2023 WL 4291654 (C.D. Cal. May 24, 2023) ..................4

*Religious Technology Center v. Wollersheim*,
    971 F.2d 364 (9th Cir. 1992) .........................................................................5

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)......................................................................................3

*State Farm Mutual Automobile Insurance. Co. v. Tri-Borough NY Medical Practice P.C.*,
    120 F.4th 59 (2d Cir. 2024) ...........................................................................4

*Straightshot Comms., Inc. v. Telekenex, Inc.*,
    No. 10 Civ. 268, 2011 WL 1770935 (W.D. Wash. May 9, 2011)....................5

*Tatung Co., Ltd. v. Shu Tze Hsu*,
   217 F. Supp. 3d 1138, 1153 (C.D. Cal. 2016) ...................................................... 2

*United States v. Fernandez*,
   388 F.3d 1199 (9th Cir. 2004) ............................................................................. 6

*United States v. Raniere*,
   384 F. Supp. 3d 282 (E.D.N.Y. 2019) ................................................................. 6

*Wagh v. Metris Direct, Inc.*,
   348 F.3d 1102 (9th Cir. 2003) ............................................................................. 6

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ............................................................................. 3

## INTRODUCTION

Ford's opposition to the Wirtz Defendants' motion to dismiss does nothing to move the First Amended Complaint into the realm of the plausible. Like its pleading, Ford's brief focuses almost entirely on KLG and associated professionals, paying short shrift to the Wirtz Defendants. For the reasons stated in the KLG Defendants' motion to dismiss and reply, which are incorporated by reference, Ford's allegations are insufficient to state a claim against any Defendant. And, given the paucity of allegations against them, there are yet additional reasons to dismiss the complaint as to the Wirtz Defendants. Ford's attempt to show the Wirtz Defendants' direction of an enterprise rests on nothing but conclusory allegations and impermissible group pleading. The three cases that Ford offers to show a pattern of racketeering involved neither wrongdoing by the Wirtz Defendants against Ford nor any threat of continuing activity. As for conspiracy, Ford admits that it pleads no actual interactions among most of the Defendants and ultimately fails to allege how, why, when, or where the Wirtz Defendants agreed to the sprawling scheme that Ford claims to have uncovered. The First Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I. THE WIRTZ DEFENDANTS DID NOT DIRECT ANY ENTERPRISE

Ford principally argues that it has pleaded direction by alleging that "Wirtz, along with other enterprise members, directed Becerra to create fictitious and fraudulent billing records for cases handled by the enterprise." ECF 103 ("Opp.") at 76. But the sole allegation that the opposition cites contains nothing but a conclusory claim that one Defendant, Becerra, carried out the purported fraud "at the direction of" every other individual Defendant. FAC ¶ 29; *see* ECF 92 ("Mot.") at 6–7. Ford's pleading does not identify a single record that Becerra "fabricated" for the Wirtz Defendants, FAC ¶ 29, nor identify a single action that the Wirtz Defendants instructed Becerra to take. In fact, the pleading elsewhere alleges that "KLG received timesheets from" the Wirtz Defendants, not the other way around. *Id.* ¶ 31. And Ford's

DEFENDANTS WIRTZ LAW APC AND RICHARD M. WIRTZ'S REPLY IN SUPPORT OF
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

own theory for Becerra's involvement—that she created "fictitious billing records in thousands of cases" to compensate for KLG's alleged failure to record time contemporaneously—has nothing to do with the Wirtz Defendants. Opp. 20.

Ford tries to make up for the inadequacy of this conclusory allegation by urging that there is "no flaw in a pleading where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." Opp. 65 (citation omitted). But Ford does not allege identical conduct. To the contrary, its pleading focuses on the KLG Defendants, Mot. 6, and its brief even acknowledges that the non-KLG Defendants might be dismissed from this action, Opp. 49. What's more, even where it tries to talk about the non-KLG Defendants as some sort of subgroup, Ford relies on allegations that concern other alleged enterprise members but still not the Wirtz Defendants. *Id.* at 20, 61 (citing FAC ¶¶ 11, 19, 82).

Later in its brief, Ford seems to acknowledge the impermissibility of its group allegations, insisting that even "foot soldiers" who "have some part in directing the affairs of the enterprise" may still face liability under RICO. Opp. 77 (quoting *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1153 (C.D. Cal. 2016)). That legal maxim is true enough. But Ford has failed to explain what "part" of the enterprise's affairs the Wirtz Defendants allegedly directed. *See* Mot. 7.

