UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                                  Date: November 24, 2025

Title:     Ford Motor Co. v. Knight Law Group *et al.*

Present:  The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:   Order GRANTING Knight Law, Altman Law, and Wirtz Law Defendants' Motions to Dismiss WITH LEAVE TO AMEND, GRANTING Knight Law Defendants' Motion to Stay Discovery, and DENYING AS MOOT Knight Law Defendants' Motion to Strike (Dkts. 88, 89, 92, 93, 102)**

Before the Court are five motions.  First is a motion filed by Defendants Knight Law Group LLP, Dorothy Becerra, Roger Kirnos, Steve B. Mikhov, and Amy Morse (collectively, "Knight Law Defendants") to dismiss Plaintiff Ford Motor Company's ("Plaintiff") First Amended Complaint ("FAC").  *See* Dkt. # 89 ("*KLG MTD*").  Second is a motion to dismiss Plaintiff's FAC filed by Defendants Altman Law Group and Bryan C. Altman (collectively, "Altman Law Defendants").  *See* Dkt. # 88 ("*ALG MTD*").  Third is a motion to dismiss Plaintiff's FAC filed by Defendants Wirtz Law APC and Richard M. Wirtz (collectively, "Wirtz Law Defendants").  *See* Dkt. # 92 ("*Wirtz MTD*").  Plaintiff filed an omnibus opposition to all three motions, *see* Dkt. # 103 ("*MTD Opp.*"), and Defendants replied, *see* Dkts. # 112 ("*ALG Reply*"), 113 ("*Wirtz Reply*"), 114 ("*KLG Reply*").  The fourth motion is the Knight Law Defendants' motion to strike portions of the FAC.  *See* Dkt. # 102 ("*Mot. to Strike*").  Plaintiff opposed, *see* Dkt. # 106 ("*Strike Opp.*"), and the Knight Law Defendants replied, *see* Dkt. # 117 ("*Strike Reply*").  The final motion is the Knight Law Defendants' motion to stay discovery.  *See* Dkt. # 102 ("*Mot. to Stay*").  Plaintiff opposed, *see* Dkt. # 126 ("*Stay Opp.*"), and the Knight Law Defendants replied, *see* Dkt. # 130 ("*Stay Reply*").  On November 21, 2025, the Court heard oral argument on all five motions.  After considering the papers and the parties' oral arguments, the Court **GRANTS** the Knight Law, Altman Law, and Wirtz Law Defendants' motions to dismiss **WITH LEAVE TO AMEND**, **GRANTS** the Knight Law Defendants' motion to stay discovery, and **DENIES AS MOOT** the Knight Law Defendants' motion to strike.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:    Ford Motor Co. v. Knight Law Group *et al.*

I.    <u>Motions to Dismiss</u>

    A.    <u>Background</u>

        i.    *Factual Background*

This case arises out of allegedly inflated billing statements in "Lemon Law" cases. *See* Dkt. # 83 ("*FAC*").  The FAC alleges as follows:

Knight Law Group is a Lemon Law firm doing business in California.  *Id.* ¶ 10. During some of the relevant period, Knight Law Group housed the operations of Altman Law Group, "Law Firm 1," and "Law Firm 2."  *Id.*  Steve B. Mikhov is a founding partner and former managing partner of Knight Law Group.  *Id.* ¶ 11.  Mr. Mikhov "instructed other members of the enterprise, including [Bryan C.] Altman and [Altman Law Group], to pad their bills and inflate their fees."  *Id.*  Mr. Mikhov "handle[d] non-trial work, including operational tasks and marketing activities."  *Id.*  Amy Morse is a partner at Knight Law Group who has testified that she rarely recorded any billable time.  *Id.* ¶ 12.  Roger Kirnos is a partner at Knight Law Group who "has falsely attested, under oath, to the truth of the" billing records supporting Knight Law Group's fee applications.  *Id.* ¶ 13.  Dorothy Becerra is a former paralegal at Knight Law Group who oversaw the group of employees that "creat[ed] tens of thousands of false and invented time records in thousands of cases." *Id.* ¶ 14.  She also requested and received checks for fee payments related to those time records.  *Id.*  Bryan C. Altman is a partner at Quill & Arrow LLP and previously the "founder and member attorney" at Altman Law Group.  *Id.* ¶ 16.  Wirtz Law is a firm that partnered with Knight Law Group.  *Id.* ¶ 17.  Richard M. Wirtz is the founder and managing attorney of Wirtz Law.  *Id.* ¶ 18.

Mr. Mikhov and Knight Law Group worked with other legal professionals and experts, including other law firms, as co-counsel on the cases in question.  *Id.* ¶ 19.  Knight Law Group entered into agreements with other lawyers and required those lawyers to pay Knight Law Group a referral fee in violation of the California Rules of Professional Conduct.  *Id.*  "Attorney A is a member of Law Firm 1," and "Attorney B is a member of Law Firm 2"; both firms are in Los Angeles.  *Id.* ¶ 20.  Law Firm 1 and Law Firm 2 shared office space with Knight Law Group and Altman Law Group, and Attorney A and Attorney B worked with Knight Law Group and Altman Law Group on several Lemon Law cases. *Id.*  Attorney A billed more than 24 hours in one day on at least five different occasions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                          Date: November 24, 2025

Title:      Ford Motor Co. v. Knight Law Group *et al.*

and more than 20 hours in one day on at least 12 different occasions.  *Id.*  Other attorneys at Law Firm 1 billed more than 24 hours in one day on at least three different occasions and more than 20 hours in one day on at least six different occasions.  *Id.*  Attorney B and Law Firm 2 billed more than 24 hours in one day at least once and billed more than 20 hours in one day at least five different times.  *Id.*

California's Lemon Law, the Song-Beverly Consumer Warranty Act, Civil Code § 1790 *et seq.*, allows prevailing attorneys to recover fees and expenses from defendants, provided that the prevailing attorneys submit fee applications reflecting the work they performed on the case.  *Id.* ¶ 23; *see* Cal. Civ. Code § 1794(d).  Defendants submitted fake time records to support their fee applications, on which Plaintiff and courts relied.  *Id.* ¶ 24.  As a result of Plaintiff's reliance on those records, Plaintiff wrongfully paid more than $100 million to Defendants.  *Id.*

In October 2024, Plaintiff learned that Knight Law Group admitted that during much of the preceding decade, Knight Law Group had not prepared or recorded any contemporaneous time records.  *Id.* ¶ 26.  Knight Law Group admitted that it began keeping contemporaneous time records in 2018, and "that all purported time entries prior to that date were generated after the fact."  *Id.*  Knight Law Group began creating records after the fact to support their claims for fees after Plaintiff "began refusing to settle Lemon Law cases" unless Knight Law Group provided detailed time sheets.  *Id.* ¶ 2.  Plaintiff had begun investigating instances of overbilling but was previously unaware of Knight Law Group's admissions.  *Id.* ¶ 26.

Knight Law Group assembled a team of employees to create time records after the fact.  *Id.* ¶ 28.  Ms. Becerra oversaw that team, which created time records for attorneys from Knight Law Group, Altman Law Group, and Wirtz Law, including Mr. Altman and Mr. Wirtz.  *Id.*  When submitting fee applications, the relevant attorneys nonetheless represented that they had recorded their time contemporaneously.  *Id.*  Mr. Mikhov, Mr. Kirnos, Ms. Morse, Mr. Altman, and Mr. Wirtz all directed Ms. Becerra to create such back-dated billing records, and those attorneys received money that Plaintiff paid in reliance on those records.  *Id.* ¶ 29.  "In separate lawsuits, both of which settled in or around March 2022, Law Firm 1 and Law Firm 2 alleged that [Knight Law Group] artificially inflated its invoices to recover a disproportionate share of attorneys' fees awarded by courts."  *Id.* ¶ 30.  In other instances, when Knight Law Group received timesheets from co-counsel—including Mr. Wirz, Wirtz Law, Mr. Altman, Altman Law Group, Attorney

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                          Date: November 24, 2025

Title:    Ford Motor Co. v. Knight Law Group *et al.*

A, Attorney B, Law Firm 1, and Law Firm 2—it increased the number of hours that those lawyers represented they worked. *Id.* ¶ 31. Defendants intended for Plaintiff to rely on these records when paying fee awards and negotiating settlements. *Id.* ¶ 33.

Plaintiff has reviewed thousands of Knight Law Group's billing invoices and time records between 2013 and 2024, which Plaintiff believes represent roughly 10% of all consumer warranty cases that Defendants worked during that time. *Id.* ¶ 34. Plaintiff has identified various indications that Defendants' billing records were false. *Id.* Though Ms. Morse testified under oath that most of her work is administrative and supervisory, resulting in her rarely billing any time, submitted time entries indicate that Ms. Morse worked more than 24 hours in a day on 34 separate occasions. *Id.* ¶ 36. One of those days, November 30, 2016, shows Ms. Morse as having worked 57.5 hours, and another day, March 23, 2017, indicates that Ms. Morse worked 31.3 hours. *Id.* Time entries also represent that Ms. Morse worked between 20 and 23.9 hours in a day 38 different times. *Id.* Between February and April 2017, Ms. Morse averaged 16.5 hours of work per day (including weekends). *Id.* Plaintiff can identify from the subset of billing records to which it has access that Ms. Morse billed 3,106.45 hours in 2016, and that Ms. Morse billed 3,975.4 hours in 2017. *Id.* ¶ 37. Ms. Morse has testified that since 2016 she worked 60 hours per week and dedicated at least 70% of her time to non-billable administrative and supervisory work. *Id.* Billing records show that Ms. Morse spent time drafting and reviewing discovery documents and pleadings, but Ms. Morse testified that she spent no more than 5% of her total time drafting legal documents. *Id.* ¶ 38. Mr. Altman, who shared an office space with Knight Law Group, represented to Plaintiff that Ms. Morse "was not a 'burn the midnight oil' type of lawyer" and tended to work a more standardized "9-to-5" schedule. *Id.*

