# EXHIBIT K

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2       FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

3

4    HACKLER DAGHIGHIAN MARTINO &  )

5    NOVAK, P.C., a California     )

6    professional corporation,     )

7                    Plaintiff,    )

8          VS.                     ) Case No.

9    KNIGHT LAW GROUP, a California) 20STCV19127

10   limited liability partnership,)

11   et al.,                       )

12                   Defendants.   )

13   _____)

14   AND RELATED CROSS-ACTIONS.    )

15   _____)

16

17

18       VIDEOCONFERENCE DEPOSITION OF AMY MORSE

19            FRIDAY, JANUARY 15, 2021

20                  10:03 A.M.

21

22   REPORTED BY:

23   Sari M. Knudsen, CSR No. 13109

24   JOB No. 4392862

25

                                          Page 1



17    A    My role is sort of more on the administrative

18    side.  I supervise attorneys and staff.

19    Q    And how long have you had this supervising

20    role?

21    A    Maybe since 2016, 2015 or 2016.

22    Q    Okay.  What was your role before that?

23    A    I was just an associate -- I was a law clerk,

24    and then I was an associate attorney, and that's it.

25    Q    Okay.  As a supervising attorney -- so you've

Page 8

```
 1    testified that you've taken approximately one to two

 2    depositions.   Correct?

 3         A    That is correct.

 4         Q    Have you drafted motions for summary judgment?

 5         A    I have not.

 6         Q    Have you been lead counsel at a trial, a jury

 7    trial?

 8         A    No.

 9         Q    Have you been lead counsel at a court trial?

10         A    No.

11         Q    Have you been lead counsel in arbitration?

12         A    No.

13         Q    Have you second-chaired a jury trial?

14         A    No.

15         Q    You know what I mean by "second chair"?

16         A    Yes, I do.

17         Q    Have you second-chaired a court trial?

18         A    No, I have not.

19         Q    Have you second-chaired an arbitration?

20         A    No.

21         Q    Have you propounded written discovery?

22         A    Yes.

23         Q    When is the last time you propounded written

24    discovery?

25         A    Many years ago when I was a law clerk
```

Page 9

1      Q    And then -- so maybe 2013, you then became an
2    associate attorney.  Correct?
3      A    Correct.
4      Q    Okay.  Did you propound written discovery as
5    an associate attorney?
6      A    Yes.
7      Q    Okay.  And how many years were you a -- an
8    associate attorney?
9      A    Three years.
10     Q    So from about 2013 to approximately 2016?
11     A    Correct.
12     Q    Okay.  And then from 2016 to present, you've
13   been -- and I don't want to mischaracterize it, but
14   would you classify it as a supervising attorney?
15     A    Yes.
16     Q    Have you propounded written discovery since
17   the time you've been a supervising attorney?
18     A    No.
19     Q    Have you taken any depositions since the time
20   you've been a supervising attorney?
21     A    No.
22     Q    Have you drafted or prepared any written
23   motions since the time that you've been a supervising
24   attorney?
25     A    Personally, no.

1       Q    Do you directly communicate with clients in

2    your role as a supervising attorney?

3       A    No.

4       Q    When is the last time you've had direct

5    communications with a client?

6       A    I don't recall.

7       Q    Would it have been prior to the time that you

8    were a supervising attorney?

9       A    Yes.

10       Q    Has it been your role -- as a supervising

11    attorney, do you have communications with opposing

12    counsel?

13       A    Yes.

14       Q    How often do you communicate with opposing

15    counsel in your role as a supervising attorney?

16       A    Not very often.

17       Q    When is the last time you think you

18    communicated with opposing counsel on a particular

19    case?

20       A    I don't recall.

21       Q    Do you review the pleadings that are filed in

22    the various cases that you are supervising?

23       A    Yes.

24       Q    How many cases do you currently oversee, best

25    estimate?

