**MILBANK LLP**
Neal K. Katyal (admitted *pro hac vice*)
nkatyal@milbank.com
1101 New York Avenue, NW
Washington, D.C. 20003
Telephone: (202) 835-7505

Matthew Laroche (admitted *pro hac vice*)
mlaroche@milbank.com
55 Hudson Yards, 34th Floor
New York, NY 10001-2163
Telephone: (212) 530-5688

*Attorneys for Defendants Steve B.*
*Mikhov and Roger Kirnos*

[counsel caption continued on following page]

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware Corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>STEVE B. MIKHOV, ROGER KIRNOS, and AMY MORSE,<br><br>                    Defendants. | Case No. 2:25-cv-04550-MWC-PVC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS STEVE B. MIKHOV, ROGER KIRNOS, AND AMY MORSE'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND TO CONTINUE THE STAY OF DISCOVERY**<br><br>Hearing<br>Date:        March 6, 2026<br>Time:        1:30 p.m.<br>Judge:       Hon. Michelle Williams Court<br>Court:       6A<br>Trial Date: None Set |

[counsel caption continued]

**WILLIAMS & CONNOLLY LLP**
Dane H. Butswinkas (admitted *pro hac vice*)
dbutswinkas@wc.com
Zachary K. Warren (CA State Bar No. 288398)
zwarren@wc.com
Hallie Saunders (admitted *pro hac vice*)
hsaunders@wc.com
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5252

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Aaron S. Dyer (CA State Bar No. 161798)
aaron.dyer@pillsburylaw.com
Ronald L. Cheng (CA State Bar No. 138892)
ronald.cheng@pillsburylaw.com
Lisseth A. Ochoa-Chavarria (CA State Bar No. 317130)
lisseth.ochoachavarria@pillsburylaw.com
725 South Figueroa Street, 36th Fl.
Los Angeles, CA 90017
Telephone: (213) 488-7100

*Attorneys for Defendants Steve B. Mikhov and Roger Kirnos*

**FOLEY & LARDNER LLP**
Pamela L. Johnston (CA State Bar No. 350030)
Kendall E. Waters (CA State Bar No. 329963)
Tam C. Wheat (CA State Bar No. 352916)
pjohnston@foley.com
kwaters@foley.com
twheat@foley.com
555 South Flower Street
Suite 3300
Los Angeles, CA 90071
Telephone: (213) 972-4632

*Attorneys for Amy Morse*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................10

RELEVANT BACKGROUND ...............................................................................12

    A.    The SAC Suffers from the Same Defects as the FAC ...............................12

        1.    Ford's Claims Remain Based on Underlying Litigation Ford Lost....12

        2.    Ford Already Litigated and Lost Challenges to the Fee Petitions......12

        3.    Ford Now Alleges that Knight Law Is the RICO Enterprise.............13

        4.    Defendant-Specific Allegations Remain Sparse and Conclusory ......14

    B.    The SAC Grossly Mischaracterizes Deposition Testimony ........................16

LEGAL STANDARD...............................................................................................17

ARGUMENT ..........................................................................................................17

I.    *NOERR-PENNINGTON* STILL BARS FORD'S RICO COMPLAINT BECAUSE IT IS PREDICATED ON FIRST AMENDMENT PROTECTED PETITIONING ACTIVITY ...........................................................................................................17

II.    FORD STILL FAILS TO STATE A RICO CLAIM IN COUNT ONE.................21

    A.    Ford Has Not Plausibly Alleged an Enterprise with the Common Purpose of Fraudulent Billing.................................................................................21

    B.    Ford Has Not Plausibly Alleged a Pattern of Racketeering Activity............24

        1.    Statute of Limitations................................................................25

        2.    Rule 9(b) ....................................................................................26

        3.    Issue Preclusion.........................................................................27

    C.    Ford Fails to Allege a RICO Claim Against the Individual Defendants ......30

        1.    Mr. Mikhov ...............................................................................32

        2.    Mr. Kirnos..................................................................................33

        3.    Ms. Morse...................................................................................36

III.    FORD STILL FAILS TO PLEAD A RICO CONSPIRACY IN COUNT TWO...39

IV.    THE COURT SHOULD CONTINUE THE DISCOVERY STAY.......................39

CONCLUSION........................................................................................................39

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abuelhawa v. Santa Clara Univ.*,
   2021 WL 5584759 (N.D. Cal. Nov. 29, 2021) ........................................... 17

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
   483 U.S. 143 (1987) .................................................................................... 25

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   744 F.3d 595 (9th Cir. 2014) ...................................................................... 22

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) .................................................................................... 33

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. *passim*

*Azadpour v. Sun Microsystems, Inc.*,
   2007 WL 2141079 (N.D. Cal. July 23, 2007) ............................................ 22

*B&G Foods N. Am., Inc. v. Embry*,
   29 F.4th 527 (9th Cir. 2022) ................................................................. 18, 19

*Bai v. CMB Exp. Infrastructure Inv. Grp. 48, LP*,
   2025 WL 959099 (E.D. Cal. Mar. 31, 2025) ............................................. 24

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
   727 F.3d 917 (9th Cir. 2013) ................................................................ *passim*

*Blue Cross & Blue Shield Okla. v. S. Coast Behav. Health LLC*,
   2025 WL 2004500 (C.D. Cal. June 20, 2025) ........................................... 33

*Bowers v. Denali State Bank*,
   2021 WL 5871532 (D. Alaska Aug. 26, 2021) .......................................... 25

*Boyle v. United States*,
   556 U.S. 938 (2009) .................................................................................... 34

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Broyles v. Wilson*,
   812 F. Supp. 651 (M.D. La. 1993)...............................................................23

*Castillo v. City of Los Angeles*,
   92 Cal. App. 4th 477 (2001) ......................................................................30

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001)..............................................................................21, 22

*Chagby v. Target Corp.*,
   358 F. App'x 805 (9th Cir. 2009) .............................................................23

*Cohen v. Suleminian*,
   2024 WL 1676845 (C.D. Cal. Mar. 18, 2024)..........................................22

*Conway v. City of Palm Desert*,
   2023 WL 5677858 (C.D. Cal. July 25, 2023).............................................27

*Cook v. Harding*,
   879 F.3d 1035 (9th Cir. 2018) ..................................................................30

*Couch v. Wan*,
   2010 WL 3582519 (E.D. Cal. Sept. 10, 2010) ..........................................24

*In re Countrywide Litig. Fin. Corp. Mortgage-Backed Sec. Litig.*,
   2012 WL 10731957 (C.D. Cal. June 29, 2012) .........................................38

*DKN Holdings LLC v. Faerber*,
   61 Cal. 4th 813 (2015) ..............................................................................28

*Doan v. Singh*,
   617 F. App'x 684 (9th Cir. 2015)..............................................................31

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ...........................................................*passim*

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ..................................................17, 25, 27

*Ford Motor Co. v. Knight L. Grp.*,
   2025 WL 3306280 (C.D. Cal. Nov. 24, 2025) ...........................................10

*Gomez v. Guthy-Renker*,
   2015 WL 4270042 (C.D. Cal. July 13, 2015)......................................*passim*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Goren v. New Vision Int'l, Inc.*,
  156 F.3d 721 (7th Cir. 1998) ................................................................ 37

*Graciano v. Robinson Ford Sales, Inc.*,
  144 Cal. App. 4th 140 (2006) .............................................................. 28

*Grae-El v. City of Seattle*,
  618 F. Supp. 3d 1080 (W.D. Wash. 2022) ........................................... 16

*Grimmett v. Brown*,
  75 F.3d 506 (9th Cir. 1996) ................................................................. 26

*Hamilton v. Willms*,
  2005 WL 3797562 (E.D. Cal. Oct. 28, 2005) ...................................... 37

*Howard v. Am. Online*,
  208 F.3d 741 (9th Cir. 2000) ........................................................ *passim*

*Islas v. Ford Motor Co.*,
  No. 5:18-cv-02221 (C.D. Cal. 2018) .............................................. 19, 20

*In re Jamster Mktg. Litig.*,
  2009 WL 1456632, . (S.D. Cal. May 22, 2009) .................................. 35

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...................................................... 25, 27

*Kottle v. Nw. Kidney Ctrs.*,
  146 F.3d 1056 (9th Cir. 1998) ...................................................... 18, 19

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
  940 F.2d 397 (9th Cir. 1991) ............................................................... 34

*MiCamp Sols., LLC v. Visa Inc.*,
  2025 WL 3548685 (N.D. Cal. Dec. 11, 2025) ..................................... 23

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989) ............................................................... 27

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) .............................................. 34, 35, 36, 37

*Nolte v. Pearson*,
  994 F.2d 1311 (8th Cir. 1993) ...................................................... 35, 39

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Nutrition Distrib. LLC v. Custom Nutraceuticals LLC*,
194 F. Supp. 3d 952 (D. Ariz. 2016) ........................................................... 25

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ..................................................................... 16

*Odom v. Microsoft Corp.*,
*486 F.3d 541 (9th Cir. 2007)* ...................................................................... 24

*PAE Gov't Servs. v. MPRI, Inc.*,
514 F.3d 856 (9th Cir. 2007) ....................................................................... 22

*Pincay v. Andrews*,
238 F.3d 1106 (9th Cir. 2001) ..................................................................... 26

*Raining Data v. Barrenechea*,
175 Cal. App. 4th 1363 (2009) .................................................................... 33

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990) ....................................................................... 22

*Reves v. Ernst & Young*,
507 U.S. 170 (1993).............................................................................*passim*

*Reynolds v. Condon*,
908 F. Supp. 1494 (N.D. Iowa 1995) ..................................................... 34, 38

*Rotella v. Wood*,
528 U.S. 549 (2000)..................................................................................... 26