Finally, Ford urges the Court to infer the Wirtz Defendants' "direction" of the alleged enterprise from its alleged failure "to cease their coordination with the other members of the enterprise upon inquiry notice of the fraud." Opp. 79. What Ford labels inquiry notice, however, relates to a billing invoice that a non-party KLG attorney shared with Ford as part of a meet-and-confer in the *Torres* case, which KLG never submitted to the presiding court. FAC ¶ 48. Moreover, the only alleged occurrence involving the Wirtz Defendants after the *Torres* fee submission in 2021 is the receipt of the *Anderson* payment in 2022, but the fee application there had been submitted in 2019. *Id*. ¶¶ 48, 74. In other words, what happened in 2021 did not reveal

- 2 -

any "fraud," and what happened in 2022 could not plausibly show any continued "coordination." In all events, simply "being involved" in or "performing services for [an] enterprise does not rise to the level of direction" required to state a RICO claim. *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008); *see also Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

## II. THE WIRTZ DEFENDANTS DID NOT ENGAGE IN A PATTERN OF RACKETEERING

Ford's opposition confirms that, even accepting them as true and with the benefit of every inference, the racketeering allegations against the Wirtz Defendants are especially thin. Ford points to only three cases in support of its claim against the Wirtz Defendants, *see* Opp. 79–80, and none of the alleged conduct constitutes a predicate act, much less a pattern.

Ford first points to "predicate act #10 on Exhibit C," Opp. 79, which relates to the *Anderson* case. But Ford did not identify any improper billing in connection with the $38,270.98 payment it made to the Wirtz Defendants in *Anderson*. Mot. 3. The alleged fraud in *Anderson* involved a statement made by Mikhov, not the Wirtz Defendants. *Id.* at 9. Because *Anderson* did not involve any fraud by the Wirtz Defendants, it cannot constitute a RICO predicate act for purposes of establishing their liability. *Id.* at 10. Ford does not meaningfully argue to the contrary and instead appears to assume, without explanation, that the alleged fraud relates to the Wirtz Defendants simply by virtue of their being listed in Exhibit C. *See* Opp. 79.

Ford next points to the *Choi* and *Jordan* cases against other car manufactures. Opp. 79 (citing FAC ¶¶ 43–44). Although Ford insists that "it is of no moment that these cases involved non-Ford automakers," *id.*, Ford misses the point. As Ford's own cited authority confirms, a plaintiff must "demonstrate a triable issue of fact on injury to himself from at least one predicate act." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1004–05 (7th Cir. 2004); *see also Mattel, Inc. v. MGA Ent., Inc.*, 782 F.Supp.2d 911, 1023 (C.D. Cal. 2011) ("[a]t least one of the defendant's

- 3 -

predicate acts" must have been "the proximate cause of the plaintiff's injuries" (citation omitted)). *Anderson* does not fit the bill, because the Wirtz Defendants did not engage in any fraud, and *Choi* and *Jordan* do not either, because Ford cannot have been injured by fee applications in cases in which it was not a party. *See* Mot. 9–10; FAC ¶ 45 n.3.[1]

Even if Ford had sufficiently alleged that the Wirtz Defendants had engaged in racketeering activity, Ford would still come up short in alleging the requisite pattern.

Ford insists that it has alleged closed-ended continuity—*i.e.*, a closed pattern of repeated conduct—because even if the only two instances of alleged billing impropriety by the Wirtz Defendants ended in 2018, the Wirtz Defendants' participation in the alleged scheme lasted until 2021 based on the *Torres* case. Opp. 80. But, again, *Torres* did not involve any allegations of billing impropriety by the Wirtz Defendants, much less fraud, *see* Mot. 2, 7, 10, and a RICO defendant is entitled to dismissal where the plaintiff fails to allege that that "defendant conducted the enterprise through a pattern of racketeering activity." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, No. 09 Civ. 0511, 2010 WL 384736, at *3 (N.D. Cal. Jan.

---

[1] Ford separately argues that litigation activity can constitute a RICO predicate act. Opp. 24 n.1. But neither of the cases that Ford cites imposed RICO liability for alleged state-court litigation activities. In *Relevant Group, LLC v. Nourmand*, the court concluded that the conduct at issue was immunized from liability under the *Noerr-Pennington* doctrine. No. 19 Civ. 05019, 2023 WL 4291654, at *17 (C.D. Cal. May 24, 2023), *aff'd*, 116 F.4th 917 (9th Cir. 2024). And in *State Farm Mutual Automobile Insurance. Co. v. Tri-Borough NY Medical Practice P.C.*, the court expressly declined to "determine whether the state-court proceedings here constitute predicate acts under RICO," including because the plaintiff did not "contend that the state-court proceedings [were] predicate acts." 120 F.4th 59, 98 n.14 (2d Cir. 2024). By contrast, courts both within and outside of the Ninth Circuit have repeatedly concluded that, in circumstances like this, litigation activity does not amount to a RICO predicate act. *Acres Bonusing, Inc. v. Ramsey*, No. 19 Civ.05418, 2022 WL 17170856, at *11 (N.D. Cal. Nov. 22, 2022) (collecting cases); *see* Mot. 5 n.1.