In 2024, Knight Law Group's representatives stated that it used Ms. Morse as a "catch-all" for listing discovery tasks on its billing records. *Id.* ¶ 39. Ms. Morse was the billing attorney on 95% of the cases that Plaintiff has reviewed, and she was the billing attorney on 92% of the entries with the description "Draft Complaint," even though Ms. Morse testified that she spent little time drafting legal documents. *Id.* ¶ 40. Between 2016 and 2024, billing records show more than 4,600 distinct entries with the description "Communicate with Client," though Ms. Morse testified that she never billed or recorded time for client communications. *Id.* Kristina Stephenson-Cheang, an associate with Knight Law Group, is shown to have worked more than 24 hours on seven different occasions. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:     Ford Motor Co. v. Knight Law Group *et al.*

¶ 41.  Ms. Stephenson-Cheang was the billing attorney on 90% of the cases that Plaintiff
has reviewed.  *Id.*

In other records, Defendants represented that attorneys appeared for the full day in
different locations on the same date.  *Id.* ¶ 43.  Knight Law Group filed billing records
stating that Mr. Wirtz billed 29 hours on July 24, 2018, by attending two trials in different
jurisdictions on the same day, although neither case involved Plaintiff.  *Id.*  Wirtz Law
attorney Amy Smith billed 24.5 hours for work preparing for and attending those trials on
July 18, 2018, in addition to billing 0.7 hours to another case.  *Id.* ¶ 44.

Defendants also billed for repetitive tasks.  *Id.* ¶ 46.  On at least 489 different entries,
an attorney "billed to draft a meet-and-confer letter and perform unspecified legal
research," which Defendants used to mask the time they spent on the individual tasks.  *Id.*
Many of these entries coincided with days during which attorneys billed more than 24
hours.  *Id.*  Defendants listed at least 596 different fee entries for "drafting [requests for
admission]," but there were "no economies of scale over time . . . ."  *Id.* ¶ 47.  Ms. Morse
and Ms. Stephenson-Cheang billed for drafting requests for admission on consecutive days
for extended periods of time, many of which coincided with days exceeding 24 hours in
billing.  *Id.*

Defendants at least once billed for the same work through separate timekeepers or
law firms, as *Torres v. Ford Motor Co.*, Central District of California Case No. 2:18-cv-
07983-SB-AS, shows.  *Id.* ¶ 48.  After the case settled in 2021, both Knight Law Group
and Wirtz Law provided invoices during the meet-and-confer process before filing their
motion for fees.  *Id.*  Wirtz Law's invoices reflected that Daniel Inscore of Wirtz Law
incurred time to prepare for, travel to, and attend the November 2019 deposition of
Plaintiff's expert.  *Id.*  Knight Law Group's invoices reflected that Deepak Devabose
incurred time for the same tasks, with Knight Law Group's entries showing a total of 8.5
hours and Wirtz Law's entries showing a total of 18.6 hours.  *Id.*  After Plaintiff flagged
these entries during the meet-and-confer process, Knight Law Group removed Mr.
Devabose's time entries.  *Id.*  "Mr. Inscore submitted a declaration on August 6, 2021 with
Wirtz Law's reply brief that explained that he 'alone took that deposition' and that the court
reporter incorrectly put Mr. Devabose's name in the transcript."  *Id.*  Additionally,
"Defendants routinely cross-billed," indicating that Mr. Wirtz, Mr. Altman, and their firms'
attorneys would have time billed through Knight Law Group billing invoices.  *Id.* ¶ 50.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                     Date: November 24, 2025

Title:     Ford Motor Co. v. Knight Law Group *et al.*

Moreover, Mr. Mikhov has submitted hundreds of invoices that contain fee entries with no date. *Id.* ¶ 51. "Such no-date entries exceed 1,200 hours," and "[n]early all entries are a combination of (i) initial communication with client, (ii) initial evaluation of client's claims, and (iii) analysis of vehicle documents," which "describe identical tasks with only slight wording differences." *Id.* For the 487 separate entries for "Initial communications with client and evaluation of clients' claims," 388 of those entries were for either exactly 1.0 hours or 0.8 hours. *Id.* ¶ 53. Mr. Altman "billed 0.7 or 0.8 hours on nearly every case for 'Reviewed case file, documents, repair orders, discovery,'" without differentiating between cases based on their complexity. *Id.* ¶ 54. Mr. Mikhov made entries for "analyze vehicle documentation" on "all or nearly all of the matters in which" Ms. Morse billed for "Draft Complaint." *Id.* ¶ 53. In 2016, Mr. Mikhov was Knight Law Group's second-highest biller, with a total of 1,350.10 hours in just the cases for which Plaintiff has invoices. *Id.* ¶ 52. Plaintiff has access to records showing that Mr. Mikhov logged 1,799 hours in 2017. *Id.* On July 31, 2017, Mr. Mikhov billed a total of 18.1 hours based on 84 separate entries in 59 separate cases. *Id.* ¶ 53.

Plaintiff could not have identified such billing inaccuracies when reviewing matters in isolation. *Id.* ¶ 57. Courts would have provided smaller fee awards to Defendants and Plaintiff would not have settled fee claims had it known of Defendants' billing irregularities. *Id.* Defendants expected courts and Plaintiff to rely on their fee representations. *Id.* ¶ 58. Mr. Kirnos stated in *Pendante v. Ford Motor Company et al.* (ML 18-02814-AB) that "[t]here is a presumption attached to our billing because there is a presumption that we are going to be ethical, that we are not going to submit lies to this Court. And we did not." *Id.* Still, Mr. Kirnos represented that Knight Law Group had kept billing records contemporaneously even though it had not done so. *Id.*

In certain cases, courts reduced Defendants' fee requests. For *In re Volkswagen "Clean Diesel" Marketing, Sales Practice and Product Liability Litigation* (MDL No. 2672 CBR (JSC)), United States District Judge Charles R. Breyer reduced Defendants' requested attorneys' fees by 50–90% for certain tasks. *Id.* ¶ 59. Judge Breyer determined that the plaintiffs' attorneys likely overstaffed the case, and those attorneys worked a significant number of hours while the case was stayed. *Id.* Judge Breyer also "excluded bills for vague entries and clerical tasks, as well as work performed for other plaintiffs, not involved in the fee application, whose cases actually went forward to trial." *Id.* Separately, for instances when Defendants have received fee awards, their receipt has created "a snowball effect by leading to less scrutiny of their time records." *Id.* ¶ 60. Mr. Mikhov

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                        Date: November 24, 2025

Title:    Ford Motor Co. v. Knight Law Group *et al.*

and Mr. Kirnos have signed declarations attaching previous fee awards and identifying various judges who had approved their fee applications.  *Id.*

Plaintiff has altered its actions based on Defendants' successful fee applications.  *Id.* ¶ 61.  Defendants' success led Plaintiff and other auto manufacturers "to make the rational business decision to overpay in settlement of Lemon Law cases . . . ."  *Id.*  "Outsize fee payments disincentivize auto manufacturers from proceeding to fee hearings and encourage them to pay inflated settlement values."  *Id.*; *see also id.* ¶ 76 (stating that Plaintiff "paid fee judgments much larger than it would have paid absent" Defendants' representations in billing records).

After Plaintiff filed this lawsuit, Knight Law Group altered its actions in certain cases.  Shortly after Plaintiff filed this case, Knight Law Group submitted a supplemental billing invoice in *Solisperez v. Ford*, Los Angeles Superior Court Case No. 23PSCV01411, which removed time attributed to Ms. Morse.  *Id.* ¶ 65.  Since Plaintiff filed this lawsuit, Knight Law Group "has begun withdrawing requests for payment for time entries" attributed to Ms. Morse and other Knight Law Group attorneys.  *Id.*

Defendants used the U.S. mail and interstate wires to file fee applications, negotiate settlements, and receive payments for their billing records.  *Id.* ¶ 66.  They did so in the following cases:

- *Buck v. Ford Motor Company*, Stanislaus County Superior Court Case No. 2008745, where the court ordered Plaintiff to pay Defendants $135,500 based on records that Knight Law Group filed and which included entries by Ms. Morse for March 23, 2017, when she billed 31.3 hours.
- *Duk v. Ford Motor Company*, San Diego County Superior Court Case No. 2016-00012779, where the court ordered Plaintiff to pay Defendants $101,450.78 based on records that Knight Law Group filed and included entries by Ms. Morse for November 30, 2016, when she billed 57.5 hours.
- *Burgess v. Ford Motor Company*, San Bernardino County Superior Court Case No. CIVDS1620111, where Ms. Morse's billing records contributed to a $10,675.16 fee award that Plaintiff paid to Defendants.
- *Duenas v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC638306, where Ms. Morse's billing records contributed to a $12,405.20 award that Plaintiff paid to Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:  Ford Motor Co. v. Knight Law Group *et al.*

- *Orosco v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC638222, where Ms. Morse's billing records contributed to a $15,005 award that Plaintiff paid to Defendants.

*Id.* ¶ 67.  Knight Law Group also included Ms. Morse's billing records in cases against other auto manufacturers. *Id.* ¶ 67 n.4.