Page 12

███    ███    ████████████████████████

███    ███    ████████████████

```
 3       Q     Okay.   And what are the different groups
 4    within the litigation department?
 5       A     I will try to name all of them.   But again, I
 6    don't know if I have them all memorized.
 7             So we have a complaint team.   Not client
 8    complaints, the actual pleadings.
```

███    ███    ████████████████████

███    ███    ██████████████████████████

███    ███████████████████████████████

███    ████████████████████████

███    ██████████████████████████

███    ████████████████████████████

███    █████████████████

███    ███    ███████████████████

███    ████████████████████████████

███    ███    ████████████████████

███    █████████████

███    ███    ████████████████████

███    ███████████████████████████████

███    ████████████████

███    ███    ███████████████████

███    █████████████████████████████

███    ████████████████

Page  45

9        Q    Sure.  In 2020, typically how many hours would

10   you bill a week?

11       A    Typically about 60.  And I should clarify

12   that.

13            That is a combination of billable and

14   non-billable hours or just myself.  Because a lot of --

15   as I explained earlier, a lot of what I do is on the

16   administrative end of things, and that would not be

17   billed to a case as far as I know.

18       Q    But you still enter that as time which you get

19   credit for?

20       A    Yes.

21       Q    Okay.  So if you bill approximately 60 hours a

22   week, that's about 240 hours a month between billable

23   and non-billable time.  Would that be fair to say?

24       A    I didn't do the calculation, but I will take

25   your word for it and -- yes.

Page 80

```
 1          SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2        FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT
 3     _____
                                     )
 4     HACKLER DAGHIGHIAN MARTINO &   )
       NOVAK, P.C., a California      )
 5     professional corporation,     )
                                     )
 6              Plaintiff,            )
                                     )
 7        vs.                         ) No. 20STCV19127
                                     )
 8     KNIGHT LAW GROUP, a            )
       California limited liability  )
 9     partnership; STEVE BORISLAV    )
       MIKHOV, an individual; and     )
10     DOES 1 through 10, inclusive,)
                                     )
11              Defendants.           )
       _____)
12                                   )
       AND RELATED CROSS-ACTION.      )
13     _____)
       _____
14
15      VIDEO-RECORDED DEPOSITION OF STEVE MIKHOV, ESQUIRE
16                  VIA REMOTE COUNSEL
17                Beverly Hills, California
18               Saturday, April 17, 2021
19                     Volume I
20
21     Reported by:
       LORI SCINTA, RPR
22     CSR No. 4811
23     Job No. 4544328
24
25     PAGES 1 - 321
```

                                                    Page 1



```
 5      Q   Okay.  And when you manually enter your      02:24:49

 6   time, where do you input it?

 7      A   Paper.

 8      Q   And do you have a -- do you just write it

 9   down on any piece of paper in front of you or do you

10   have a notepad that is meant for cataloging your       02:25:03

11   billing entries?

12           MR. BROWN:  Objection.  Waiver.

13           THE REFEREE:  Overruled.

14           THE WITNESS:  It's a hodgepodge.  A little

15   bit of this, a little bit of that.                     02:25:15
```

Page 194

```
  2        Q    Okay.  And then do you -- on whatever sheet

  3    of paper you were writing down tasks, do you keep

  4    doing that for an entire week or do you -- by day?

  5    How does it go?                                    02:27:25

  6        A    Like I said, it's just from time to time I

  7    make note of my entries if I can.

  8        Q    And when you make note of your entries, is

  9    it done contemporaneously or right after you

 10    completed the particular task?                     02:27:40

 11        A    Hopefully.

 12             I do it close in time, what I can remember,

 13    the task and the -- and the work.

 14        Q    And then you take that piece of paper and

 15    what do you do with it?                            02:27:57

 16        A    It either goes to Lupe or to Roger.

 17        Q    Okay.  And do you know what they do with

 18    it?

 19        A    They enter it into the fee motion.

 20        Q    Okay.  And when you say, "They enter it     02:28:07

 21    into the fee motion," do you write down your time

 22    referring back to maybe a month earlier when you

 23    might have done a particular task?

 24             MR. BROWN:  Objection.  Waiver estoppel.

 25             THE WITNESS:  I'm sure I have.            02:28:26
```

                                                  Page 196

7     Q   And do you sometimes refer two months back

8   to recreate time as to particular tasks that you've

9   done?