*Ryan v. Salisbury*,
382 F. Supp. 3d 1062 (D. Haw. 2019) ......................................................... 26

*Samarakoon v. Distaso*,
2025 WL 3078251 (E.D. Cal. Nov. 4, 2025)................................................ 25

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985)..................................................................................... 21

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) ....................................................................... 18

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ................................................................. 31, 36

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Textron Inc. v. Travelers Cas. & Sur. Co.*,
    45 Cal. App. 5th 733 (2020) .................................................................... 29

*Tortilla Factory, LLC v. Health-Ade LLC*,
    2018 WL 6174708 (C.D. Cal. July 13, 2018)........................................... 31

*United States v. Jimenez Recio*,
    537 U.S. 270 (2003)................................................................................. 39

*United States v. Laurins*,
    857 F.2d 529 (9th Cir. 1988) .................................................................. 35

*United States v. Manion*,
    339 F.3d 1153 (9th Cir. 2003) ................................................................ 35

*United States v. Prime Healthcare Servs., Inc.*,
    2020 WL 11884833 (C.D. Cal. 2020) ............................................... 36, 37

*Univ. of Md. at Baltimore v. Peat Marwick, Main & Co.*,
    996 F.2d 1534 (3d Cir. 1993) .................................................................. 38

*United States ex rel. USN4U, LLC v. Wolf Creek Fed. Servs., Inc.*,
    34 F.4th 507 (6th Cir. 2022) ................................................................... 25

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg.*,
    31 F.3d 800 (9th Cir. 1994) .................................................................... 19

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................... 25, 36

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) ................................................................ 32

*Weber v. Langholz*,
    39 Cal. App. 4th 1578 (1995) ................................................................. 33

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011) ............................................. 24, 31

*In Re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
    601 F. Supp. 3d 625 (C.D. Cal. 2022) .................................................... 39

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

18 U.S.C. § 1961(4) ........................................................................................ 23

Cal. Civ. Code § 1794(d) ........................................................................ 19, 30

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................. 31

Fed. R. Civ. P. 9(b) ................................................................................ *passim*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

**PRELIMINARY STATEMENT**

This Court previously rejected the same allegations made here by Ford in a well-researched, fully developed 33-page opinion that explained why the First Amendment, among other bases, bars this action. The Second Amended Complaint ("SAC") is Ford's third attempt to plead its RICO claims, but nothing is new. Ford's latest bite at the apple is *still* premised on First Amendment protected petitioning activity, and its RICO theory *still* amounts to conclusory allegations about lawyers and a law firm representing clients in meritorious Lemon Law litigations fully litigated elsewhere. This Court already dismissed nearly identical claims in the FAC because they burdened First Amendment petitioning activity protected by the *Noerr-Pennington* doctrine and failed to plausibly allege the existence of a RICO enterprise. *Ford Motor Co. v. Knight L. Grp.* (Op.), 2025 WL 3306280, at *7–8, *13–16 (C.D. Cal. Nov. 24, 2025). The same analysis applies here.

The SAC fails under *Noerr-Pennington*. Like the first two complaints, the SAC is anchored solely in Defendants' Lemon Law litigation conduct against Ford. The SAC attempts to shoehorn this case into the narrow sham litigation exception, but fails to do so for the same reasons the Court identified in its carefully reasoned opinion. Op. at *11–12.

The SAC also fails to state a RICO claim because Ford's allegations remain premised on lawyers and a law firm "engaging in ordinary business conduct [for] an ordinary business purpose." Op. at *13. The Court rejected similar allegations in the FAC because of the danger such a theory poses to the practice of law, and it should do so again here. A law firm's routine representation of a client for the purpose of litigating a legitimate lawsuit is miles away from what the RICO statute was created to combat: the infiltration of legitimate business organizations by organized crime.

There are myriad other reasons to dismiss this case.

Ford needed to allege racketeering activity—*i.e.*, predicate acts of wire fraud, mail fraud, and perjury-based obstruction—with the particularity required by Rule 9(b), but the SAC, like prior complaints, is still littered with conclusory allegations of overbilling and

fraud. Ford continues to make hyperbolic allegations about fraudulent fee petitions in thousands of cases while rarely connecting specific misrepresentations with any particular payment or injury, in violation of basic pleading requirements. Ford now bases its RICO claim on 16 purportedly representative "predicate acts," but Ford (i) does not allege any payment within the limitations period for 11 of those cases; (ii) fails to plead fraud or obstruction with particularity as to ten of those cases; and (iii) relies on precluded arguments in 13 of those cases. Ford does not identify a single timely, non-precluded, properly alleged injury.

The SAC's deficiencies are equally glaring when analyzed on a Defendant-by-Defendant basis. Ford must plausibly allege that each Defendant participated in the enterprise's conduct and engaged in a pattern of racketeering activity with the requisite intent to defraud, but it has not done so. Even after trimming its case from nine defendants to three, the SAC continues to engage in improper group-pleading as to all "Defendants." And the SAC's Defendant-specific allegations fall well short of the particularized factual allegations the law requires. Despite now explicitly relying on deposition transcripts, the SAC somehow has fewer individualized allegations than Ford's earlier complaints. For example, whereas the FAC alleged meetings involving enterprise members, the SAC includes none. Instead, the SAC lobs even more conclusory allegations than prior defective complaints, such as that Defendants gave "directions" at unknown times to unknown individuals about unknown cases. The Court already rejected this approach. Op. at *14.

The SAC shows once again that Ford is willing to say anything to try to keep its case alive. Ford grossly mischaracterizes several deposition transcripts to suggest Knight Law was intentionally inflating fees and lying to courts about it when, in fact, the transcripts say the opposite. Ford includes impertinent attacks about one of the Defendants purportedly dodging taxes (SAC ¶ 20) and still relies on inadmissible allegations (SAC ¶ 15) in direct contravention of the Court's admonishments in its Opinion. Op. at *17 n.5, *19 n.6. Ford provides no explanation for why it now alleges Knight Law alone is the enterprise, directly

contradicting its prior allegations and arguments to the Court that Knight Law "couldn't do this alone." Transcript of Hearing on Motion to Dismiss ("MTD Tr.") at 96:8-11, Dkt. 151. Ford was willing to drag other law firms, lawyers, and a paralegal through reputationally devastating RICO litigation, only to drop them as defendants and delete all allegations about them in order to plead a fundamentally inconsistent RICO theory, apparently because Ford thought doing so might save its case.

Ford's opportunistic pleading strategy reveals this litigation for what it is: a brazen effort to destroy the reputation and business of its primary Lemon Law adversary. Allowing this claim to proceed would come at the serious cost of further harming Defendants and chilling consumers and law firms from bringing legitimate claims against Ford. This case should be dismissed for good.

## RELEVANT BACKGROUND

### A.    The SAC Suffers from the Same Defects as the FAC

#### 1.    Ford's Claims Remain Based on Underlying Litigation Ford Lost

Like the FAC, the SAC alleges that Defendants violated the federal RICO statute by representing consumers in Lemon Law litigation against Ford, and receiving attorneys' fees based on purportedly fraudulent fee petitions. SAC ¶¶ 1–2, 64, 103. The SAC alleges that, since 2015, Defendants have filed numerous Lemon Law cases against Ford. *Id.* ¶ 30. The SAC does not allege that those underlying cases were unjustified or that Ford's vehicles were not defective. Rather, the SAC is predicated solely on cases that Ford *lost*. The SAC alleges that Defendants have filed hundreds of fee petitions on behalf of prevailing consumers and obtained fee awards from Ford totaling millions of dollars, which Ford claims resulted in part from supposedly "fabricated" fee petitions. *Id.* ¶¶ 66–67.

#### 2.    Ford Already Litigated and Lost Challenges to the Fee Petitions

Like the FAC, the SAC alleges that Ford identified supposedly fraudulent fee petitions by examining a "limited subset of cases for which Ford has billing invoices." *Id.* ¶ 48. The SAC lists identical categories of purportedly problematic billing entries, such as

claims of attorneys billing more than 24 hours in a day, supposedly duplicative and vague billing entries, undated billing entries, billing by Ms. Morse after she supposedly moved to an administrative function, and non-contemporaneous timekeeping. *Id.* ¶¶ 42, 46–48, 51, 56–58; Exs. A–B. Though Ford continues to claim to have "reviewed thousands of KLG's billing invoices and time records," it has identified just 16 cases in which purportedly improper billing entries were included in specific fee petitions resulting in awards paid by Ford to Knight Law. *See* SAC ¶¶ 70–82. As to those cases, Ford still fails to identify purportedly fraudulent billing entries with particularity, does not allege any payment within the limitations period, and/or explain why this suit is not precluded since Ford already raised the specific issue in the underlying Lemon Law litigation that it seeks to re-litigate here—whether hours were actually worked. *See infra* Section II.B.3.

### 3.    Ford Now Alleges that Knight Law Is the RICO Enterprise

While the SAC claims that Knight Law is now, on its own, a RICO enterprise, Ford's enterprise allegations remain premised on a law firm representing clients in meritorious Lemon Law litigation. Ford now claims that Knight Law was the RICO enterprise, but the SAC's allegations remain conclusory and not supported by factual assertions. SAC ¶¶ 88–93. For example, the SAC alleges that the enterprise has a "common purpose to . . . engag[e] in fraudulent billing," "has a governing structure," "has generally been structured to operate as a continuing unit with membership, rank, privileges, and access constantly maintained by the members," and that each Defendant "participates in the operation or management of the Enterprise." *Id.* ¶ 88. The SAC includes no well-pled allegations supporting those and other related assertions.