29, 2010) (dismissing claim against defendants who were "involved in only one transaction, or a couple of transactions within a relatively short amount of time").

Unable to establish a closed period of repeated conduct, Ford falls back on the bald argument that "the conduct alleged in the FAC … by its nature projects into the future with a threat of repetition"—*i.e.*, that it has pleaded open-ended continuity. Opp. 80 (citation omitted). Yet the cases Ford relies on confirm that it cannot establish open-ended continuity. In *Religious Technology Center v. Wollersheim*, 971 F.2d 364 (9th Cir. 1992), for example, the court held that the continuity requirement was *not* met where "the only goal" of defendants was prosecution of a lawsuit and "there was no threat of activity continuing beyond the conclusion of that suit." *Id.* at 366. *Wollersheim* further noted that "[a] pattern of activity lasting only a few months"— which goes beyond anything Ford alleges against the Wirtz Defendants—"does not reflect the 'long term criminal conduct' to which RICO was intended to apply." *Id.* at 367 (citation omitted).[2]

## III. THE WIRTZ DEFENDANTS WERE NOT PARTIES TO ANY CONSPIRACY

Ford concedes that it alleges no interactions at all between the Wirtz Defendants and the Altman Defendants, Law Firm 1, or Law Firm 2. Opp. 81. That leaves only alleged interactions with the KLG Defendants, and Ford cannot make out a conspiracy claim based on these either. Not one of the few alleged instances of co-counseling between the KLG Defendants and the Wirtz Defendants are accompanied by particularized allegations of fraud. And Ford has not supplied any facts showing that the Wirtz Defendants "knowingly agree[d] to facilitate a scheme which includes

---

[2] Ford's other cases merely stand for the unremarkable proposition that open-ended continuity can be established by showing an ongoing scheme, but Ford has not done that. *See* Opp. 80 (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242–43 (1989); *Piper v. Gooding & Co. Inc.*, 334 F.Supp.3d 1009, 1020 (D. Az. 2018); *Straightshot Comms., Inc. v. Telekenex, Inc.*, No. 10 Civ. 268, 2011 WL 1770935, at *5 (W.D. Wash. May 9, 2011)).

the operation or management of a RICO enterprise." *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) (citation omitted).

Ford attempts to salvage its conspiracy claim against the Wirtz Defendants by arguing that "RICO conspirators need not conspire directly with every other co-conspirator." Opp. 81 (citing *United States v. Raniere*, 384 F. Supp. 3d 282, 304 (E.D.N.Y. 2019)). Even if true as a general proposition, Ford still must plead "facts showing how, why, when, or where [the Wirtz Defendants] agreed to participate in any RICO enterprise or commit any of the predicate acts." *Chung Goh v. Prima Fin. Grp., Inc.*, No. 17 Civ. 03630, 2017 WL 7887860, at *3 (C.D. Cal. July 26, 2017). Ford has not done so. Mot. 12–13.

\* \* \*

Ford says that it has spent "millions of dollars" examining Defendants' fee applications. Opp. 14. Yet Ford still cannot point to a single matter in which any alleged misconduct by the Wirtz Defendants caused it any harm. Ford's fallback argument that leave to amend should be granted because of "the importance of this case to Ford," Opp. 83–84, has no support in the law and ignores the "stigmatizing effect" of RICO claims "on those named as defendants," *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003) (citation omitted). Ford should not be granted a third opportunity to plead its claims, and the case against the Wirtz Defendants should come to an end.

## CONCLUSION

The Court should dismiss Ford's claims against the Wirtz Defendants with prejudice.

Dated: Los Angeles, CA
October 17, 2025

Respectfully submitted,

Matthew J. Craig
HECKER FINK LLP

*Counsel for Defendants Wirtz Law APC and Richard M. Wirtz*

# LOCAL RULE 11-6.2 CERTIFICATION

The undersigned counsel of record of Defendants Wirtz Law APC and Richard M. Wirtz certifies that this brief, when considered in conjunction with the concurrently filed briefs of the other Defendants, complies with the page limit set by the Court in its order dated September 9, 2025. *See* ECF 87.

Dated: Los Angeles, CA
October 17, 2025

Respectfully submitted,

Matthew J. Craig
HECKER FINK LLP

*Counsel for Defendants Wirtz Law APC and Richard M. Wirtz*