Further, Knight Law Group endorsed and deposited checks for payments from Plaintiff to multiple law firms without Knight Law Group receiving an additional signatory from the other firms involved, including in *Santillo v. Ford Motor Company*, San Diego County Superior Court Case No. 37-2017-11591.  *Id.* ¶ 68.  In other cases, Knight Law Group received a single check although other attorneys billed time on the matter. *Id.* ¶ 69. These cases include *Beltran v. FCA US LLC*, Los Angeles County Superior Court Case No. BC617905, and *Vargas v. FCA US LLC*, Orange County Superior Court Case No. 30-2016-00845431-CU-BC-CJC.  *Id.*  Knight Law Group's billing records in those cases include time entries that predated when Knight Law Group began keeping contemporaneous time records. *Id.*

In many instances, Plaintiff settled cases based on Defendants' billing records. *Id.* ¶ 70.  In *Berroteran v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC542525, Plaintiff and Altman Law Group settled the latter's fee claim for $300,000. *Id.*  When seeking fees on behalf of Knight Law Group and other firms, Mr. Kirnos submitted a declaration that Knight Law Group had recorded time contemporaneously or "near in time to the work performed," even though many of the entries predated when Knight Law Group began recording time contemporaneously.  *Id.*  The court awarded $807,127.50 in attorneys' fees, and Plaintiff issued a $851,493.51 check to Knight Law Group.  *Id.*  In *Coon v. Ford Motor Company*, Riverside County Superior Court Case No. MCC1300767, Mr. Mikhov submitted a declaration in support of Defendants' fee application representing that Defendants recorded time contemporaneously, even though many of the time entries predated when Knight Law Group began doing so.  *Id.* ¶ 71.  The same was true in *Brown v. Ford Motor Company*, Butte County Superior Court Case No. 160060, and *Margeson v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC549430, where Mr. Mikhov and Mr. Altman submitted declarations in support of their fee applications.  *Id.* ¶¶ 72–73.  In *Anderson v. Ford Motor Company*, San Joaquin County Superior Court Case No. 39-2013-00299512-CU-BC-STK, Mr. Mikhov and Mr. Wirtz submitted similar declarations in support of their fee applications despite the same

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:     Ford Motor Co. v. Knight Law Group *et al.*

issue as to when Knight Law Group began recording time contemporaneously. *Id.* ¶ 74. In all the cases where Plaintiff paid Defendants' fee awards, Plaintiff sent checks via FedEx. *Id.* ¶¶ 67–74.

As to the elements of a RICO claim, "Defendants and Unnamed Enterprise Members have associated with one another in the Enterprise for the common purpose of preparing and  filing fraudulent billing records in support of fee demands, inflating the value of negotiated settlements, unethically splitting fraudulently obtained fees," and working in pursuit of the other harms that flow from such records. *Id.* ¶ 81. Individuals from Altman Law Group, Law Firm 1, and Law Firm 2 attended weekly calendar meetings in Knight Law Group's offices during which Ms. Morse "delegated assignments." *Id.* ¶ 82. Altman Law Group, Law Firm 1, and Law Firm 2 all shared office space with Knight Law Group during the period when "the Enterprise" operated. *Id.* Mr. Mikhov "oversaw the Enterprise's operations and . . . expressly directed Altman and [Altman Law Group] . . . to pad their bills and inflate their fees." *Id.* Knight Law Group received checks on behalf of "other plaintiff lawyers and firms associated with the Enterprise and cashed these checks without obtaining proper endorsements." *Id.* ¶ 83. Knight Law Group agreed to distribute proceeds from settlements and fee applications to other defendants. *Id.* Knight Law Group also advanced funds to Altman Law Group, Wirtz Law, Law Firm 1, and Law Firm 2. *Id.* Defendants were involved "in business involving clients in different states, auto manufacturers engaged in interstate commerce, and the federal courts' interstate e-filing system." *Id.* ¶ 84. Defendants utilized wire and mail communication through their electronic filing and service of court papers, mail service of court papers, and "wires and/or mailings between and among Defendants, or between and among Defendants" and Plaintiff. *Id.* ¶ 89.

*ii.    Procedural Background*

On May 21, 2025, Plaintiff filed its original complaint. *See* Dkt. # 1. After the Defendants had filed motions to dismiss, *see* Dkts. # 61, 65, 66, but before the Court heard the motions, Plaintiff filed the FAC on August 22, 2025. *See FAC*. On August 12, 2025, the Court granted a joint stipulation for an extended briefing schedule on Defendants' motions to dismiss. *See* Dkt. # 81. On September 9, 2025, the Court granted a joint stipulation allowing a reallocation of pages for the parties' briefing. *See* Dkt. # 87. That stipulation indicated that the Knight Law Defendants would "file a comprehensive memorandum of points and authorities addressing arguments and issues that are common

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                           Date: November 24, 2025

Title:    Ford Motor Co. v. Knight Law Group *et al.*

to all Defendants," and that the Altman Law Defendants and Wirtz Law Defendants would join those arguments.  *See* Dkt. # 86 ¶ 5.  On September 12, 2025, the Knight Law Defendants, Altman Law Defendants, and Wirtz Law Defendants each filed motions to dismiss.  *See KLG MTD*; *ALG MTD*; *Wirtz MTD*.

B.    Legal Standard

Rule 8 requires a complaint to clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss."  *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008).  Pleadings that are "verbose, confusing and conclusory" are subject to dismissal.  *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981).  A plaintiff fails to comply with Rule 8 if "all defendants are lumped together in a single, broad allegation."  *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  However, a cause of action's elements that are "supported by mere conclusory statements[] do not suffice."  *Id*.  Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To plead fraud with particularity, the pleader must state the false representations' time, place, and specific content.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  A pleader must "'identify the who, what, when, where, and how of the misconduct charged . . . .'"  *Davidson v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                      Date: November 24, 2025

Title:      Ford Motor Co. v. Knight Law Group *et al.*

---

*Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)).   The allegations "must set forth more than neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  In essence, the defendant must be able to adequately answer the fraud allegations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

   C.   <u>Discussion</u>

      i.   Noerr-Pennington *Doctrine*

   The *Noerr-Pennington* doctrine stems from the First Amendment's guarantee of "the right of the people . . . to petition the Government for redress of grievances."  U.S. Const. amend. I; *see E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).   "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa*, 437 F.3d at 929 (citing *Empress LLC v. City & Cnty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)).   This immunity extends to the use of "the channels and procedures" of state and federal courts to advocate causes. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009).

   "Under the *Noerr-Pennington* rule of statutory construction, we must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Sosa*, 437 F.3d at 931.  The Supreme Court has counseled that courts must not "lightly impute to Congress an intent to invade" the freedoms protected by the Bill of Rights. *Noerr*, 365 U.S. at 138.  "In determining whether the burdened conduct falls under the protection of the Petition Clause, we must give adequate 'breathing space' to the right of petition." *Sosa*, 437 F.3d at 931–32 (quoting *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 531 (2002)); *cf. Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341–42 (1974) (pronouncing that "[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters," since such protection "assure[s] to the freedoms of speech and press that 'breathing space' essential to their fruitful exercise").  As a result, the "breathing space

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                              Date: November 24, 2025

Title:     Ford Motor Co. v. Knight Law Group *et al.*

principle" protects "activities that do not come within the protection of the speech clause in their own right." *Sosa*, 437 F.3d at 933 (identifying "certain classes of speech not meriting protection in themselves," like certain false statements (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)), and "certain conduct, not in itself speech" (citing *Buckley v. Valeo*, 424 U.S. 1, 17 (1976)) that "is protected in order adequately to protect the actor's ability to exercise his free speech rights"). "Consistent with the breathing space principle, we have recognized that, in the litigation context, not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected by the *Noerr-Pennington* doctrine." *Sosa*, 437 F.3d at 934 (citing *Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, 944 F.2d 1525, 1528–29 (9th Cir. 1991)); *see United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021) ("The constitutional right to petition includes the right of access to the courts and therefore most litigation activities . . . are immunized from statutory liability." (citation omitted)).

Courts apply a three-part analysis to determine if the *Noerr-Pennington* doctrine immunizes a defendant's allegedly illegal conduct. *See B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022). First, a court must ask "whether the lawsuit imposes a burden on petitioning rights," after which it must analyze "whether the alleged activities constitute protected petitioning activity." *Kearney*, 590 F.3d at 644. Lastly, a court must analyze "whether the statute[] at issue must be construed to [avoid] that burden." *Id.* "If the answer to each step is 'yes,' then a defendant's conduct is immunized under *Noerr-Pennington*." *B&G Foods*, 29 F.4th at 535 (citing *Sosa*, 437 F.3d at 932). "But such immunity is not absolute, as 'neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham petitions.'" *Id.* (citing *Sosa*, 437 F.3d at 932). Courts analyze the whether the "sham exception" is applicable under step two of the *Noerr-Pennington* analysis. *See Sosa*, 437 F.3d at 938.

          *a.*       *Whether Plaintiff's Claims Burden Petitioning Rights*

Plaintiff's claims burden petitioning rights. The Ninth Circuit's analysis in *Sosa* is instructive. The *Sosa* panel ruled that "[a] successful RICO claim would quite plainly burden [defendant's] ability to settle legal claims short of filing a lawsuit," as the plaintiff's lawsuit sought "to impose RICO liability on [defendant] for sending the demand letters." *Id.* at 932. The panel observed that "[l]ike antitrust laws, RICO provides for private enforcement and treble damages," making the plaintiff's RICO suit a "burden on [defendant's] communication of demand letters almost identical to that posed by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                     Date: November 24, 2025

Title:      Ford Motor Co. v. Knight Law Group *et al.*

Sherman Act claims on the petitioning conduct at issue in *Noerr* and its progeny." *Id.* at 933; *see Noerr*, 365 U.S. at 144–45. Here, Plaintiff attempts to impose liability via the RICO statute for conduct connected to Defendants' fee petitions. *See generally FAC.* Accordingly, a successful RICO claim would "quite plainly" burden Defendants' ability to seek fees for its litigation activity. *See Sosa*, 437 F.3d at 932. As discussed further below, since Defendants' activity in seeking fees is at least "incidental to the prosecution of the suit," *see Theofel v. Farey-Jones*, 359 F.3d 1066, 1071 (9th Cir. 2004) (citation omitted), the RICO claim would burden petitioning activity.