10     A   I'm sure I have.          02:28:44

11     Q   What about going further back in time?  Do

12   you -- oftentimes, when it's time for a fee motion

13   to be prepared, do you do your best to go back and

14   recreate all the work you did for that particular

15   matter?          02:29:04

16         MR. BROWN:  Objection.  Vague as to

17   "oftentimes," waiver estoppel.

18         THE REFEREE:  I'll sustain on the

19   "oftentimes" ground.

20   BY MR. COLE:          02:29:13

21     Q   On a particular case when a fee motion is

22   set to be filed, have you recreated your time for

23   prior tasks that you completed in the past?

24         MR. BROWN:  Objection.  Relevance, waiver.

25         THE REFEREE:  Overruled.     02:29:28

Page 197

```
 1              THE WITNESS:  I'm sure I have.

 2    BY MR. COLE:

 3         Q    And when you write down the amount of time

 4    you spent on that task, you're just giving your best

 5    estimate as to the amount of time you spent?        02:29:41

 6         A    Yes.

 7         Q    And in the billing -- in the fee motion

 8    department, do they have authority to enter time for

 9    various tasks for you absent you handing them a

10    written sheet or Mr. Kirnos handing them a written    02:30:01

11    sheet?

12              MR. BROWN:  Objection.  Relevance.

13              THE WITNESS:  Sure.
```

Page 198

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2           FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT
 3    _____
                                   )
 4    HACKLER DAGHIGHIAN MARTINO &  )
      NOVAK, P.C., a California     )
 5    professional corporation,    )
                                   )
 6              Plaintiff,          )
                                   )
 7        vs.                      )No. 20STCV19127
                                   )
 8    KNIGHT LAW GROUP, a          )
      California limited liability )
 9    partnership; STEVE BORISLAV  )
      MIKHOV, an individual; and   )
10    DOES 1 through 10, inclusive,)
                                   )
11              Defendants.         )
      _____)
12                                 )
      AND RELATED CROSS-ACTION.     )
13    _____)
      _____
14
15               DEPOSITION OF ELIN HOWARD
16                  VIA REMOTE COUNSEL
17                Los Angeles, California
18               Wednesday, March 3, 2021
19                     Volume I
20
21    Reported by:
      LORI SCINTA, RPR
22    CSR No. 4811
23    Job No. 4450182
24
25    PAGES 1 - 74
```

                                                    Page 1

Elin Howard - March 3, 2021

███ ██ ████████████████████████████

███ ███████████████████████

███ ██ ██████

4      Q    Can you explain to me what the fee motion

5    department is.

6      A    Yes.  So we prepare to file the motion for

7    attorneys' fees and costs after a case has settled.

8      Q    Do you physically do the preparation of the

9    motion?

10      A    No.

11      Q    Who does that?

12      A    I'm not sure.

13      Q    And what is your specific job in the fee motion

14    department?

15      A    I have to review attorney time billing and the

16    costs.

17      Q    Who do you report to in the fee motion

18    department?

19      A    What do you mean, I report to?

20      Q    Do you have a superior above you that you -- an

21    individual that you report to?

22      A    Yes.

23      Q    And who is that?

24      A    Guadalupe -- Lupe.

25      Q    Guadalupe Lopez?

Page 13

Elmo Howard - March 3, 2021

6 　　Q　Okay.  Now, in terms of preparing the invoices,

7 does the fee motion department have individuals who are

8 known as drafters?

9 　　A　Drafters?

10 　　Q　Have you heard that term before?

11 　　A　Yes.

12 　　Q　Okay.  What is your understanding of what a

13 drafter is?

14 　　A　They will pull up the billing.

15 　　Q　And what do they do?

16 　　A　They also look to see that nothing is missing

17 in the folders.

18 　　Q　Do they draft the actual invoices or create

19 them?

20 　　A　No.

21 　　Q　Have you heard of the term "reviewers"?

22 　　A　Yes.

23 　　Q　And do reviewers work in the fee motion

24 department?

25 　　A　Yes.

Page 22

Elma Howard - March 3, 2021

```
 1          Q    What does a reviewer do?