Similar to the FAC, Ford simply recites the definition of an enterprise and then points to Knight Law. There is not a single factual allegation in the SAC reflecting that any Defendant met or communicated about any supposed enterprise distinct from the ordinary practice of law, much less acted in a coordinated manner with an intent to defraud. Ford also continues to assert the same conclusory allegations that the Court already rejected,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    such as that fraudulent time entries were created "[a]t the direction of Defendants." SAC

2    ¶¶ 3, 23; Op. at *15 ("Plaintiff cannot just allege that various defendants 'directed the other

3    defendants to take the actions that form the basis of the complaint.'" (quoting *Blantz v. Cal.*

4    *Dep't of Corr. & Rehab.*, 727 F.3d 917, 926-27 (9th Cir. 2013)).

### 4.    Defendant-Specific Allegations Remain Sparse and Conclusory[1]

6        Even more than the FAC, the SAC repeatedly groups all Defendants together when

7    alleging conduct. *See generally* SAC (making allegations against "Defendants"

8    collectively on more than 175 occasions); *id.* ¶¶ 1–6, 11–14, 16–18, 20, 23, 25, 27–32, 38,

9    40–43, 48–49, 52–54, 56, 60–72, 74, 77, 83–89, 91, 94–104, 109, 113–14, 117–18, 120–

10   21. Most of the SAC's Defendant-specific allegations have no factual support. Instead,

11   Ford makes vague and conclusory allegations on information and belief, including that

12   each Defendant "participated in the unlawful activities alleged herein." *Id.* ¶¶ 20–22.

13       **Mr. Mikhov**. Ford still claims that Mr. Mikhov is the "ringleader" of the enterprise

14   and "continues to manage [Knight Law] and to wield considerable influence" over it. *Id.*

15   ¶¶ 6, 20, 90. Ford provides no factual allegations supporting those assertions and

16   simultaneously alleges that Mr. Mikhov has separated from Knight Law. *Id.* ¶ 20. The SAC

17   alleges that Mr. Mikhov "creat[ed]" Knight Law's fee motion department and "direct[ed]"

18   it to create fraudulent billing records. *Id.* ¶ 20. Again, Ford provides no factual allegations

19   supporting those assertions. *Id.* The other allegations about Mr. Mikhov include that (i) he

20   "submitted" "suspicious" time entries in unspecified cases (*id.* ¶¶ 42, 57–58); (ii) Ford sent

21   him letters enclosing fee awards a few times (*id.* ¶ 77); and (iii) he submitted declarations

22   in support of certain fee applications (*id.* ¶¶ 71–74, 76, 79–82; Ex. C).

---

[1] In addition to its explicit (and unavailing) reliance on discovery materials, Ford also used the period between the Court's dismissal of the FAC and Ford's filing of the SAC to send private investigators to the homes of current and former Knight Law employees in an effort to find facts supporting its claims. The utter lack of any new factual assertions based on those discussions further underscores the futility of Ford's claims.

1   **Mr. Kirnos**. Ford's allegations about Mr. Kirnos actually support that there was no

2   RICO enterprise. According to the SAC, Mr. Kirnos testified that Knight Law attorneys

3   were required to record their time pursuant to Knight Law's billing protocol, and it was

4   Mr. Kirnos's understanding that they did so. SAC ¶¶ 33, 63. Ford also alleges that Mr.

5   Kirnos told a court that Knight Law was "going to be ethical" and "not going to submit lies

6   to this Court." *Id.* ¶ 63. Ford alleges that he made these statements knowing Defendants

7   were "committing criminal acts," despite quoting testimony that Mr. Kirnos believed

8   Knight Law attorneys billed time contemporaneously. *Id.* ¶ 33. Ford otherwise offers no

9   facts to support his alleged knowledge, such as who informed him about what and when.

10  Other allegations about Mr. Kirnos include that he (i) submitted some declarations with fee

11  applications stating that Knight Law billed time contemporaneously (*id.* ¶¶ 71–73, 75, 78;

12  Ex. C), and (ii) sent one email identified in Exhibit C. Tellingly, there is not a single well-

13  pled allegation concerning any of his billing records or that he ever told anyone to do

14  anything in furtherance of a RICO enterprise.

15  **Ms. Morse**. Ford claims that Ms. Morse billed more than 24 hours in a day on more

16  than 30 occasions, that she billed repetitive time entries to discovery tasks despite having

17  testified that she worked in a supervisory role since 2016, and that some of those entries

18  were included in fee applications. *Id.* ¶¶ 43–50, Exs. A–B. But the SAC includes no

19  well-pled allegations about what Ms. Morse knew or did. There are no factual allegations

20  that Ms. Morse was ever involved in creating the alleged time records at issue or that that

21  she was involved in any way in submitting or reviewing fee applications or communicated

22  with anyone about the purported enterprise. In fact, while the FAC alleged that Ms. Morse

23  purportedly had meetings with enterprise members and that she (along with Mr. Mikhov,

24  Mr. Kirnos, and others) told a paralegal to falsify billing records, those allegations

25  disappeared from the revised SAC. Ms. Morse is not alleged to have submitted fee motions,

26  engaged in settlement negotiations, made declarations to any court, or to have even

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1 reviewed fee motions before they were submitted to any court. She is unfairly included as
2 a Defendant in this RICO case.

### B.    The SAC Grossly Mischaracterizes Deposition Testimony

The SAC's allegations are facially deficient, but they also rely on grossly misleading characterizations of deposition transcript snippets from unrelated litigation involving Knight Law in 2021. SAC ¶¶ 32–37.[2] For example, Ford alleges that Ms. Morse "oversaw the Enterprise's operations and expressly directed employees of the Enterprise to create fictitious fee statements." SAC ¶ 90. In truth, Ms. Morse testified to the opposite. When asked, "[D]o you review the attorney fee motions prior to them being filed," Ms. Morse responded, "No." Ex. 15, Morse Tr. 97:10–13. When asked, "[D]o you draft the attorney fee motions that get filed," Ms. Morse responded, "No." *Id.* 97:14–16. When asked, "[D]o you review the bills that get submitted in connection with the attorney fee motions prior to their filing," Ms. Morse responded, "[N]ot typically, no." *Id.* 97:17–20.

Similarly, Ford alleges that "Defendants relied on the Fee Motion Department to generate false billing records to fraudulently recover unearned fees," SAC ¶ 32, but no testimony supports that allegation. A member of the fee motion department testified that she reviewed billing records and case files to "verify that everything is included and accurate." Ex. 16, Howard Tr. at 15-15–24. That employee, who is not named as a defendant, did not "admit[]" that she would create "fake" billing entries without confirming their accuracy with the relevant lawyers. SAC ¶ 36. Rather, she testified that she relied on contemporaneous billing records as the primary source when creating fee petitions, and that *every time* she identified a missing entry in an invoice, she "request[ed] a time from counsel if it's [sic] missing." Ex. 16, Howard Tr. 56:1–15.

---

[2] Because Ford relies on portions of deposition testimony in the SAC, the Court may properly consider the portions that Defendants reference above as incorporated by reference. *See In re NVIDIA Corp. Sec. Litig.,* 768 F.3d 1046, 1058 n.10 (9th Cir. 2014); *Grae-El v. City of Seattle*, 618 F. Supp. 3d 1080, 1092 n.8 (W.D. Wash. 2022).

1

## LEGAL STANDARD

2      The Court is familiar with the applicable legal standard from the Court's Opinion

3  and Defendants' prior motions to dismiss. Defendants highlight several aspects that support

4  dismissal. *First*, motions to dismiss are important in weeding out meritless RICO claims,

5  which should not survive through "sophistic pleading practices." *Gomez v. Guthy-Renker*,

6  2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015). *Second*, "[c]onclusory allegations . .

7  . are insufficient to state a claim" and they "are not entitled to the assumption of truth."

8  *Blantz*, 727 F.3d at 927 (first quote); *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (second

9  quote). *Third*, RICO claims sounding in fraud must meet Rule 9(b)'s heightened pleading

10  standard, which is not met through group pleading. *Edwards v. Marin Park, Inc.*, 356 F.3d

11  1058, 1065–66 (9th Cir. 2004); *see also Eclectic Props. E., LLC v. Marcus & Millichap

12  Co.,* 751 F.3d 990, 998 (9th Cir. 2014). *Finally*, where an amended pleading fails to address

13  shortcomings in an earlier dismissed complaint, the court "is free to follow the same

14  reasoning and hold that the amended claims suffer from the same legal insufficiencies."

15  *Abuelhawa v. Santa Clara Univ.*, 2021 WL 5584759, at *5 (N.D. Cal. Nov. 29, 2021).

## ARGUMENT

16

17  **I.    *NOERR-PENNINGTON* STILL BARS FORD'S RICO COMPLAINT

18          BECAUSE IT IS PREDICATED ON FIRST AMENDMENT PROTECTED
        PETITIONING ACTIVITY**

19

20      Like the FAC, the SAC—which is predicated on successful fee petitions filed by

21  lawyers who represented prevailing consumers in Lemon Law litigation against Ford—is

22  barred by the First Amendment and the *Noerr-Pennington* doctrine. This Court has already

23  held that "Defendants are entitled to *Noerr-Pennington* immunity for their petitioning

24  activity, and dismissal is appropriate on this basis alone." Op. at *12. Ford's only effort to

25  avoid this First Amendment bar is its futile attempt to shoehorn this case into the third

26  version of the sham litigation exception—misrepresentations to a court depriving the ***entire

27  litigation*** of legitimacy. The SAC does not, and cannot, plead around this Court's prior

28

holding by mischaracterizing the fee petitions as distinct and separate from the Lemon Law cases in which they were filed.