Plaintiff's arguments do not save it. It asserts that its "lawsuit does nothing to prevent Defendants from prosecuting Lemon Law suits or filing fee petitions if successful in those suits. Instead, Ford's lawsuit merely holds Defendants to their obligation to play by the rules applicable to all litigants when they do bring suits on behalf of their clients." *MTD Opp.* 27 (internal quotation marks and citations omitted). This argument echoes the plaintiff in *Kearney*, who contended that "if her lawsuit were successful, it would not discourage future eminent domain proceedings, just fraudulent behavior in those lawsuits." *Kearney*, 590 F.3d at 645. As Defendants identify, the *Kearney* panel rejected that argument, since "'the question at this stage is not whether the conduct at issue is fraudulent and abusive, but instead whether the success of [the] lawsuit would constitute a burden on petitioning rights.'" *KLG Reply* 12 (quoting *Kearney*, 590 F.3d at 645). In both *Sosa* and *Kearney*, the plaintiffs alleged misconduct in the vein of Plaintiff's allegations here. *See Sosa*, 437 F.3d at 927 (identifying that plaintiffs alleged that defendant's conduct constituted extortion and fraud); *Kearney*, 590 F.3d at 643 (listing plaintiff's causes of actions as, *inter alia*, RICO and conspiracy to violate RICO, false promise, and fraud and deceit). And in both cases the Ninth Circuit determined that the plaintiffs' suits would burden petitioning conduct. *See Sosa*, 437 F.3d at 932; *Kearney*, 590 F.3d at 645; *see also BE & K*, 536 U.S. at 530. The Court finds no reason to depart from analogous precedent.

Plaintiff's assertion that *Pyankovska v. Abid*, 65 F.4th 1067 (9th Cir. 2023), controls is incorrect. *See MTD Opp.* 27–28. There, analyzing the Wiretap Act, the Ninth Circuit held that "filing illegally obtained evidence on a public court docket is not conduct immunized under *Noerr-Pennington*." *See Pyankovska*, 65 F.4th at 1071. Rejecting the *Noerr-Pennington* argument at step one, the Court examined whether the plaintiff's lawsuit in federal court seeking to hold the defendant liable for disclosing illegally intercepted communications in state court custody proceedings "impose[d] an unconstitutional 'burden' on state court litigation." *See id.* at 1077. Finding that it did not, the panel

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:     Ford Motor Co. v. Knight Law Group *et al.*

reasoned in part that illegally intercepted communications were not petitions under the meaning of *Noerr-Pennington*. *See id.* The panel concluded that petitions are "documents and pleadings[] in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something . . . ." *Id.* (citing *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005)). Rather than characterizing the recordings as "petitions," the court deemed them "illegal evidence." *Id.* Here, since Plaintiff disputes the accuracy of Defendants' fee petitions to the courts, Defendants' conduct in this case more squarely constitutes "petitioning activity" than did that of the defendant in *Pyankovska*. *See, e.g.*, *FAC* ¶ 28 (referring to Defendants' alleged misrepresentations to the courts when submitting claims for attorneys' fees). Moreover, with Ninth Circuit having concluded that RICO claims "quite plainly" burden petitioning activity—including sending allegedly fraudulent demand letters, *see Sosa*, 437 F.3d at 932–33—the fact that *Pyankovska* arose under the Wiretap Act rather than as a RICO claim makes *Sosa* the more applicable precedent.

Accordingly, the Court deems Plaintiff's suit to burden petitioning activity.

        *b.*    *Whether Defendants' Conduct Was Based on Protected Petitioning Activity*

        *1.*    *Petitioning Activity*

The Court finds that Defendants' conduct in preparing billing records and submitting fee petitions was based on petitioning activity. "The Ninth Circuit has applied the [*Noerr-Pennington*] doctrine to protect petitioning activity as well as activity incidental to and in anticipation of petitioning activity." *Cal. Pharm. Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1167 (C.D. Cal. 2009) (citation omitted). As described above, "[l]itigation is among the petitioning activities protected under *Noerr-Pennington*." *PTI, Inc. v. Philip Morris, Inc.*, 100 F. Supp. 2d 1179, 1197 (C.D. Cal. 2000).

Here, because Defendants prepared the allegedly false billing statements both based on litigation activity and in anticipation of submitting fee petitions, their conduct constituted petitioning activity. "Protected petitioning activity includes bringing a lawsuit, defending a lawsuit brought by another, and filing papers with a court." *Cisco Sys., Inc. v. Beccela's Etc., LLC*, 403 F. Supp. 813, 825 (N.D. Cal. 2019) (citing *Freeman*, 410 F.3d at 1184). This activity includes documents "in which plaintiffs or defendants make

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                          Date: November 24, 2025

Title:     Ford Motor Co. v. Knight Law Group *et al.*

representations and present arguments to support their request that the court do or not do something." *Freeman*, 410 F.3d at 1184. Plaintiff predicates its Civil RICO claim on allegations of mail and wire fraud, *see FAC* ¶¶ 66–75, doing so by identifying activities directly connected to litigation to form those allegations, *see id.* ¶¶ 67–74 (highlighting cases from which alleged fraud extends). It is difficult to imagine how Defendants' actions were not "incidental to the prosecution of the suit." *See Theofel*, 359 F.3d at 1071 (citation omitted).

Plaintiff's argument to the contrary is unavailing. Plaintiff states that its "action arises out of and is based on Defendants' fraudulent billing scheme—not underlying litigation activity." *MTD Opp.* 25 (emphasis omitted). But Plaintiff's description ignores the activities for which Defendants were billing: litigation. Moreover, it ignores that in nearly all the past litigation that Plaintiff references, Defendants submitted fee petitions to courts based on that billing. *See FAC* ¶¶ 67–74.

Nor does Plaintiff's authority save its argument. Plaintiff cites only *State Compensation Insurance Fund v. Drobot*, No. SACV 13-956 AG (CWx), 2013 WL 12125748 (C.D. Cal. Nov. 20, 2013), in support of its argument, but *Drobot* is inapposite. There, "the fraudulent acts as alleged occurred before any relevant [Workers' Compensation Appeals Board] proceeding began and were not done in anticipation of such proceedings." *Drobot*, 2013 WL 12125748, at *5 (citation omitted). Here, by contrast, all of the billing that Plaintiff alleges was fraudulent stemmed from ongoing litigation or preparation for litigation. Plaintiff asks the Court to ignore such a distinction, instead seeking a determination that *Drobot*'s "logic and result" apply with equal force here. *MTD Opp.* 26. Plaintiff then refers to "fraudulent billings that Defendants sent to Ford," and "payments that Defendants fraudulently induced Ford to send them." *See id.* Yet Plaintiff's description again omits the basis for such billing—litigation—making Defendants' alleged activity "incidental to and in anticipation of petitioning activity," *see Cal. Pharm. Mgmt.*, 669 F. Supp. 2d at 1167; *PTI*, 100 F. Supp. 2d at 1197 ("[l]itigation is among the petitioning activities protected under *Noerr-Pennington*"). As such, Defendants' conduct was based on petitioning activity.

### 2.     Application of "Sham Exception"

"A party cannot claim the protection of the *Noerr-Pennington* doctrine if it engaged in 'sham' litigation." *Easton Diamond Sports, LLC v. Monsta Athletics, LLC*, 720 F. Supp.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:     Ford Motor Co. v. Knight Law Group *et al.*

3d 849, 861 (C.D. Cal. 2024) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014)).  There are three circumstances in which the sham litigation exception may apply: "first, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful," *Sosa*, 437 F.3d at 938 (citing *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)), "second, where the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' and for unlawful purposes," *id.* (quoting *Kottle*, 146 F.3d at 1060), and third, if the purportedly unlawful conduct "consists of making intentional misrepresentations to the court, litigation can be deemed a sham if 'a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy,'" *Kottle*, 146 F.3d at 1060 (quoting *Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 159 (9th Cir. 1993)).

As an initial matter, the parties disagree as to the scope of the sham litigation exception.  *Compare MTD Opp.* 34 (contending that "where, as here, the allegedly unlawful petitioning activity includes specific instances of misconduct short of the entire litigation, the Ninth Circuit focuses the sham inquiry on whether those specific instances constituted a sham" (citation omitted)), *with KLG Reply* 14–15 (arguing that the court must evaluate the litigation as a whole to determine if the exception applies).  Regardless of which view the Court takes, the exception is ill-suited to these facts.  Since Plaintiff argues that all three grounds for the sham litigation exception apply, the Court will analyze each in turn.

First, the Court does not deem Defendants' actions "objectively baseless" or their motive in bringing such litigation unlawful.  Plaintiff argues that "Defendants rely on the imprimatur of the legal profession and their law firms to engage in illegal conduct," and that Defendants' "fee litigation based on false and manufactured evidence is by definition 'objectively baseless.'"  *MTD Opp.* 36–37.  Defendants retort that because they prevailed in the underlying Lemon Law cases and fee petitions, their petitioning activity was not a sham.  *See KLG Reply* 13 (citing *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 n.5 (1993)).

"A 'sham' situation involves a defendant whose activities 'are not genuinely aimed at procuring favorable governmental action' at all, not one 'who genuinely seeks to achieve his governmental result, but does so through improper means.'"  *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 3800 (1991) (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 n.4 (1988)).  "A winning lawsuit is by definition a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:      Ford Motor Co. v. Knight Law Group *et al.*

reasonable effort at petitioning for redress and therefore not a sham." *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000).