 2          A    Review.

 3          Q    Review.  Review what?

 4          A    The invoice.

 5          Q    And do you know why they review the invoice?

 6          A    Make sure there are no mistakes.

 7          Q    Okay.  And what's the difference between a

 8     drafter and a reviewer?

 9          A    A reviewer has more seniority.

10          Q    Okay.  Do they do different things?

11          A    I don't know.

12          Q    Okay.  And then have you heard the term

13     "finalizer"?

14          A    Yes.

15          Q    What does a finalizer do?

16          A    They also review the invoice.

17          Q    Other than reviewing the invoice, do you know

18     if they do anything else?

19          A    I don't know.

20          Q    Do you know what the difference is between a

21     reviewer and a finalizer?

22          A    No.

23          Q    Are you a drafter, reviewer or finalizer?

24          A    I review the invoice, so I'm a reviewer.
```

Page 23



```
4         Q    Okay.  So the information from Salesforce gets
5    put into a new document; is that correct?
6         A    Correct.
```

Page 31

Elm Howard - March 3, 2021

8        Q    Is there a -- maybe I'll get a little more

9   specific and help you out here.

10            Is there any type of list that you refer to

11  that has the attorney's hourly rates?

12       A    Yes.

13       Q    Okay.  And is that a document that you have a

14  hard copy of?  Is that on a computer system?

15       A    It's not on a system.

16       Q    So you have a document that lists all of the

17  attorneys at Knight Law Group and their attorney rates,

18  correct?

19       A    Correct.

20       Q    And you also have a document that tells you how

21  much to bill for a particular -- that attorney should

22  bill for a particular task, correct?

23       A    No.

24       Q    Do you have any guide at all that tells you

25  what amount of time to input for a particular task that

                                            Page 41

Elm Howard - March 3, 2021

```
 1    an attorney would work on?
 2         A    Yes.  The attorney's billing.
 3         Q    And Ms. Lopez provides you with that list
 4    regarding the attorney time and the hourly rates,
 5    correct?
 6         A    No.  Jason.
 7         Q    Jason.
 8              So you do not at any point in time input an
 9    attorney task and identify a particular set of hours for
10    that attorney?  You've never done that.
11         A    I have done that.
12         Q    You have done that?  Okay.
13              When have you done that?
14         A    I don't know specifically when.
15         Q    How often do you do that?
16         A    I don't know.
17         Q    On a regular basis --
18              (Speaking simultaneously.)
19         A    -- guessing, so I'm not going to.
20         Q    Sure.  And I don't want you to guess.
21              Do you do it on a regular basis?
22         A    Yes.
23         Q    Okay.  Do you do it for every case file that
24    you handle?
25         A    I don't know.
```

Page 42

Elm Howard - March 3, 2021

```
 1        Q    More than 50 percent of them?

 2        A    Yes.

 3        Q    Okay.  And how do you know how much time to

 4   input for the particular task that you create?

 5        A    Well, I don't create a task.

 6        Q    Okay.  How much time do you input for the

 7   task -- how do you know how much time to input for the

 8   task that's already there?

 9        A    Well, it depends on the task.

10        Q    Sure.  So -- well, depending on the task, do

11   you have a reference guide that tells you how much time

12   should be allocated depending on what the words are that

13   are listed?

14        A    I don't right now, no.

15        Q    Have you ever had such a document?

16        A    Not a document.  Some guidelines.

17        Q    Guidelines.  Okay.

18             And of the guidelines, did you have a hard copy

19   of those guidelines?

20        A    No.

21        Q    It was on the system?

22        A    No.

23        Q    How would you -- how did you acces the

24   guidelines?