1. *Burden on Petitioning Rights*. Like the FAC, the SAC alleges violations of RICO based on submitting allegedly false billing statements "to Ford in settlement demands and to federal and state courts across California in fee petition proceedings." SAC ¶ 109. The SAC, thus, still "attempts to impose liability via the RICO statute for conduct connected to Defendants' fee petitions." Op. at *7. "Accordingly, a successful RICO claim would 'quite plainly' burden Defendants' ability to seek fees for its litigation activity." *Id.*; *see Sosa v. DIRECTV, Inc*., 437 F.3d 923, 932–33 (9th Cir. 2006) (RICO lawsuit based on settlement demands "quite plainly" burdens petitioning activity).

2. *Petitioning Activity*. Nothing alleged in the SAC changes this Court's holding that Defendants' alleged "conduct constituted petitioning activity." Op. at *8.

3. *Sham Exception.* As this Court recognized, "[t]here are three circumstances in which the sham litigation exception may apply: first, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful, second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for unlawful purposes, and third, if the purportedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." Op. at *9 (citations modified).

The SAC does not purport to invoke the first two circumstances. Even if it had, such an invocation would be futile because the SAC alleges that Knight Law's clients were the prevailing parties in the relevant Lemon Law cases, which included successful fee petitions. *See* SAC ¶¶ 2, 66–67, 77–82. "[A] winning lawsuit is, by definition, not objectively baseless," *Kottle v. Nw. Kidney Ctrs*., 146 F.3d 1056, 1063 (9th Cir. 1998), and a series of winning lawsuits is not a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits, *B&G Foods N. Am., Inc. v. Embry*,

29 F.4th 527, 539 (9th Cir. 2022); *USS-POSCO Indus. v. Contra Costa Cnty. Bldg.*, 31 F.3d 800, 811 (9th Cir. 1994) (second test not satisfied because 15 of 29 suits were successful); Op. at *9 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."); *id*. at *10 ("[T]he Court has already rejected Plaintiff's argument as to objective baselessness, nor does the FAC convince the Court that Defendants lacked an interest in prevailing in the Lemon Law suits or on their fee petitions (rather, the FAC alleges just the opposite).").

As to the third version of the sham litigation exception, a plaintiff can only "overcome a 12(b)(6) motion if his allegations demonstrate" that the defendant "so misrepresented the truth" in the underlying proceeding that "the ***entire . . . proceeding was deprived of its legitimacy*.*" Kottle*, 146 F.3d at 1063 (emphasis added). Like the FAC, the SAC asserts that purported misrepresentations deprived only "the fee application process of any legitimacy," SAC ¶ 12, without alleging that the "fee petitions so undermined Defendants' clients' claims that the whole suit was illegitimate . . . . Without such an allegation, the Court cannot deem allegedly inflated fee petitions to have deprived the entire litigation of its legitimacy." Op. at *11. Recognizing that it cannot argue with a straight face that the Lemon Law lawsuits as a whole were deprived of legitimacy, the SAC attempts to plead around this fatal problem by arguing, rather than alleging facts, that the fee petitions are "separate proceedings" from the Lemon Law cases in which they were filed. *See* SAC ¶ 18. This is legally incorrect.

Under the Lemon Law, "***the buyer*** shall be allowed by the court to recover ***as part of the judgment*** a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended . . . determined by a court to have been reasonably incurred ***by the buyer*** in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d) (emphases added). A Lemon Law fee petition is filed in the same Lemon Law case, involving the same named parties, before the same judge, with the same case number, and recorded on the same docket. *See, e.g.*, *Islas v. Ford*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    *Motor Co*., No. 5:18-cv-02221 (C.D. Cal. 2018) (motion for fees (Dkt. 105-1), hearing on

2    fees (Dkts. 119, 123, 125, 129), order on fees (Dkt. 131)); Ex. 1C (*Pedante* Dkt.); Ex. 2C

3    (*Fort* Dkt.); Ex. 3C (*Bagwell* Dkt.); Ex. 4C (*Buck* Dkt.); Ex. 5C (*Duk* Dkt.); Ex. 6C

4    (*Burgess* Dkt.); Ex. 7C (*Duenas* Dkt.); Ex. 8C (*Orosco* Dkt.); Ex. 9C (*Berroteran* Dkt.);

5    Ex. 10C (*Coon* Dkt.); Ex. 11C (*Brown* Dkt.); Ex. 12C (*Margeson* Dkt.); Ex. 13C (*Anderson*

6    Dkt.). Because the fee petitions were part of the Lemon Law cases in which they were filed

7    and the purported misrepresentations did not deprive those entire cases of legitimacy, the

8    sham litigation exception does not apply.

9    Even if Ford legitimately could divorce the fee petitions from the very Lemon Law

10   cases in which they were filed, the SAC still fails to allege that "Defendants lacked any

11   entitlement to fees in the relevant Lemon Law cases." Op. at *11. The SAC does not allege,

12   for example, that Knight Law somehow won all those cases for all those clients without

13   doing any work at all. Rather, the SAC alleges that "KLG attorneys did not regularly begin

14   keeping contemporaneous records until 2018," SAC ¶ 31, and challenges the accuracy of

15   billing entries by only a few billers, including Ms. Morse, Ms. Stephenson-Cheang, and

16   Mr. Mikhov, SAC ¶¶ 42–58. The six fee petitions attached to Ford's SAC alone include 21

17   unique billers other than Ms. Morse, Ms. Stephenson-Cheang, and Mr. Mikhov, and the

18   SAC does not allege that any of those billers had false billing entries.  *See* SAC Ex. L at

19   29 (*Pedante*); Ex. M at 63 (*Bagwell*); Ex. N at 36 (*Fort*); Ex. O at 34 (*Medina*); Ex. P at 29

20   (*O'Brien*); Ex. Q at 31 (*Daggett*). "Here, even accepting as true the allegation that some of

21   Defendants' purported work entitling them to fees was fictitious, that misrepresentation is

22   not sufficient on its own to deprive the entire fee petition process—let alone the entire

23   lawsuit—of legitimacy." Op. at *11.

24        4.    *First Amendment Dismissal Requirement*. The SAC's allegations, therefore,

25   fail to demonstrate that the sham litigation exception applies and, as this Court previously

26   held, dismissal is appropriate. Because RICO and its predicates do not unambiguously

cover the alleged petitioning conduct at issue, "the Court must construe the statutes to avoid burdening protected petitioning activity." *Id*. at *12.

## II. FORD STILL FAILS TO STATE A RICO CLAIM IN COUNT ONE

Beyond the threshold *Noerr-Pennington* bar, Ford fails to plausibly allege a RICO claim. As the Court found with the FAC, Ford did not plausibly allege the existence of an enterprise. Op. at *13–16. The SAC also fails to plausibly allege that each Defendant conducted the affairs of the purported enterprise and engaged in a pattern of racketeering activity. Ford needed to establish each element as to each Defendant to state a claim, but it failed (for the third time) to do so. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

### A. Ford Has Not Plausibly Alleged an Enterprise with the Common Purpose of Fraudulent Billing

Across its first two complaints, Ford alleged that Knight Law and eight other defendants formed an association-in-fact enterprise, and that Knight Law was a RICO "person"—not the enterprise. The Court rejected those allegations because, *inter alia*, they were conclusory, amounted to allegations that law firms conducted their "primary [business] activity" fraudulently, and risked "turn[ing] an ordinary business relationship into a RICO enterprise." Op. at *14–15 (collecting cases); *see* MTD Tr. 17:14–21 ("Something that has been on my mind is how this argument plays out . . . in consideration of the way we practice law."). Ford now tries to escape dismissal by making substantially identical allegations but naming Knight Law as the purported RICO enterprise.

It is no secret why Ford is once again playing fast and loose with its enterprise allegations. Ford wants to escape the mountain of cases dismissing RICO claims involving business entities alleged to be an association-in-fact enterprise. *Gomez*, 2015 WL 4270042, at *8–10 (collecting cases from the Second, Fifth, Sixth, Seventh, and Ninth Circuits); Op. at *13-16 (collecting cases). Ford also knows that dismissal of its threadbare claims against the non-Knight Law defendants would have resulted in a fatal distinctiveness problem because Knight Law was a defendant. *See Cedric Kushner Promotions, Ltd. v. King*, 533

U.S. 158, 161 (2001). The Court should reject Ford's effort to avoid dismissal through "sophistic pleading practices." *Gomez*, 2015 WL 4270042, at *11.

*First*, Ford's conclusory assertion that Knight Law is the enterprise contradicts its prior pleadings and arguments to the Court. Ford filed two complaints alleging Knight Law was a RICO person and the purported RICO enterprise was an association in fact involving numerous defendants and law firms who, by Ford's own telling, all operated the enterprise and played necessary roles to the scheme. Ford doubled down on this theory in its briefs and during oral argument, contending that all defendants named in the FAC "were critical to the success of the alleged scheme." MTD Tr. 92:20–93:7. Ford's lawyers even told the Court that Knight Law "***couldn't do this alone***" and that without the other firms, Knight Law could not have obtained fraudulent fees. *Id.* at 96:8–11.