Defendants rightfully identify that they prevailed on both the overall Lemon Law litigation and the fee petitions in question, *see KLG Reply* 13, which provides strong support for the argument that their actions were not "objectively baseless," *cf. Kottle*, 146 F.3d at 1063 (analogizing prevailing at an administrative hearing to prevailing in litigation); *Relevant Grp.*, 116 F.4th at 932 ("[W]e have previously said that settlement indicates a lawsuit is not objectively baseless."). Plaintiff does not cite any case where a party prevailed but its actions nonetheless fell within the sham litigation exception.[1]  *See MTD Opp.* 33–38.  Nor does *Theofel* save Plaintiff.  *See MTD Opp.* 36–38.  There, the "magistrate judge found that the subpoena was 'transparently and egregiously' overbroad and that defendants acted with gross negligence and in bad faith," which the Ninth Circuit deemed tantamount to a finding of objective baselessness. *See Theofel*, 359 F.3d at 1079. Not only did the defendants in *Theofel* not prevail previously, but the Court in this case has not made a similar finding with respect to Defendants' Lemon Law suits or those cases' fee petitions.  In light of this Circuit's controlling precedent as to the effect of a successful petition, *see White*, 227 F.3d at 1232, and the dearth of case law to the contrary, the Court cannot deem Defendants' larger Lemon Law suits or the petitions in that litigation objectively baseless.  Because Defendants' actions were not objectively baseless, the Court need not consider subjective intent.  *See Pro. Real Est. Invs.*, 508 U.S. at 57 (holding that "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent"); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) ("Because the threatened litigation was not objectively baseless, we do not analyze [defendant's] subjective motivation." (citation omitted)).[2]

---

[1] When asked at the hearing to identify such a case, Plaintiff could not do so.  Instead, Plaintiff referred to *Pyankovska*, which analyzed the application of *Noerr-Pennington* under step one. *Pyankovska*, 65 F.4th at 1077.  The *Pyankovska* panel declined to conduct any analysis on step two, where courts determine whether the sham litigation exception applies. *Id.* at 1078; *see B&G Foods*, 29 F.4th at 535.

[2] The Court is also cognizant of the Ninth Circuit's guidance that that "courts should not 'lightly conclude in any *Noerr-Pennington* case that the litigation in question is objectively baseless, as doing so would leave that action without the ordinary protections afforded by the First Amendment, a result we would reach only with great reluctance.'"  *Relevant Grp.*, 116 F.4th at 934 (quoting *White*, 227 F.3d at 1232).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:25-cv-04550-MWC-PVC                           Date: November 24, 2025

Title:      Ford Motor Co. v. Knight Law Group *et al.*

As to the second basis for the sham exception, Plaintiff insists that it may invoke the exception because Defendants' conduct "involves a series of petition brought for an unlawful purpose and without regard for the petitions' merits." *MTD Opp.* 38 (citing *Sosa*, 437 F.3d at 938). Defendants respond that the FAC's allegations as to the high success rate of Defendants' suits and fee petitions mean that Plaintiff "has not plausibly alleged a series of lawsuits brought without regard to the merits." *KLG Reply* 14.

"When dealing with a series of lawsuits, the question is not whether any one of them has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits . . . ." *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994). Here, "[t]he inquiry in such cases is prospective: Were the legal filings made, not out of a genuine interest in redressing grievances, but as a pattern or practice of successive filings undertaken essentially for the purposes of harassment." *Id.*; *see B&G Foods*, 29 F.4th at 539 (same). At base, the FAC details that Defendants were successful in suing under the Song-Beverly Act and submitting fee petitions accordingly. *See, e.g.*, *FAC* ¶¶ 67–74. But Plaintiff attempts to reframe the inquiry, arguing that the court should consider "'allege[d] indicia of bad faith'" and "'the magnitude and nature of the collateral harm imposed on plaintiffs by defendants' petitioning activity.'" *See MTD Opp.* 38 (quoting *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 180–81 (3d Cir. 2015)). But the out-of-circuit guidance in *Hanover* has its limits. There, the court determined that the defendants' tactics "suggest[ed] they were more interested in delay than in redressing any grievances," in addition to the court finding that defendants brought an "objectively baseless" legal challenge. *Hanover*, 806 F.3d at 181. Here, by contrast, the Court has already rejected Plaintiff's argument as to objective baselessness, nor does the FAC convince the Court that Defendants lacked an interest in prevailing in the Lemon Law suits or on their fee petitions (rather, the FAC alleges just the opposite).[3]

---

[3] Plaintiff asserts that it must prevail on this argument because "Defendants do not address this basis for the sham exception and have thus waived any argument contesting its application here." *MTD Opp.* 38. To be sure, the Court "does not permit a party pursuing a motion to dismiss to 'sandbag' an opposing party by raising a new basis for dismissal for the first time in the reply." *Hadley v. McDaniel*, No. 307-CV-00529-LRH-VPC, 2009 WL 395817, at *3 n.3 (D. Nev. Feb. 17, 2009). But Defendants raised the *Noerr-Pennington* doctrine and the sham litigation exception in their motion to dismiss. *See generally KLG MTD*. Since a party can make a rebuttal argument in its reply brief, *see U.S. Bank NA v. Varela*, No. CV-15-02575-PHX-DLR, 2017 WL 264493, at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:     Ford Motor Co. v. Knight Law Group *et al.*

As to the third basis for exception, Plaintiff notes that "'where the allegedly unlawful conduct consists of making intentional misrepresentations to the court and those misrepresentations or the party's knowing fraud upon . . . the court deprive the litigation of its legitimacy,'" the sham exception applies. *MTD Opp.* 30 (quoting *Kearney*, 590 F.3d at 647). Defendants respond by contending that the FAC does not allege that their alleged misrepresentations deprived the entire lawsuits or fee proceedings of their legitimacy, since the FAC "does not deny that Knight Law performed substantial legal services in the Lemon Law cases or that Knight Law was entitled to substantial fee awards." *KLG Reply* 15.

The Court does not deem Defendants' alleged conduct to have deprived the entire litigation or the fee petition proceedings of their legitimacy. As to the overall litigation, Plaintiff does not allege that the inflated fee petitions so undermined Defendants' clients' claims that the whole suit was illegitimate. *See, e.g.*, *MTD Opp.* 31–32 (quoting FAC to argue that Defendants' submissions "stripped the fee application process" of legitimacy). Without such an allegation, the Court cannot deem allegedly inflated fee petitions to have deprived the entire litigation of its legitimacy. *Cf. Kottle*, 146 F.3d at 1063 (noting that plaintiff could overcome 12(b)(6) motion only if his alleged that misrepresentations were so severe as to have deprived "entire" proceeding of its legitimacy).

Even if the relevant inquiry focused only on Defendants' fee petitions, Plaintiff's theory of the case creates an obstacle to its argument that the fee proceedings lacked any legitimacy. Specifically, it alleges that Defendants sought "inflated" attorneys' fees, but not that Defendants lacked any entitlement to fees in the relevant Lemon Law cases. *See FAC* ¶ 2. By Plaintiff's own admission, Defendants' alleged scheme would have proceeded by "claiming a few extra hundred in fees here and a few extra thousand in fees there . . . ." *See MTD Opp.* 14. As such, most of the fee awards in these cases would have been proper, making it difficult for the Court to find that the fee petition process lacked any legitimacy. *See Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. SACV 15-2034 JVS (JCGx), 2020 WL 5239856, at *9 (C.D. Cal. Aug. 3, 2020) (identifying that although the Ninth Circuit has not explicitly defined what kind of misrepresentation deprives litigation of its legitimacy, "a court in this District has noted that it is 'apparent that any misrepresentation exception to the doctrine should be limited to misrepresentations

---

*2 (D. Ariz. Jan. 20, 2017), the Court finds it appropriate to consider Defendants' arguments on the second prong of the sham litigation exception.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:      Ford Motor Co. v. Knight Law Group *et al.*

respecting the substance of the claim that show that the party's litigation position had no objective basis.'" (quoting *Thomas v. Hous. Auth. of Cnty. of L.A.*, No. CV046970MMM(RCX), 2006 WL 5670938, at *9 (C.D. Cal. Feb. 28, 2006))); *contra Lumasense Techs., Inc. v. Advanced Eng'g Servs., LLC*, No. 20-cv-07905-WHO, 2021 WL 1197417, at *2, 6 (N.D. Cal. Mar. 30, 2021) (applying the sham exception to an underlying trade secrets dispute where defendant allegedly, *inter alia*, "attached product drawings to its disclosure statement that directly copied and/or were derived from [plaintiff's] copyright protected technical drawings" but defendant represented to court that it provided such drawings to plaintiff).

Despite Plaintiff's contention to the contrary, the Court finds *Silver v. Duel* instructive. *See* No. CV 21-9522 PA (KSx), 2022 WL 16859646 (C.D. Cal. July 11, 2022). The *Silver* court analyzed whether a fictitious unlawful detainer letter that was allegedly part of the "scheme to recover possession of the subject Unit, and not in furtherance of any objects of the litigation" meant that the sham litigation exception applied. *See id.* at *6. The complaint in *Silver* alleged that the defendants' "sole motivation in filing the unlawful detainer action was to intimidate [plaintiff] and to add leverage to their ongoing threats" to force plaintiff to surrender possession of his unit. *Id.* Plaintiff correctly points out that much of the court's sham litigation exception analysis focused on the plaintiff failing to allege "sufficient well-pleaded facts to plausibly allege that the unlawful detainer was objectively baseless and that defendants' motive in filing it was unlawful." *See id.*; *MTD Opp.* 35. But the court also noted that the plaintiff's allegation that "the unlawful detainer complaint falsely alleged nonpayment of rent"—nonpayment which had served as the basis for the defendant's legal action—"is not the type of misrepresentation that deprives the [unlawful detainer action] of legitimacy." *Silver*, 2022 WL 16859646, at *6. Here, even accepting as true the allegation that some of Defendants' purported work entitling them to fees was fictitious, that misrepresentation is not sufficient on its own to deprive the entire fee petition process—let alone the entire lawsuit—of legitimacy.