25        A    I think they were given to me.
```

Veritext Legal Solutions
866 299-5127

Elmo Howard - March 3, 2021

```
 1          Q    Okay.  By whom?

 2          A    By my supervisor.

 3          Q    And what do the guidelines say?

 4          A    I don't remember.  It was...

 5          Q    And when you did have the guidelines, you would

 6    refer to those when you needed to allocate a set of time

 7    to a particular task?

 8          A    Yes.

 9          Q    So how do you do it now since, if I understand

10    your testimony, you don't have a guideline to refer to?

11          A    Right.

12               Well, I -- because I've worked there for a

13    while.

14          Q    So you rely on your experience in having done

15    it for so many years, correct?

16          A    Yes.

17          Q    So you know that if you look at a particular

18    task, based upon your experience, you can then set a

19    certain amount of time for that task, correct?

20          A    Correct.

21               But that's just when -- when something is

22    missing.

23          Q    Yeah.  I get that.

24               The guideline, did it have a particular name?

25          A    No.  I don't remember.
```

Page 44

```
 1        Q    I'm sorry?

 2        A    I don't remember.

 3        Q    When is the last time you remember referring to

 4   it?

 5        A    I don't remember.

 6        Q    A long time ago?

 7        A    Yeah.

 8        Q    Would you consider yourself a more senior

 9   member within the fee motion department?

10        A    Yes.

11        Q    How do more junior members know how much time

12   to allocate to a particular task if the number's

13   missing?

14        A    I don't.

15        Q    Do you tell them?

16        A    I review it and then I will.

17        Q    You do it yourself?

18        A    Yeah.

19        Q    And so, for instance, with initial client

20   communications, is there a set amount of time that you

21   bill for those tasks?

22        A    No.

23        Q    It varies?

24        A    Yes.

25        Q    Okay.  What's the range that you identify for
```

Page 45

Elm Howard - March 3, 2021

```
 1   those particular tasks?
 2        A    Do you mean which -- are you referring to the
 3   top entries or --
 4        Q    Yeah, yeah.  For instance, the "Initial
 5   communication with client" is one hour.
 6             Is that a set time entry that you would input
 7   there?
 8        A    Yes.  I think --
 9        Q    That's --
10        A    I mean, that would be I think the most that is
11   there.
12        Q    So this would be on the higher end of the entry
13   that you would insert for that one hour, right?
14        A    Correct.
15        Q    And then "Analyze vehicle documentation," when
16   you insert that task is that -- .9 there, is that
17   typical or on the higher end?
18        A    On the higher --
19        Q    Okay.
20        A    -- or --
21        Q    When you input the -- and then "Draft
22   Complaint" is .5.
23             Do you put that .5 in there?  Is that a typical
24   number you put in?
```

Page 46

Elmaghraby - March 3, 2021

8          Q    So my question was referring you to the "Draft

9     Complaint" there.

10               Do you see that entry?

11         A    Right.

12         Q    And you would insert the time for that

13    particular task on a regular basis?

14         A    Yes.

15         Q    And is .5 generally speaking what you would

16    insert?

17         A    Yes.

18         Q    Okay.  And the -- and so when you insert these

19    particular amounts of time, at this point in your

20    career, you're relying upon the years that you've been

21    doing this, right?

22         A    Well -- yes.

23         Q    Okay.  And for "Discovery requests," do you

24    insert particular amounts of time for reviewing

25    discovery or drafting discovery?

Page 47

Elm Beward - March 3, 2021

```
 1        A    Well, I take it from the attorney billing time,

 2   what they spent on it.

 3        Q    And are there always time entries there?

 4        A    No.

 5        Q    All right.  So when there's not a time entry

 6   there, you would then insert a particular amount of

 7   time, correct?

 8        A    Correct.

 9        Q    And you would use again your history with the

10   company and your experience in determining how much time

11   to set for that particular time entry?