Yet, having lost on that theory, the SAC now alleges that Knight Law alone is the enterprise. Ford simply deleted all allegations about the non-Knight Law defendants as if it never filed the first two complaints or made arguments to the Court about their indispensable roles in the enterprise. Ford's contradictory (and still unfounded) allegations are implausible, and the Court should reject them as false and a sham. *See, e.g., Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to directly contradic[t] an earlier assertion made in the same proceeding." (citation modified)); *see also Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (similar); *Azadpour v. Sun Microsystems, Inc.*, 2007 WL 2141079, at *2 n.2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.'").[3]

---

[3] In a case that predates *Airs Aromatics,* the Ninth Circuit held that a party may file "'successive pleadings that make inconsistent or even contradictory allegations,'" *PAE Gov't Servs. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007), and district courts have highlighted the conflict between those decisions, *e.g., Cohen v. Suleminian*, 2024 WL 1676845, at *2 (C.D. Cal. Mar. 18, 2024). But even *PAE's* liberal pleading approach has

*Second*, while Ford purports to define Knight Law as the enterprise (SAC ¶ 23), its allegations still sound as an association-in-fact enterprise with Knight Law as a RICO person. *Compare* 18 U.S.C. § 1961(4) ("'enterprise' includes . . . any . . . group of individuals associated in fact although not a legal entity"), *with* SAC ¶ 20 ("Defendants' criminal association"); ¶ 88 ("Defendants are a group of persons associated with Knight Law . . . ."); ¶ 89 (similar); ¶ 109 ("Defendants and their co-conspirators are a group of persons associated with [Knight Law] . . . ."). Indeed, Ford tries to obfuscate that Knight Law remains a RICO person by repeatedly referring to "Defendants" collectively even when those allegations refer to Knight Law itself. *E.g.*, SAC ¶ 27 (referring to "Defendants' fee petitions"). Thus, Ford's allegations fail for lack of distinctiveness because Ford does not plausibly "allege and prove the existence of two distinct entities: (1) a 'person'; and (2) and 'enterprise' that is not simply the same 'person' referred to by a different name." *Kushner*, 533 U.S. at 161; *Chagby v. Target Corp.*, 358 F. App'x 805, 808 (9th Cir. 2009).

*Finally*, putting all that aside, the SAC's enterprise allegations still fail. Just like the FAC, Ford alleges in conclusory fashion that Knight Law was an enterprise "because . . . those involved have the common purpose" to engage "in fraudulent billing." SAC ¶ 88; *see id.* ¶¶ 17, 89, 109 (similar). But the SAC lacks factual allegations supporting the claim that, this time, it was Defendants or anyone else at Knight Law that had any common purpose beyond representing consumers pursuing Lemon Law claims. Op. at *14 ("Conclusory allegations that Defendants' purpose was fraudulent does not save the FAC."); *see also Broyles v. Wilson*, 812 F. Supp. 651, 657 (M.D. La. 1993) (plaintiff failed to establish law firm was a RICO enterprise where it was performing acts "in the course of [its] regular business" and allegations failed to plausibly allege that it "existed for the purpose of effectuating" the fraudulent scheme). Instead, similar to the prior complaints, the SAC

---

its limits. *See, e.g.*, *MiCamp Sols., LLC v. Visa Inc.*, 2025 WL 3548685, at *3 (N.D. Cal. Dec. 11, 2025) ("Several courts have held that 'the Court does not ignore the prior allegations in determining the plausibility of the current pleadings and is not required to accept as true contradictory allegations in an amended complaint without more facts.'").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

supports that Knight Law's purpose was representing consumers with meritorious claims
and winning Lemon Law cases, which is exactly what it did against Ford. *See, e.g.*, *Bai v.
CMB Exp. Infrastructure Inv. Grp. 48, LP*, 2025 WL 959099, at *7 (E.D. Cal. Mar. 31,
2025) (association-in-fact enterprise failed because it was "predicated on the routine . . .
attorney-client relationship—as well as the allegation that Defendant['s] . . . primary
business activities—legal representation and litigation—was conducted fraudulently").[4]

The Court has already rejected nearly identical allegations. Op. at *13–15. The
rationale underlying the Court's decision applies with equal force to the SAC. If actions—
even allegedly fraudulent ones—in furtherance of a routine business relationship are
enough to allege a common purpose, then a plaintiff alleging a pattern of predicate
racketeering acts involving a law firm (or any commercial entity) would automatically state
a RICO claim. This would transform any run-of-the-mill allegation involving a law firm
into a presumptive RICO claim, which "would necessarily expand RICO beyond the scope
intended by Congress." *Gomez*, 2025 WL 4270042, at *8. As the Court explained, Ford
alleges that Knight Law's "billing—the primary activity at any for-profit law firm hoping
to stay in business—was conducted fraudulently," but those types of allegations are
"'incompatible with the types of conduct RICO was enacted to prevent.'" Op. at *14
(quoting *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods.
Liab. Litig.*, 826 F. Supp. 2d 1180, 1202-03 (C.D. Cal. 2011)).

**B.    Ford Has Not Plausibly Alleged a Pattern of Racketeering Activity**

"Where RICO is asserted against multiple defendants, a plaintiff must allege at least
two predicate acts by *each* defendant." *In re WellPoint, Inc. Out-of-Network UCR Rates
Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011). And "[t]he plaintiff must adequately

---

[4] It is true that a legal entity enterprise can serve as the basis for a RICO claim. *See Odom
v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007); *Couch v. Wan*, 2010 WL 3582519,
at *15 (E.D. Cal. Sept. 10, 2010). But those cases are nothing like this one given that (i)
Ford repeatedly argued Knight Law was part of an associated-in-fact enterprise, (ii) the
SAC maintains allegations reflecting an association-in-fact enterprise, and (iii) the SAC's
allegations remain premised on conclusory allegations of ordinary business conduct.

plead the elements of each predicate act, satisfying the pleading standard that would apply if the predicate act were a stand-alone claim." *Nutrition Distrib. LLC v. Custom Nutraceuticals LLC*, 194 F. Supp. 3d 952, 957 (D. Ariz. 2016).

Where the RICO claims are predicated on alleged fraud or perjury-based obstruction, the plaintiff also must satisfy Rule 9(b)'s heightened pleading standard. *Edwards*, 356 F.3d at 1065–66; *Samarakoon v. Distaso*, 2025 WL 3078251, at *7 (E.D. Cal. Nov. 4, 2025). Rule 9(b) requires a plaintiff to particularize the "who, what, when, where, and how" of the alleged fraud, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citations omitted), as well as "what is false or misleading about a statement, and why it is false," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Thus, to establish a pattern of racketeering activity in satisfaction of Rule 9(b), the alleged predicate acts must be "representative samples of the scheme" pled with specificity and constituting viable claims. *United States ex rel. USN4U, LLC v. Wolf Creek Fed. Servs., Inc.*, 34 F.4th 507, 514 (6th Cir. 2022) (citation modified).

Ford identifies 16 purported "representative samples" in SAC paragraphs 71 to 82: *Pedante*, *Fort*, *Bagwell*, *Medina*, *O'Brien*, *Daggett*, *Buck*, *Duk*, *Burgess*, *Duenas*, *Orosco*, *Berroteran*, *Coon*, *Brown*, *Margeson*, and *Anderson*. These are the only examples in which Ford purports to identify allegedly false billing entries, included in specific fee petitions, resulting in payments by Ford. As set forth below, however, RICO claims based on these cases are barred by the statute of limitations, Rule 9(b), and preclusion. Thus, Ford fails to identify timely, particularized, and non-precluded predicate acts or injuries, and dismissal is required. *Bowers v. Denali State Bank*, 2021 WL 5871532, at *4 (D. Alaska Aug. 26, 2021), R. & R. *adopted*, 2021 WL 5015601 (dismissing RICO claims on similar grounds).

### 1.    Statute of Limitations

Ford's claims relating to *Pedante*, *Fort*, *Bagwell*, *Medina*, *O'Brien*, *Daggett*, *Buck*, *Duk*, *Burgess*, *Duenas*, and *Orosco* are barred by RICO's four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).

The SAC alleges that Ford mailed the payments in *Buck*, *Duk*, *Burgess*, *Duenas*, and *Orosco* in 2018—well outside the four-year limitations period. *See* SAC ¶ 77. Thus, any claims relating to those alleged payments are time-barred. *Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001) (RICO claims are time-barred when injury occurred outside four-year limitations period); *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996) (same). Although Ford alleges in conclusory fashion that it "had no ability at the time of KLG's fraudulent fee demands or the judicial proceedings that sometimes followed those demands to discover the fraud in each of thousands of cases," SAC ¶ 16, that is not the standard. *Rotella v. Wood*, 528 U.S. 549, 555–61 (2000) (rejecting "pattern discovery rule"). The limitations period began when Ford had actual or constructive notice of alleged fraud in a fee petition. *Grimmet*, 75 F.3d at 511. Ford claimed to have knowledge of false representations in these fee petitions when it opposed them nearly a decade ago, *see infra* Section II.B.3, and thus any claims relating to these payments expired in 2022.[5]

Ford also fails to allege viable predicate acts based on the fee petitions in *Pedante*, *Fort*, *Bagwell*, *Medina*, *O'Brien*, and *Daggett* because the SAC does not state the dates of the alleged payments. SAC ¶¶ 71–75. The failure to allege an injury within the limitations period is a fundamental pleading defect requiring dismissal. *Ryan v. Salisbury*, 382 F. Supp. 3d 1062, 1085–86 (D. Haw. 2019) (dismissal for failure to allege date of injury); *Conway v. City of Palm Desert*, 2023 WL 5677858, at *5 (C.D. Cal. July 25, 2023) (same).

### 2.    Rule 9(b)

Ford also fails to establish viable predicate acts based on the fee petitions in *Burgess*, *Duenas*, *Orosco*, *Berroteran*, *Coon*, *Brown*, *Margeson*, and *Anderson* because the allegations concerning those cases do not satisfy Rule 9(b).

---

[5] Ford's suggestion that it only recently became aware of the extent of the alleged misrepresentations is contradicted by its own media campaign. In a news article, Ford's counsel is quoted as saying that it reported its allegations of widespread fraud to the U.S. Attorney's Office by the Fall of 2021, by which time it had already spent "thousands" of hours investigating these allegations. Ex. 14 at 734 (Connor Sheets, *Ford files $10-million suit over alleged "Lemon Law" scheme by L.A. lawyers*, L.A. Times (May 21, 2025)).