Lastly, to the extent there is any doubt that the sham litigation exception applies, the Court reiterates the *Noerr-Pennington* doctrine's "ultimate purpose, which is to 'overprotect' potentially baseless petitions to ensure that First Amendment rights are not chilled." *Relevant Grp.*, 116 F.4th at 934–35 (citing *Sosa*, 437 F.3d at 934). That ultimate purpose is necessary to afford adequate "breathing space" to the right of petition. *See Sosa*, 437 F.3d at 931–32; *BE & K*, 536 U.S. at 531–32.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:25-cv-04550-MWC-PVC                          Date: November 24, 2025

Title:      Ford Motor Co. v. Knight Law Group *et al.*

Accordingly, the Court finds that the sham litigation exception does not apply to Defendants' fee petitions.

### c.    Whether Statute Must Be Construed to Avoid Burden

The Court notes that neither party provides argument as to the third step of the *Noerr-Pennington* analysis, which asks whether the statute at issue must be construed to avoid burdening protected petitioning activity. As such, the Court does not understand the issue to be contested. Nonetheless, the Court will provide brief analysis on the issue, for which *Sosa* offers instruction. *See* 437 F.3d at 939–42. "RICO's general definition of racketeering activity does not in terms clearly reach the conduct at issue here," so "we turn to the particular RICO predicates alleged here to determine whether they do so or whether, instead, they are susceptible of a construction that avoids the serious constitutional question of Petition Clause immunity." *Id.* at 939. The Court in *Sosa* found that the mail and wire fraud statutes—the same predicate racketeering acts alleged here—"do not unambiguously reach demands to settle reasonably based legal claims." *Id.* at 940. Similarly, the Court does not find the text of the mail and wire fraud statutes to unambiguously reach the submission of inflated fee petitions. *See* 18 U.S.C. §§ 1341, 1343; *Sosa*, 437 F.3d at 940; *see also Pick v. Kay*, No. 20-55804, 2022 WL 193197, at *1 (9th Cir. Jan. 21, 2022) ("Because the statute does not clearly require the imposition of liability for the protected petitioning conduct at issue, we must construe the statute so as to avoid burdening that conduct." (cleaned up)); *Evans Hotels, LLC v. Unite Here Loc. 30*, 433 F. Supp. 3d 1130, 1153 (S.D. Cal. 2020) (same). As such, the Court must construe the statutes to avoid burdening protected petitioning activity.

### d.    Determination

Plaintiff's only remaining argument on the *Noerr-Pennington* doctrine is that the Court cannot consider the doctrine at this stage because it is an affirmative defense. *See MTD Opp.* 23. Plaintiff is correct that the Court can dismiss under Rule 12(b)(6) on the basis of an affirmative defense "only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citing *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013)). The Court has made such a determination here, and the case law is replete with analogs. *See, e.g., Or. Nat. Res. Council v. Mohla*, 944 F.2d 531, 536 (9th Cir. 1991); *Garmong v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:25-cv-04550-MWC-PVC                          Date: November 24, 2025

Title:    Ford Motor Co. v. Knight Law Group *et al.*

*Tahoe Reg'l Planning Agency*, No. 3:17-cv-00444-RCJ-WGC, 2021 WL 4129386, at *7 (D. Nev. Sept. 9, 2021).

Based on the Court's findings above, Defendants are entitled to *Noerr-Pennington* immunity for their petitioning activity, and dismissal is appropriate on this basis alone. But to the extent that there is any doubt as to the appropriate application of the *Noerr-Pennington* doctrine when evaluating Plaintiff's motion to dismiss, the Court finds below that the FAC fails to plead a substantive RICO claim on the merits.

    *ii.*    *Civil RICO*

Under 18 U.S.C. § 1962(c), Plaintiffs must plausibly allege that Defendants participated in (1) the conduct (2) of an enterprise that affects interstate commerce, (3) through a pattern (4) of racketeering activity (5) causing injury to the plaintiff's business or property by the conduct constituting the violation. *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Failure to plead even one of these elements precludes a plaintiff from stating a claim. *See, e.g.*, *Ruggles v. Ige*, No. 20-cv-00247-DKW-KJM, 2020 WL 6731704, at *2 n.2 (D. Haw. Nov. 16, 2020) ("Because failure to satisfy this element alone sinks [plaintiff's] Section 1962(c) claim, analysis of the other elements is unnecessary." (citing *Living Designs*, 431 F.3d at 361)).

    *a.*    *RICO Enterprise*

Defendants first argue that Plaintiff has not adequately alleged a RICO enterprise. *See KLG MTD* 26. An enterprise under the RICO statute "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "To show the existence of [a RICO] enterprise . . . plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish that purpose." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

    *1.*    *Common Purpose*

To plead a common purpose sufficient to allege the existence of RICO enterprise, a plaintiff typically must show more than the parties engaging in ordinary business conduct

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:   Ford Motor Co. v. Knight Law Group *et al.*

and an ordinary business purpose. *See Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016) (citation omitted). "Courts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises." *Gomez v. Guthy-Renker, LLC*, No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015).

Defendants argue that the FAC alleges little more than an ordinary commercial relationship and lacks allegations to support the idea that they are bound together by a common fraudulent purpose. *See KLG MTD* 26–29. Plaintiff asserts that the FAC alleges much more than an ordinary business relationship. *See MTD Opp.* 40–43. Specifically, Plaintiff contends that "evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise may in particular cases coalesce." *Id.* 40 (quoting *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., and Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 980 (N.D. Cal. 2018)).

Plaintiff relies on primarily on *In re Chrysler*, but this case does not persuade the Court that Plaintiff has sufficiently alleged a common purpose. There, the court determined that the allegations which "plausibly support[ed] that Defendants committed multiple acts of mail and wire fraud also support[ed] that they shared a common purpose to deceive regulators into believing that the Class Vehicles" were compliant with emission standards. *In re Chrysler*, 295 F. Supp. 3d at 980. That court acknowledged that the defendants "also organized themselves for the more general purpose of manufacturing and selling vehicles." *Id.* The court highlighted that some of the hidden emissions control devices could have had only a deceitful purpose, which was to cheat emissions tests. *Id.* at 981 ("Such devices are not developed by accident or as part of routine business dealings."). And the plaintiff in that case plausibly alleged that each defendant "participated in developing or implementing the" emissions control devices. *Id.*

Here, by contrast, the FAC lacks specificity as to the various defendants' roles in conducting fraudulent billing. Disregarding conclusory allegations, there is no question that Plaintiff plausibly alleges that Defendants back-dated their billing, failed to record time contemporaneously, and used Ms. Morse as a "catch-all"—all reprehensible practices for the practice of law. But these allegations on their own lack an indication that the parties came together for the purpose of fraudulently inflating their billing, rather than having formed for the purpose of bringing Lemon Law cases but having utilized poor billing practices in doing so. Conclusory allegations that Defendants' purpose was fraudulent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                          Date: November 24, 2025

Title:     Ford Motor Co. v. Knight Law Group *et al.*

does not save the FAC.  *Maye v. Online Land Sales LLC*, No. 2:23-cv-00173-DAD-CKD, 2024 WL 382294, at *10 (E.D. Cal. Feb. 1, 2024) (citing *Comm. To Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1174–75 (E.D. Cal. 2017)). Unlike the emission control devices in *In re Chrysler*, alternative explanations for Defendants' actions abound.  *See In re Chrysler*, 295 F. Supp. 3d at 981; *Iqbal*, 556 U.S. at 681 (finding that the court must draw all reasonable inferences in favor of the non-moving party but must also assess whether there are "more likely explanations" for defendant's conduct); *GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 447 (N.D. Cal. 2017) ("Among other things, when faced with two possible explanations for a defendant's behavior, a plaintiff cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the defendant's alternative explanation." (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1008 (9th Cir. 2013))).

The same is true of Plaintiff's reliance on *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 941 (N.D. Cal. 2013).  The allegations in that case differed because the plaintiff there detailed the role of each defendant in carrying out the fraud—roles and practices that lacked a plausible alternative explanation as to why the parties would have been acting as they did.  *See id.*; *contra MTD Opp.* 41 (identifying that Knight Law Group defendants marketed, litigated cases, and worked on fee motions, while other attorneys' roles were "to win trials"—activities characteristic of any co-counsel relationship in a Lemon Law case).

Defendants' authority is more apt.  The Court will highlight two cases in particular that offer guidance.  *In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation* analyzed a complaint that pled "a number of facts from which the Court *might* conclude that the parties acted improperly in response to incentives set by Countrywide or by the securitization process generally, and then attempts to bootstrap a conclusion that these thousands of diverse and disparate entities shared a common purpose and cooperated with each other in furtherance of that purpose."  Nos. 2:11-ML-02265-MRP (MANx), 2:11-cv-07166-MRP (MANx), 2:11-cv-09889-MRP (MANx), 2012 WL 10731957, at *9 (C.D. Cal. June 29, 2012) (emphasis in original).  Of course, Plaintiff's allegations here do not concern thousands of entities, but the *Countrywide* court analyzed various subsets of the defendants at issue in a way that is instructive in analyzing the present case.  As to a group of underwriters, the court acknowledged the allegation that those defendants "waived in" loans that did not meet standards, but the court determined that "this type of bilateral conduct does not constitute a RICO enterprise."  *See id.* at *10.  Since "[e]very

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:      Ford Motor Co. v. Knight Law Group *et al.*

securities issue has an underwriter[,] if a claim of underwriter complicity were sufficient, then every securities claim could be recast as a RICO claim." *Id.*  Since co-counsel relationships in litigation are so common, the same logic applies to Plaintiff's allegations, even if some of the Defendants committed fraud.  The court in *Countrywide* also identified claims suggesting that certain defendants' actions were unilateral, *see id.* at *11, which likewise applies to much of what Plaintiff alleges with respect to Knight Law Group's billing practices.