12        A    Yes.
```

Page 48

Elmo Ward - March 3, 2021



```
11          Q    And Amy Morse, she currently as far as you're
12   aware of prepares complaints for files she works on?
13          A    Yes.
14          Q    And she bills for that time, so she would
15   prepare those complaints?
16          A    Yes.
17          Q    Okay.  And you've seen invoices where she
18   prepares complaints I take it even as recently as this
19   year, 2021?
20          A    What do you mean, I've seen an invoice?
21          Q    You've seen invoices reflecting Ms. Morse
22   preparing complaints in the year 2020, 2021?
23          A    Yes.
24          Q    And drafting discovery?
25          A    Yes.
```

Veritext Legal Solutions
866 299-5127

Elm Howard - March 3, 2021

```
 1          Q    You've seen those invoices?

 2          A    It's not invoices.  It's billing entries.

 3          Q    Billing entries, and thank you for that

 4     correction.

 5               You've seen billing entries with Ms. Morse

 6     where she drafts and prepares discovery in the year

 7     2020?

 8          A    2020?  Yes.

 9          Q    And same, have you seen such time entries in

10     2021?

11          A    I think so.

12               MR. BROWN:  I'll object as to relevance in

13     2021.

14     BY MR. COLE:

15          Q    And 2019 you've seen time entries where

16     Ms. Morse prepares complaints and drafts in response to

17     discovery?

18          A    I mean, I would just have to say I guess so

19     because I don't remember everything that you're asking

20     me, so --

21          Q    I don't want you to guess, but do you have a

22     recollection of seeing Ms. Morse's time entries in

23     preparing discovery or responding to discovery recently?

24          A    Recently?  Yeah.
```

Veritext Legal Solutions
866 299-5127

Elm Howard - March 3, 2021



24    Q    In the client intake portion Mr. Mikhov

25    enters -- provides an entry, you don't call him to ask

Page 63

```
1    him how much time he spent, do you?

2         A    No.

3         Q    You don't email him to ask him how much time he

4    spent, do you?

5         A    No.

6         Q    You insert a set time period for that, correct?

7         A    Yes.
```

```
 1            SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2         FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT
 3    _____
                                    )
 4    HACKLER DAGHIGHIAN MARTINO &   )
      NOVAK, P.C., a California      )
 5    professional corporation,      )
                                    )
 6              Plaintiff,           )
                                    )
 7        vs.                        )No. 20STCV19127
                                    )
 8    KNIGHT LAW GROUP, a            )
      California limited liability   )
 9    partnership; STEVE BORISLAV    )
      MIKHOV, an individual; and     )
10    DOES 1 through 10, inclusive,  )
                                    )
11              Defendants.          )
      _____)
12                                  )
      AND RELATED CROSS-ACTION.      )
13    _____)
      _____
14
15            DEPOSITION OF ROGER KIRNOS, ESQUIRE
16                  VIA REMOTE COUNSEL
17               Los Angeles, California
18               Monday, March 15, 2021
19                     Volume I
20
21    Reported by:
      LORI SCINTA, RPR
22    CSR No. 4811
23    Job No. 4488123
24
25    PAGES 1 - 187
```

                                                    Page 1

1    Q    Okay.  And as a partner, what are your

2    responsibilities within Knight Law Group?

3    A    They vary on a day-to-day basis.  I wear

4    various hats.  But, overall, I guess I would describe my

5    duties as supervising and addressing matters involving

6    settlement of cases, fee motion, and litigation and

7    trial strategy.

Page 55



21        Q    Do the attorneys within Knight Law Group all

22   enter their own time in a billing program?

23        A    I can't speak for what other attorneys do.  My

24   understanding is that we have a billing program, and

25   they're supposed to, and I have seen results.  So I know

                                                    Page 59

```
1    that they do on a general level, yes.

2         Q   Do you know if they input the time themselves

3    or another individual within Knight Law Group enters the

4    time for them?

5         A   My understanding is that all attorneys -- or at

6    least most attorneys are entering their own time.  I can

7    say for myself that I keep my time on a spreadsheet and

8    give it to my assistant.

9              I don't think other people enjoy that benefit,

10   though.
```

Page 60