Paragraph 77 alleges that the *Burgess*, *Duenas*, and *Orosco* fee petitions included "Morse's fraudulent billing records" but fails to identify specific billing entries by Ms. Morse in those cases, let alone explain how those specific billing entries were fraudulent. SAC ¶ 77. Paragraphs 78 to 81 allege that the *Berroteran*, *Coon*, *Brown*, and *Margeson* petitions "included time entries for Morse for work that she has testified she never performed" but again fail to identify any specific time entries. *Id.* ¶¶ 78–81. These allegations fail under Rule 9(b), which requires Ford to plead "the who, what, when, where, and how" of the alleged fraud, *Kearns*, 567 F.3d at 1124, including "the time, place, and specific content of the false representations," *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (citation modified).

Paragraphs 77 to 82 also allege that these eight fee petitions "included time entries that were false and fraudulent because they were not contemporaneously recorded and were fabricated or supplemented after the fact by KLG's Fee Motion Department." Once again, the SAC fails to identify the "specific content" of the allegedly false time entries that were "included" in these fee petitions—a fatal deficiency that precludes Ford from relying on these petitions to establish a viable predicate act.[6] *See e.g.*, *Edwards*, 356 F.3d at 1066 (affirming dismissal of RICO claim where complaint failed to allege specific content of the allegedly false representations); *Kearns*, 567 F.3d at 1124.

### 3. Issue Preclusion

The fee petitions in *Pedante*, *Fort*, *Bagwell*, *Buck*, *Duk*, *Burgess*, *Duenas*, *Orosco*, *Berroteran*, *Coon*, *Brown*, *Margeson*, and *Anderson* also cannot serve as predicate acts because any RICO claims based on alleged misrepresentations in those petitions are barred

---

[6] The SAC does not allege that **all** of Knight Law's time records were "fabricated or supplemented after the fact by KLG's Fee Motion Department." Rather, it alleges that Knight Law attorneys always recorded at least some of their time contemporaneously, and that Knight Law attorneys "regularly" began keeping contemporaneous time records in 2018. SAC ¶ 31. By conceding that some time entries were contemporaneously recorded, and failing to identify those that allegedly were not, Ford violates Rule 9(b).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

by the doctrine of issue preclusion. In each of those cases, Ford litigated and lost its argument that the petitions included hours that were not worked.

Issue preclusion bars Ford from relitigating alleged overbilling. Issue preclusion applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 825 (2015). Thirteen of the 16 cases resulted in orders requiring Ford to pay attorneys' fees. *See* Ex. 1B, (*Pedante* Order); Ex. 2B, (*Fort* Order); Ex. 3B, (*Bagwell* Order); Ex. 4B, (*Buck* Order); Ex. 5B, (*Duk* Order); Ex. 6B, (*Burgess* Order); Ex. 7B, (*Duenas* Order); Ex. 8B, (*Orosco* Order); Ex. 9B, (*Berroteran* Order); Ex. 10B, (*Coon* Order); Ex. 11B, (*Brown* Order); Ex. 12B, (*Margeson* Order); Ex. 13B, (*Anderson* Order). Thus, it is clear the first and fourth elements have been met. Elements two and three are met too.

***Identical issue.*** The issue presented here—whether Knight Law actually worked the hours reflected in the invoices submitted with its fee petitions—is identical to an issue that was litigated in the underlying proceedings. Indeed, the SAC acknowledges that courts were *required* to address that issue before granting the fee petitions. SAC ¶ 26; *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 154 (2006) ("The determination of what constitutes a reasonable fee generally 'begins with the "lodestar," *i.e.*, the number of hours reasonably expended multiplied by the reasonable hourly rate.'" (citations omitted)). And Ford's counsel explicitly argued that this was the question at issue. MTD Tr. at 84:12–14 ("[T]he issue . . . in this case . . . is the very specific issue of whether there was fraudulently claimed time for tasks not worked . . . ."); *id.* at 85:19-21 (similar).

In the SAC, Ford alleges that Knight Law's fee petitions included "thousands of hours in wholly fictitious billings for time never worked." SAC ¶ 4. That is a rehashed argument: In its oppositions to the underlying fee petitions, Ford challenged whether Knight Law attorneys had actually worked the hours included in those petitions. *See* Ex. 1A (*Pedante* Opp.) at 32–37; Ex. 2A (*Fort* Opp.) at 88, 93–94; Ex. 3A (*Bagwell* Opp.) at

144–49; Ex. 4A (*Buck* Opp.) at 216; Ex. 5A (*Duk* Opp. ) at 243–46; Ex. 6A (*Burgess* Opp.) at 280–81; Ex. 7A (*Duenas* Opp.) at 309; Ex. 8A (*Orosco* Opp.) at 329–30; Ex. 9A at (*Berroteran* Opp.) 353–55; Ex. 10A (*Coon* Opp.) at 424–26; Ex. 11A (*Brown* Opp.) at 497–98; Ex. 12A (*Margeson* Opp.) at 616–17; Ex. 13A (*Anderson* Opp.) at 689, 692.

In fact, in opposing these fee petitions, Ford claimed that Knight Law failed to record its time contemporaneously and did not work the hours billed. *See supra* at 28–29. In *Pedante*, for example, Ford argued that Knight Law "inflated [its] fees," claimed that "[t]here is no evidence that any of the billing by KLG . . . was done contemporaneously," noted that it had previously challenged "the lack of contemporaneous time-keeping by KLG," and claimed that "[t]his is not the first time [Knight Law] has been found to have submitted improper billing records to Federal Courts." Ex. 1A (*Pedante* Opp.) at 18, 30–32 & n.8. In *Buck*, Ford argued that "the invoices contain numerous examples of overcharging for services, overbilling for work, charging for unrelated services, and double billing for the exact same projects." Ex. 4A (*Buck* Opp.) at 211. Ford made substantially the same arguments in the other cases. *See, e.g.*, Ex. 5A (*Duk* Opp.) at 241–49 (accusing Knight Law of "unduly inflat[ing] the fee claim," including by overbilling for "routine" filings, and alleging that certain billing entries "appear to be automatic"); Ex. 9A (*Berroteran* Opp.) at 354 ("KLG also seeks fees for duplicative work or work that was never performed or useless.").

It is immaterial whether the SAC alleges specific instances or methods of overbilling that were not alleged in the underlying fee petitions. "An issue decided in a prior proceeding establishes collateral estoppel even if some factual matters or legal theories that could have been presented *with respect to that issue* were not presented." *Textron Inc. v. Travelers Cas. & Sur. Co.*, 45 Cal. App. 5th 733, 747 (2020) (citation modified). Ford now seeks to relitigate an issue that was presented and litigated in the underlying fee petitions: whether Knight Law actually worked the hours reflected in its fee petitions.

***"Necessarily decided" and "actually litigated."*** This issue was both "necessarily decided" and "actually litigated." Those two requirements are "interrelated." *Cook v. Harding*, 879 F.3d 1035, 1042 (9th Cir. 2018). If "an issue was necessarily decided in a prior proceeding, it was also actually litigated." *Id.* California courts interpret the "necessarily decided" prong to require "'only that the issue not have been "entirely unnecessary" to the judgment in the initial proceeding.'" *Id.* (citation omitted). And it is presumed that courts comply with the applicable statutory framework. *See, e.g.*, *Castillo v. City of Los Angeles*, 92 Cal. App. 4th 477, 482 (2001).

The Song-Beverly Act authorizes payment of "costs and expenses, including attorney's fees ***based on actual time expended, determined by the court to have been reasonably incurred by the buyer*** in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d) (emphasis added). And as noted above, the SAC concedes that the underlying courts applied a lodestar analysis in deciding whether Knight Law's fees were actually incurred. Thus, by awarding fees, the underlying courts necessarily decided that Knight Law actually worked the hours reflected in its invoices. MTD Tr. 85:10–16 (reflecting the Court's observation that "the amount" of hours worked is adjudicated during Lemon Law fee motion proceedings.).

In sum, the SAC refers to 16 representative "predicate acts" as the basis for its RICO claims. But Ford does not allege any payment within the limitations period for 11 of those cases; fails to plead fraud or perjury-based obstruction with particularity as to ten of them; and relies on precluded arguments in 13. Ford does not identify a single timely, non-precluded, properly alleged injury, and thus the SAC must be dismissed.

## C.    Ford Fails to Allege a RICO Claim Against the Individual Defendants

The foregoing sections reinforce that Ford has failed to correct fundamental defects identified in the Court's Opinion. Ford's pleading failures are equally glaring when assessing its allegations on an individual-by-individual basis. To state a claim against each Defendant, Ford must allege particularized facts showing that each Defendant (i)

participated in the conduct of the purported enterprise (ii) through a pattern of racketeering activity. *In re Wellpoint,* 865 F. Supp. 2d at 1035. These are separate elements requiring separate proof as to each Defendant. *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993); *Gomez*, 2015 WL 4270042 at *7 ("RICO liability requires more than a pattern of . . . predicate crimes.").

The SAC does not come close to meeting those elements. Despite dropping this case down from nine defendants to three, the SAC ***increased*** the number of times it grouped all "Defendants" together—now on over 175 occasions—when alleging their purported conduct. Group pleading fails to state a claim against any defendant as a matter of law. Op. at *6 ("A plaintiff fails to comply with Rule 8 if 'all defendants are lumped together in a single, broad allegation."); *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007); *Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015). The SAC also repeats the conclusory statement, made on information and belief, that each Defendant "personally and knowingly participated in the unlawful activities alleged herein," which does not meet Rule 9(b)'s heightened pleading standard. SAC ¶¶ 20–22; *see Tortilla Factory, LLC v. Health-Ade LLC*, 2018 WL 6174708, at *8 (C.D. Cal. July 13, 2018).