Another case analogous to this one is *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 826 F. Supp. 2d 1180 (C.D. Cal. 2011).  There, the court determined that the complaint alleged "no more than that Defendants' primary business activity—the design, manufacture, and sale or lease of Toyota vehicles—was conducted fraudulently," which is "incompatible with the types of conduct RICO was enacted to prevent." *See id.* at 1202–03.  Here, Plaintiff alleges that Defendants' billing—the primary activity at any for-profit law firm hoping to stay in business—was conducted fraudulently.   As such, these allegations too would be "incompatible with the types of conduct RICO was enacted to prevent." *See id.* at 1203.  Plaintiff attempts to distinguish *Toyota* by arguing that the FAC alleges that "Defendants engaged in a fraudulent billing scheme under the guise of a legitimate enterprise . . . ." *See MTD Opp.* 42 n.7.  The Court sees no reason why that same logic would not apply to *Toyota*.  Perhaps Plaintiff is suggesting that Toyota's car sales did not constitute "the guise of a legitimate enterprise," though the Court strains to understand why that would be the case.  Regardless, *Toyota* offers useful guidance. *See also Shaw*, 220 F. Supp. 3d at 1056 ("While Plaintiffs repeatedly state that [defendants] shared a common fraudulent purpose . . . the facts alleged in this action . . . suggest ordinary business activity on the part of relevant actors.").

Ultimately, Plaintiff relies on the syllogism that because there are allegations of fraudulent billing, and the parties co-counseled on cases involving such billing, then the parties must have co-counseled with the purpose of billing fraudulently.  Its argument that there are "objective indicia of this association for a common purpose, including overlapping billing, shared office space, complicated financial arrangements including referral fees and advances, [and] weekly meetings between the enterprise members," *see MTD Opp.* 40, are all also indicia of a co-counsel relationship.  Without more, this Court will not turn an ordinary business relationship into a RICO enterprise. *See In re Jamster Mktg. Litig.*, No. 05-cv-0819, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) ("Without

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                           Date: November 24, 2025

Title:      Ford Motor Co. v. Knight Law Group *et al.*

the adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose."); *see also id.* ("Plaintiffs cannot meet their particularized pleading burden by artfully inserting modifiers such as 'unauthorized charges' or 'fraudulently collecting monies' in an attempt to show a common purpose."); *Eclectic Props.*, 751 F.3d at 997–98 (highlighting need for "a significant level of factual specificity" for a court to reasonably infer that ordinary business conduct is plausibly part of a fraudulent scheme).

Accordingly, the FAC does not allege a common purpose sufficient to allege a RICO enterprise.

> ### 2.    *Structure / Organization*

"An ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'" *Odom*, 486 F.3d at 552 (quoting *U.S. v. Cagnina*, 697 F.2d 915, 921–22 (11th Cir. 1983)). For purposes of § 1962(c), a single individual or entity cannot be both the RICO enterprise and an individual defendant. *See Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) (holding that plaintiff could not assert RICO claim against defendant bank because bank was alleged to be a RICO enterprise). An "associated-in-fact enterprise" is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 945–46 (2009) (internal quotation marks and citation omitted). An associated-in-fact enterprise need not have a specific "particular organizational structure, separate or otherwise." *Odom*, 486 F.3d at 551.

The FAC offers various allegations to show that Defendants were involved in an ongoing organization. It states that: Mr. Mikhov instructed other members of the enterprise to pad their bills and fees, *see FAC* ¶ 11; Ms. Becerra oversaw a team to create falsified time records, *id.* ¶ 28; Knight Law Group shared office space with several of the other firms referenced in the FAC, *id.* ¶ 20; several of the individual defendants directed Ms. Becerra to create back-dated billing records, *id.* ¶ 29; and several of the law firms involved held weekly meetings in Knight Law Group's offices where Ms. Morse "delegated assignments," *id.* ¶ 82. Defendants argue that the FAC has alleged only that "three law firms occasionally worked together and, from time to time, submitted supposedly inflated fee applications." *KLG MTD* 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:25-cv-04550-MWC-PVC                              Date: November 24, 2025

Title:     Ford Motor Co. v. Knight Law Group *et al.*

The parties further disagree as to whether the FAC's allegations are sufficiently specific to show the existence of an ongoing organization. *Blantz v. California Department of Corrections and Rehabilitation, Division of Correctional Health Care Services* is instructive. *See* 727 F.3d 917 (9th Cir. 2013). The panel there determined that an allegation that "on information and belief, [a defendant] directed the other defendants to take the actions that form the basis of the complaint" was insufficient to state a claim. *See id.* at 926–27 (cleaned up); *see also id.* at 926 ("For example, Blantz alleges: 'On information and belief, the CDCR's failure to notify Plaintiff of th[e] negative assessment was at the direction of defendants WINSLOW, DOS SANTOS CHIN [sic], RITTER, HILL and DOES 1–20 inclusive.'"). Here, without any additional detail or explanation as to the basis of Plaintiff's allegations, the FAC's claims as to Mr. Mikhov's direction to other members of the enterprise, the individual defendants' direction to Ms. Becerra, and Ms. Morse's delegation of assignments suffer from the same defects as those of the complaint in *Blantz*. Plaintiff cannot just allege that various defendants "directed the other defendants to take the actions that form the basis of the complaint." *Id.* at 926–27. The Court acknowledges the "exception to the general prohibition against making fraud allegations on information and belief exists for 'matters [that are] peculiarly within the opposing party's knowledge.'" *See Tortilla Factory, LLC v. Health-Ade LLC*, No. CV 17-9090-MWF (AFMx), 2018 WL 6174708, at *8 (C.D. Cal. July 13, 2018) (quoting *Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819, 824 (N.D. Cal. 2017)). But this exception does not allow a plaintiff to lob conclusory allegations as to the structure of an organization and still state a RICO claim. The Court recognizes the factual limitations preceding discovery, but it also will not render *Iqbal* a dead letter.

Left with the FAC's more specific allegations, the Court does not deem these sufficient to state a claim of an ongoing organization. This case resembles *Chagby v. Target Corp.*, where the plaintiff alleged that defendants "hired an advertising agency to create internet and newspaper advertisements." No. CV 08-4425-GHK (PJWx), 2008 WL 5686105, at *3 (C.D. Cal. Oct. 27, 2008). The court there noted that "hiring the advertising agency, regardless of whether such advertisements were commissioned for fraudulent purposes, does not mean that Defendants and their advertising agency established a vehicle to commit the predicate acts of mail or wire fraud." *Id.* Here, the FAC plausibly alleges the existence of a co-counsel relationship between many of the Defendants and that these Defendants shared office space—still, it does not offer enough to plead that Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                          Date: November 24, 2025

Title:        Ford Motor Co. v. Knight Law Group *et al.*

established this co-counsel relationship to be the vehicle for fraudulent billing.[4]   *See Gomez*, 2015 WL 4270042, at \*10.

Accordingly, the Court determines that the FAC has not plausibly alleged an ongoing organization.

### 3.        Continuing Unit (Longevity)

To operate as a "continuing unit," a plaintiff need not allege that "every member 'be involved in each of the underlying acts of racketeering, or that the predicate acts be interrelated in any way.'" *Odom*, 486 F.3d at 552–53 (citing *United States v. Qaoud*, 777 F.2d 1105, 1117 (6th Cir. 1985)). "Instead, the continuity requirement focuses on whether the associates' behavior was 'ongoing' rather than isolated activity." *Id.* at 553 (citing *U.S. v. Patrick*, 248 F.3d 11, 19 (1st Cir. 2001)). To show sufficient continuity, there must be "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946.

Putting aside the Court's determinations on the first two prongs of the RICO enterprise factors, the Court finds there to be sufficient continuity. *Odom* explained that "[a]n almost two-year time span is far more than adequate to establish that [defendants] functioned as a continuing unit." *Odom*, 486 F.3d at 553. Other cases in this Circuit reach similar conclusions. *See, e.g.*, *Three Rivers Provider Network, Inc. v. Meritain Health, Inc.*, No. 07CV1900 WQH (BLM), 2008 WL 2872664, at \*15 (S.D. Cal. July 23, 2008) (determining that nearly four-year timespan of activity was sufficient to show continuing unit); *Alves v. Players Edge, Inc.*, No. 05CV1654 WQH (CAB), 2007 WL 6004919, at \*11 (S.D. Cal. Aug. 8, 2007) (finding allegation of three-year timespan sufficient); *CBC Framing, Inc. v. Flores*, No. CV 08-00150 MMM (JCx), 2008 WL 11337555, at \*9 (C.D.

---

[4] Plaintiff cites this Court's order in *Blue Cross and Blue Shield Oklahoma v. South Coast Behavioral Health LLC*, No. 2:24-cv-10683 MWC (AJRx), 2025 WL 2004500 (C.D. Cal. June 20, 2025), for the proposition that the Court cannot consider the potentially benign nature of the meetings that Plaintiff references. *See MTD Opp.* 44–45. The allegations in *Blue Cross* were much more specific as to the structure and nature of the alleged organization, including as to the role of each party in carrying out the alleged scheme. *See Blue Cross*, 2025 WL 2004500, at \*1–4. Here, by contrast—even accepting all of Plaintiff's allegations as true and disregarding Defendants' assertions to the contrary—the Court has little information as to the structure of the alleged organization and no basis to find that the meetings' purpose was a nefarious one.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  2:25-cv-04550-MWC-PVC | Date: November 24, 2025 |
| Title:  Ford Motor Co. v. Knight Law Group *et al.* | |

Cal. Sept. 22, 2008) (similar). Here, Plaintiff alleges that Defendants submitted fraudulent billing records in cases spanning at least 2018 to 2022, *see FAC* ¶¶ 67–74, which exceeds the two-year timespan sufficient in *Odom*, *see Odom*, 486 F.3d at 553.