The SAC also continues to rely on conclusory assertions that "Defendants" "oversaw," "supervised," and "directed" the purported enterprise, which the Court already rejected as lacking the requisite "specificity" to survive a motion to dismiss. Op. at *15 ("Plaintiff cannot just allege that various defendants 'directed the other defendants to take the actions that form the basis of the complaint.'" (quoting *Blantz*, 727 F.3d at 926–27 (9th 2013)). Even Ford's counsel acknowledged that these kinds of allegations fail to state a claim. MTD Tr. 76:3–6 ("Conclusory would be something like [a paralegal] supervised other people."). Despite incorporating deposition testimony from all three Defendants and a member of Knight Law's fee motion department, Ford still has not plausibly alleged a single instance in which any of the three Defendants "directed" anyone to do anything in furtherance of the purported scheme to create fraudulent billing records, or that anyone

1  actually agreed to, and did, engage in some act at that direction. The SAC's allegations are,

2  in fact, weaker than prior complaints because the SAC now includes no allegations about

3  purported meetings or directions given to specific individuals as part of the enterprise.

### 1.    Mr. Mikhov

5  Ford alleges that Mr. Mikhov, Knight Law's founding partner, was the "ringleader"

6  of the purported enterprise, was "responsible for creating KLG's Fee Motion Department,"

7  and that he gave "direction," submitted "suspicious" time entries, and filed several

8  declarations that purportedly attached fraudulent invoices. SAC ¶¶ 3, 20, 39, 41. These

9  allegations, which are conclusory, vague, and asserted on information and belief, fail every

10  stage of the RICO analysis. Ford continues to include inflammatory, irrelevant, and

11  inaccurate allegations about Mr. Mikhov purportedly relocating to avoid taxes. *Id.* ¶ 20.

12  *First*, Ford does not plausibly allege that Mr. Mikhov was involved in directing the

13  enterprise's affairs or that he participated in its operation and management. *Reves*, 507 U.S.

14  at 179, 185; *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). Like the FAC, Ford

15  makes the conclusory assertion that Mr. Mikhov is "the ringleader of Defendants' criminal

16  enterprise" (SAC ¶ 20) but again offers no facts to support that statement. The SAC also

17  asserts that Mr. Mikhov "was responsible for creating KLG's Fee Motion Department as a

18  formal system to create fictitious time entries" (SAC ¶¶ 20, 23) but again does not offer

19  the slightest factual support for these statements. "A complaint will not survive a motion

20  to dismiss if it 'tenders naked assertions devoid of further factual enhancement.'" *Blantz*,

21  727 F.3d at 927 (quoting *Iqbal*, 556 U.S. at 678); *see* Op. at *14–15.

22  The SAC also alleges that Mr. Mikhov testified that the fee motion department "had

23  authority" to enter time for tasks he performed absent a written timesheet. SAC ¶¶ 35, 37.

24  The SAC never explains how this reflects his participation in enterprise affairs or why that

25  was improper. There are no allegations supporting that Mr. Mikhov authorized anyone to

26  create fake or fraudulent billing entries or to record time for tasks he did not actually work.

27  Much more is required to establish that Mr. Mikhov engaged in RICO conduct. *Compare*

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Eclectic Props.*, 751 F.3d at 998 ("[A] significant level of factual specificity is required to allow a court to infer reasonably that [facially legitimate] conduct is plausibly part of a fraudulent scheme."), *with Blue Cross & Blue Shield Okla. v. S. Coast Behav. Health LLC*, 2025 WL 2004500, at *11 (C.D. Cal. June 20, 2025) (detailed RICO allegations).

*Second*, Ford fails to allege that Mr. Mikhov participated in a pattern of racketeering activity. *See Howard v. Am. Online*, 208 F.3d 741, 746 (9th Cir. 2000). As an initial matter, Ford does not satisfy Rule 9(b) by alleging that Mr. Mikhov's time entries are "suspicious" because they were undated, "vague," or repetitive. SAC ¶¶ 42, 53–54. Ford made and lost these arguments when litigating the fee petitions because undated billing entries are expressly permitted in California courts and there is nothing suspect about repetitive entries for routine litigation activities, such as "communications with client." SAC ¶ 58; *Raining Data v. Barrenechea*, 175 Cal. App. 4th 1363, 1375 (2009) ("[A]ward of attorney fees may be based on counsel's declarations, without production of detailed time records."); *Eclectic Props.*, 751 F.3d at 998; *Weber v. Langholz*, 39 Cal. App. 4th 1578, 1587 (1995).

Ford also alleges that Mr. Mikhov submitted declarations in support of fee applications that purportedly attached "false and fraudulent" time records. SAC ¶¶ 78–81. But there are no plausible allegations that Mr. Mikhov even knew that any allegedly false billing entries were included in fee applications or acted with an intent to defraud. Ford alleges that Ms. Howard was authorized to include time for Mr. Mikhov without being provided a written timesheet, but there are no plausible allegations that Ms. Howard was authorized to create "fraudulent" time records for Mr. Mikhov or that Mr. Mikhov knew any such entries were included in fee petitions for which he submitted a declaration. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). A "blanket assertion" that Mr. Mikhov knew about fraudulent conduct is insufficient to survive a motion to dismiss. *See Neubronner v. Milken*, 6 F.3d 666, 673 (9th Cir. 1993); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991) (similar).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

### 2.    Mr. Kirnos

The SAC's allegations against Mr. Kirnos, like those in the first two complaints, fall well short of stating a claim. Remarkably, the SAC highlights Mr. Kirnos's testimony that he recorded his time contemporaneously and understood other Knight Law attorneys did so as well, as was Knight Law's practice. SAC ¶ 33. This testimony completely undermines Ford's complaint and leaves one to wonder what good-faith basis Ford had for including Mr. Kirnos as a Defendant.

*First*, Ford includes no factual allegations that Mr. Kirnos engaged in enterprise conduct. *Reves*, 507 U.S. at 179. There are no allegations supporting that Mr. Kirnos participated in the operations or management of the enterprise, directed enterprise affairs, had a formal or informal role in the enterprise's chain of command, or communicated or coordinated with other purported members of the enterprise about the enterprise's affairs. The SAC does not include a single allegation that Mr. Kirnos communicated, much less coordinated, with any members of the alleged enterprise to engage in fraudulent billing. *Boyle v. United States*, 556 U.S. 938, 944 (2009). Ford alleges that Mr. Kirnos "specifically authorized" (SAC ¶ 37) the fee motion department's practices and that fraudulent billing entries were created at his "direction" (SAC ¶ 39), but these conclusory assertions are insufficient for the reasons discussed in the Court's Opinion and throughout this memorandum. Ford cannot simply "lob conclusory allegations . . . and still state a RICO claim," otherwise *Iqbal* would be "a dead letter." Op. at *15.

Ford also argues that Mr. Kirnos "supervis[ed] the preparation of fee motions." SAC ¶ 37. Ford's counsel previously told the Court that simply alleging a defendant "supervised other people" is "conclusory." MTD Tr. 76:3-6. Regardless, an allegation that a law firm partner may have "supervised" or "overseen" an internal legal department does not state a RICO claim as a matter of law. *Reynolds v. Condon*, 908 F. Supp. 1494, 1530 (N.D. Iowa 1995) (dismissing RICO claim against lawyer because "the mere allegation that someone is a partner in a law firm does not mean that everything that partner does is conducting the

affairs of the law firm."); *Nolte v. Pearson*, 994 F.2d 1311, 1317 (8th Cir. 1993) (similar); *see Eclectic Props.*, 751 F.3d at 997-98. And there still are no allegations about Mr. Kirnos prior to when he joined Knight Law in 2017.

*Second*, Ford's sparse allegations against Mr. Kirnos do not plausibly allege that he engaged in a pattern of racketeering activity. *See Howard*, 208 F.3d at 746. Ford needed to establish that Mr. Kirnos "willfully participated" in the purported racketeering acts "with knowledge of [their] fraudulent nature and with intent that the[] illicit objectives be achieved." *United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003); *see United States v. Laurins*, 857 F.2d 529, 536–37 (9th Cir. 1988) (obstruction of justice requires specific intent). The SAC does not come close to doing that.

As noted, Ford alleges that Mr. Kirnos advocated in court in support of an attorney fee motion while, Ford claims without any support, he "knew" Defendants were submitting fraudulent fee applications. But Ford includes no allegations supporting that Mr. Kirnos had any knowledge of Ford's version of events or acted with an intent to defraud. Ford's "blanket assertion" that Mr. Kirnos knew about fraudulent conduct is insufficient and undermined by allegations that he entered time contemporaneously and understood Knight Law lawyers did as well. *See Neubronner*, 6 F.3d at 673; SAC ¶ 33. Ford also alleges that Mr. Kirnos submitted a handful of declarations in support of fee applications that, according to Ford, included time entries for himself, Mr. Mikhov, and Ms. Morse, which were "false and fraudulent." SAC ¶¶ 72–73, 75, 78.  But Ford has not plausibly alleged that Mr. Kirnos even knew his declaration or the attached time entries were purportedly false. *See In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5. (S.D. Cal. May 22, 2009).

Ford also alleges that Mr. Kirnos sent an email (as part of an ordinary meet-and-confer process) to Ford's outside counsel attaching fee statements for Ford's review and comment. SAC, Ex. C, Row 26. Ford does not identify the underlying fee statements, does not allege that they contained misstatements (or explain how their billing entries were inflated), does not allege that Mr. Kirnos knew these fee statements contained any

purported misstatements, and does not even allege that Ford paid fees on these statements. *See Neubronner*, 6 F.3d at 673; *Vess*, 317 F.3d at 1103-04. The mere fact that Mr. Kirnos allegedly supervised the billing department also does not support an inference that Mr. Kirnos "knowingly participated" in any purported misstatements. *United States v. Prime Healthcare Servs., Inc.*, 2020 WL 11884833, at *6 (C.D. Cal. 2020) (allegation that CEO supervised inflated logs does not establish "active participation or even willful ignorance").