Accordingly, despite the FAC's other deficiencies in alleging a RICO enterprise, the Court finds the longevity requirement satisfied.

> *b.    Determination*

Because Plaintiff has failed to plead a RICO enterprise by falling short on two of three prongs, Plaintiff cannot state a RICO claim. *See Stitt v. Citibank, N.A.*, 748 Fed. Appx. 99, 101 (9th Cir. 2018) ("By failing to plead an enterprise, Appellants did not state a plausible RICO claim under 18 U.S.C. § 1962(c) or (d)."). Accordingly, the Court need not analyze the other RICO factors and **GRANTS** Defendants' motions to dismiss Plaintiff's RICO claim under 18 U.S.C. § 1962(c).

> *iii.    RICO Conspiracy*

Plaintiff second claim is one for RICO Conspiracy under 18 U.S.C. § 1962(d). *See generally FAC*. "There can be no RICO conspiracy without having committed a RICO violation." *Flores v. Emerich & Fike*, 416 F.2d 885, 912 (E.D. Cal. 2006); *see Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (identifying that "the district court held that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy. We agree."). Here, the Court has already determined that the FAC fails to adequately plead a substantive RICO violation under 18 U.S.C. § 1962(c). Because Plaintiff's "allegations under 1962(c) are insufficient . . . their allegation under 1962(d) fails as well." *Flores*, 416 F. Supp. 2d at 912. Accordingly, the Court **GRANTS** Defendants' motions to dismiss Plaintiff's RICO Conspiracy claim.

> D.    <u>Leave to Amend</u>

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                     Date: November 24, 2025

Title:   Ford Motor Co. v. Knight Law Group *et al.*

"unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). In the Ninth Circuit, courts should grant leave to amend with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotation marks and citation omitted). Here, Plaintiff correctly points out that although it "previously amended its complaint once, it did so without the benefit of any guidance from the Court as to what the Court viewed as deficiencies . . . in its pleading." *See MTD Opp.* 84. The Court agrees that Plaintiff's lone amendment to its complaint is not enough to preclude the Court from providing Plaintiff leave to amend at this juncture. Accordingly, the Court **GRANTS** leave to amend.[5] Plaintiff must file an amended complaint no later than end of day on December 22, 2025. Failure to do so will result in dismissal of the action with prejudice.

II.   Motion to Stay Discovery

The Knight Law Defendants seek to stay discovery pending resolution of their motions to dismiss. *See generally Mot. to Stay.* Federal Rule of Civil Procedure 26(c)(1) gives courts broad discretion in controlling discovery, including "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see, e.g.*, *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery. Such rulings will not be overturned unless there is a clear abuse of discretion."). District courts also have "broad discretion to manage discovery and control the course of litigation under Federal Rule of Civil Procedure 16." *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011) (citation omitted); *see also Wood v. McEwen*, 644 F.2d 797, 801–02 (9th Cir. 1981). However, "the Federal Rules of Civil Procedure do[] not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10-cv-02630 JAM KJN, 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011).

___

[5] When drafting its amended complaint, Plaintiff's counsel should not include matter that is "immaterial, impertinent, or scandalous." *See* Fed. R. Civ. P. 12(f). Moreover, this Court "takes very seriously an attorney's ethical obligation to treat his or her adversary with civility and respect." *Bratton v. FCA US LLC*, No. 17-cv-01458-JSW, 2017 WL 11687946, at *12 (N.D. Cal. June 22, 2017) (citing *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1263 (9th Cir. 2010) (noting that a lack of civility "undermines the truth-seeking function of our adversarial system")). Accordingly, Plaintiff's counsel should omit references to private jets, past convictions, tax liens, and the like.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:      Ford Motor Co. v. Knight Law Group *et al.*

District courts in the Ninth Circuit often apply a two-pronged test to decide whether to stay discovery. *Mlejnecky*, 2011 WL 4889743, at *6; *Seven Springs Ltd. P'ship v. Fox Cap. Mgmt. Corp.*, No. S-07-0142 LKK GGH, 2007 WL 1146607, at *1 (E.D. Cal. 2007). The first prong requires that the pending motion "be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is aimed." *Mlejnecky*, 2011 WL 4889743, at *6. The second prong requires the court to "determine whether the pending, potentially dispositive motion can be decided absent additional discovery." *Id.* If either prong is not met, discovery should proceed. *Id.* As this Court detailed in *Mason v. Spring EQ LLC*, No. 5:24-cv-1833-MWC (AGRx), 2024 WL 5424385 (C.D. Cal. Nov. 27, 2024), regarding the first prong of the test for a discovery stay, "there does not appear to be a clear consensus in the district courts on the applicable standard." *See id.* at *2. This Court explained that it finds the *Seven Springs* approach appropriate, requiring the party seeking a stay of discovery to demonstrate "'by [a] clear and convincing [showing], that it will prevail on the merits of its dispositive motion.'" *Id.* (quoting *Seven Springs*, 2007 WL 1146607, at *2).

Considering the Court's determination on Defendants' motions to dismiss, the analysis is straightforward. At this juncture, the Defendants' motions have proven dispositive as to both of Plaintiff's claims, though the Court acknowledges that it has provided Plaintiff leave to amend. The Court will not guess as to the veracity of Plaintiff's future amended complaint—at this stage, the Court has found that Plaintiff has failed to state a claim. As to the second prong, the Court was able to decide the motion to dismiss absent discovery. As such, both factors counsel in favor of the granting the stay. *See Seven Springs*, 2007 WL 1146607, at *2.

Plaintiff is correct that this analysis decides the motion to stay. *See Stay Opp.* 14. Still, the Court is mindful of considerations buttressing its determination, including those stemming from other courts' approaches to similar motions. Most pertinent here is "the expected extent of discovery in light of the number of parties and the complexity of the issues in the case." *See Skellerup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 601 (C.D. Cal. 1995). Plaintiff's acknowledgment of the cost just to conduct its initial investigation— "tremendous expense" by one description, *see FAC* ¶ 3, "millions of dollars" by another, *see MTD Opp.* 14—indicates that discovery would be similarly costly for both parties. Even worse, that expense failed to yield an FAC that stated a claim. To seek sufficient discovery in hopes of overcoming summary judgment and prevailing at trial would likely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: November 24, 2025

Title:      Ford Motor Co. v. Knight Law Group *et al.*

require a much greater expense.  Though Plaintiff roundly rejects that its requested discovery would be burdensome based on attorney-client privilege and work product concerns, the Court does not share Plaintiff's confidence.  *See Real v. Cont'l Grp., Inc.*, 116 F.R.D. 211, 213–14 (N.D. Cal. 1986) (highlighting that the Ninth Circuit "has held that attorney-client privilege embraces attorney time, records and statements to the extent they reveal litigation strategy and the nature of the services provided . . . ."); *see also Rodriguez v. Danell Custom Harvesting, LLC*, No. 1:16-cv-01848-SAB, 2018 WL 11440486, at *1 (E.D. Cal. 2018) ("Billing records can be protected by the attorney client privilege or work product doctrine where they 'reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law . . . .'" (quoting *Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992))).

To the extent that Plaintiff is concerned that the Court's granting the stay will prejudice Plaintiff by stripping it of time to conduct discovery, *see Stay Opp.* 16, the Court may consider the role of the stay if the parties later request additional time to complete discovery.  But the parties will have nearly six months to complete discovery after expiration of the stay and should expect to do so by the current August 14, 2026 deadline (barring any additional discovery orders from the Court).

Since the Knight Law Defendants sought a stay of discovery "pending resolution of the motions to dismiss," *Mot. to Stay* 11, one could consider the issue moot.  But it would be perverse to rule that because the Defendants prevailed on their motion to dismiss, they are no longer entitled to a stay of discovery, especially when the Court's analysis centers on the likely outcome of a dispositive motion.  *See Mlejnecky*, 2011 WL 4889743, at *6.  The Court presumes not only that Plaintiff will amend its complaint, but that Defendants will again file motions to dismiss—to defer the stay until after Defendants did so would result in needless uncertainty.  Accordingly, the Court **GRANTS** the motion and **STAYS** discovery until March 2, 2026.

III.    Motion to Strike

Because the Court has granted the motion to dismiss Plaintiff's FAC, the Court **DENIES AS MOOT** the Knight Law Defendants' motion to strike portions of the FAC. *See, e.g., Smith v. World Sav. and Loan Ass'n*, No. 2:10-CV-02855 JAM-JFM, 2011 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:25-cv-04550-MWC-PVC                  Date: November 24, 2025

Title:  Ford Motor Co. v. Knight Law Group *et al.*

---

338495, at *5 (E.D. Cal. Jan. 31, 2011) ("Since the Court has dismissed all of Plaintiff's claims, the Motion to Strike is moot.").[6]

IV.    Conclusion

       For the foregoing reasons, the Court **GRANTS** the Knight Law, Altman Law, and Wirtz Law Defendants' motions to dismiss **WITH LEAVE TO AMEND**, **GRANTS** the Knight Law Defendants' motion to stay discovery, and **DENIES AS MOOT** the Knight Law Defendants' motion to strike.  Plaintiff must file an amended complaint no later than end of day on December 22, 2025.  Failure to do so will result in dismissal of the action with prejudice.  The Court **STAYS** discovery until March 2, 2026.

       **IT IS SO ORDERED.**

                                                                            :
                                          **Initials of Preparer**   TJ

---

[6] When evaluating Plaintiff's next complaint, the Court will remain mindful not to consider improper material.  As to the allegations that Defendants believe improper, Plaintiff can readily assuage any potential concerns by indicating the sources from which it draws its allegations.