### 3.    Ms. Morse

Ford's allegations regarding Ms. Morse plead only conclusory facts about what Ms. Morse knew or did. Ford alleges that billing records purporting to reflect her time were included in fee petitions, but there are no allegations that she was ever involved in preparing or contributing to those records, submitted or reviewed fee applications, or communicated with anyone about the purported enterprise. In fact, it is stunning that Ford continues to include her as a Defendant given that Ford is in possession of her deposition testimony in which she testified she had nothing to do with fee motions at Knight Law. Ex. 15; Morse Tr. 97:14-20. Ford's only scienter allegation as to Ms. Morse is the boilerplate assertion, pled "on information and belief," that she "personally and knowingly participated in the unlawful activities alleged herein." SAC ¶ 21. That threadbare allegation—unsupported by any dates, communications, or instructions—is exactly the sort of conclusory "direction" allegation that does not satisfy *Iqbal* and this Court has already rejected. Op. at *15 (citing *Blantz*, 727 F.3d at 926-27); *Swartz*, 476 F.3d at 765–66. There is no SAC paragraph alleging when, how, or by what conduct Ms. Morse supposedly formed the requisite intent to defraud. Regardless, Ford's allegations fail.

*First*, Ford fails to allege that Ms. Morse engaged in a pattern of racketeering activity with the requisite intent to defraud. *See Howard*, 208 F.3d at 746. The SAC alleges that purportedly false billing entries attributed to Ms. Morse were included in some of the fee petitions and that Ms. Morse "knew" that the fee petitions were fictitious because her time entries were not consistent with the tasks she typically performed. SAC ¶ 21. But the SAC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

does not allege that Ms. Morse had any involvement in preparing the time records involved; had any involvement in preparing, reviewing, or submitting the invoices or fee petitions; knew that billing entries attributed to her were included; or otherwise acted with intent to defraud. *See id.* ¶¶ 38, 70–75. As to Ms. Morse, Ford identifies no predicate acts with the particularity Rule 9(b) demands. Ford also alleges that Ms. Morse "supervises KLG's litigation department" but there are no allegations that her general supervision had anything to do with fee petitions and, in any event, conclusory allegations that a defendant supervised employees does not plausibly allege knowing participation in a fraudulent scheme. *See Prime Healthcare Servs., Inc.*, 2020 WL 11884833 at *6.

Ford simply cannot state a claim against Ms. Morse without particularized allegations of her knowing participation in the underlying racketeering acts and her acting with an intent to defraud during such conduct, which are entirely lacking here. *See, e.g.*, *Neubronner*, 6 F.3d at 673; *Hamilton v. Willms*, 2005 WL 3797562, at *8 (E.D. Cal. Oct. 28, 2005) ("[A]llegations that [d]efendant . . . might [have] known about certain things the alleged . . . [e]nterprise was doing at most suggests that [d]efendant . . . was aware of and may have benefitted from the alleged enterprise. Knowledge of a RICO enterprise's actions is simply not sufficient."); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998) (similar). Ford's own theory underscores the point: it alleges that the fee motion department (of which Morse was not a member) could independently input or supplement time for attorneys, SAC ¶ 36, and previously acknowledged that Ms. Morse could have been "duped" into having her name used on billing records without her knowledge. *See* Opp. to FAC MTD, Dkt. 103 at 76. In light of this obvious alternative explanation—that any inaccurate "ALM" entries were created by others without her involvement—Ford's bare, information-and-belief assertion of Ms. Morse's "knowing" participation is not plausible and *Iqbal* instructs that such conclusory allegations cannot be assumed to be true. *Iqbal*, 556 U.S. at 663; *see also Eclectic Props.*, 751 F.3d at 998–99.

1      *Second,* Ford has not alleged that Ms. Morse engaged in any RICO enterprise

2  conduct. *Reves,* 507 U.S. at 176. There are no factual allegations that Ms. Morse had any

3  formal or informal position in the enterprise's structure, directed enterprise affairs,

4  participated in the operation or management of the enterprise, or communicated or

5  coordinated with any of the other Defendants about the enterprise. *See, e.g.*, *In re*

6  *Countrywide Litig. Fin. Corp. Mortgage-Backed Sec. Litig.*, 2012 WL 10731957, at *9

7  (C.D. Cal. June 29, 2012). Ford removed the FAC's allegations that Ms. Morse directed a

8  paralegal to create false billing entries and "delegated assignments" at meetings with

9  Knight Law's co-counsel, presumably because those allegations were false. FAC ¶ 82, Dkt.

10  83. Ford now alleges in conclusory, passive-voice fashion that inflated entries were created

11  at Ms. Morse's "direction" (SAC ¶ 39), but "no factual assertions support this allegation,

12  and the[se] conclusory allegations are insufficient on their own to defeat a motion to

13  dismiss." *Blantz*, 727 F.3d at 927; *see* Op. at *15 (same).

14      Ford also alleges that Ms. Morse "supervises KLG's litigation department" and

15  worked "in tandem" with the other Defendants. SAC ¶¶ 21, 23. But the SAC never explains

16  how her supervision of the litigation department relates to the enterprise, to the preparation

17  of fee motions, or how she purportedly worked in tandem with the other Defendants. The

18  SAC does not identify a single meeting or communication among Defendants, let alone

19  allege how anything Ms. Morse did was in furtherance of the purported enterprise. To the

20  contrary, Ford's own allegations describe Ms. Morse as spending "most of her time"

21  managing personnel and performing little drafting or client work, SAC ¶¶ 8, 44, and

22  nowhere allege that she was responsible for billing practices or fee motions—the core of

23  Ford's supposed "enterprise." That routine, internal supervisory role is not "conduct[ing]

24  or participat[ing] . . . in the conduct of [an] enterprise's affairs" under *Reves*. At most, Ford

25  has pled that she occupied an ordinary law-firm management role while others handled the

26  fee-petition work. These allegations suggest, at best, that Ms. Morse was engaged in the

27  routine practice of law, which is contrary to RICO conduct. *Reynolds*, 908 F. Supp. at 1530;

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  *Nolte*, 994 F.2d at 1317 (similar); *Univ. of Md. at Baltimore v. Peat Marwick, Main & Co.*,

2  996 F.2d 1534, 1539 (3d Cir. 1993) (similar); *Eclectic Props.*, 751 F.3d at 997-98.

3                                          \*\*\*

4         In sum, Ford has utterly failed to state a claim against any Defendant. Allowing a

5  claim to proceed on such sparse allegations would compound the harm Ford's baseless

6  complaint has already caused these people, who have been unfairly stigmatized as members

7  of a purported enterprise based on nothing but vague and conclusory allegations.

8  **III.    FORD STILL FAILS TO PLEAD A RICO CONSPIRACY IN COUNT TWO**

9         Ford's RICO conspiracy claim fails for the same reasons it failed in the FAC—Ford

10  failed to plead a substantive RICO claim. Op. at *17; *see also Howard*, 208 F.3d at 751.

11  Ford's RICO conspiracy claim also fails under Rule 9(b) because the SAC does not include

12  particularized allegations of (i) an agreement to commit an unlawful act, which is the

13  "essence of a conspiracy," or (ii) an injury caused by an unlawful overt act performed in

14  furtherance of the agreement. *United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003).

15  Ford relies on conclusory allegations, SAC ¶ 120, which is insufficient. *In Re ZF-TRW*

16  *Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 758 (C.D. Cal. 2022).

17  **IV.   THE COURT SHOULD CONTINUE THE DISCOVERY STAY**

18         For the reasons discussed throughout this memorandum, Defendants have made a

19  clear and convincing showing that they will prevail on their motion to dismiss. Because

20  the pending motion can be decided without discovery, the Court should continue the stay

21  of discovery pending the resolution of this motion. *See* Op. at *18.

22                                      **CONCLUSION**

23         Based on the foregoing, the Court should dismiss the SAC with prejudice. While the

24  Court has scheduled a hearing for March 6, 2026, Defendants do not believe oral argument

25  is necessary to resolve this motion. Defendants are, of course, prepared to attend the

26  hearing and answer any questions the Court may have about the issues raised in this motion.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    DATED: January 26, 2026

2                                              MILBANK LLP

3

4                                              By: /s/ Neal K. Katyal

5                                                  *Attorneys for Steve B. Mikhov and*
                                                   *Roger Kirnos*
6

7                                              PILLSBURY WINTHROP SHAW
8                                              PITTMAN LLP

9

10                                             By: /s/ Aaron S. Dyer

11                                                 *Attorneys for Steve B. Mikhov and*
                                                   *Roger Kirnos*
12

13                                             WILLIAMS & CONNOLLY LLP

14

15                                             By: /s/ Zachary K. Warren

16
                                                   *Attorneys for Steve B. Mikhov and*
17                                                 *Roger Kirnos*

18                                             FOLEY & LARDNER LLP

19

20

21                                             By: /s/ Pamela L. Johnston

22                                                 *Attorneys for Amy Morse*

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

## **FILER'S ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Neal K. Katyal, attest under penalty of perjury that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


DATED: January 26, 2026                         */s/ Neal K. Katyal*_____

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

## <u>LOCAL RULE 11-6.2 CERTIFICATION</u>

The undersigned, counsel of record for Defendants Steve B. Mikhov, Amy Morse, and Roger Kirnos, certifies that this brief complies with the page limit set by the Court's order dated January 26, 2025, Dkt. 159.


DATED: January 26, 2026                    */s/ Neal K. Katyal*