1  **MILBANK LLP**
   Neal K. Katyal (admitted *pro hac vice*)
2  nkatyal@milbank.com
   1101 New York Avenue NW
3  Washington, D.C. 20003
   Tel: (202) 835-7505
4

5  Matthew Laroche (admitted *pro hac vice*)
   mlaroche@milbank.com
6  55 Hudson Yards, 34th Floor
   New York, NY 10001-2163
7  Telephone: (212) 530-5688

8  *Attorneys for Defendants Steve B.*
   *Mikhov and Roger Kirnos*
9

10 [counsel caption continued on
   following page]

11                **UNITED STATES DISTRICT COURT**

12            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13
   FORD MOTOR COMPANY, a                  Case No. 2:25-cv-04550-MWC-PVC
14 Delaware Corporation,
                                          **REPLY MEMORANDUM OF POINTS**
15           Plaintiff,                   **AND AUTHORITIES IN FURTHER**
                                          **SUPPORT OF DEFENDANTS STEVE**
16       v.                               **B. MIKHOV, ROGER KIRNOS, AND**
                                          **AMY MORSE'S MOTION TO DISMISS**
17 STEVE B. MIKHOV, AMY MORSE,            **THE SECOND AMENDED**
   and ROGER KIRNOS,                      **COMPLAINT**
18
           Defendants.                    Hearing
19                                        Date:      March 6, 2026
                                          Time:      1:30 p.m.
20                                        Judge:     Hon. Michelle Williams Court
                                          Court:     6A
21                                        Trial Date: None Set
22

23

24

25

26

27

28

[counsel caption continued]

**WILLIAMS & CONNOLLY LLP**
Dane H. Butswinkas (admitted *pro hac vice*)
dbutswinkas@wc.com
Zachary K. Warren (State Bar No. 288398)
zwarren@wc.com
Hallie Saunders (admitted *pro hac vice*)
hsaunders@wc.com
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5252

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Aaron S. Dyer (State Bar No. 161798)
aaron.dyer@pillsburylaw.com
Ronald L. Cheng (State Bar No. 138892)
ronald.cheng@pillsburylaw.com
Lisseth A. Ochoa-Chavarria (State Bar No. 317130)
lisseth.ochoachavarria@pillsburylaw.com
725 South Figueroa Street, 36th Fl.
Los Angeles, CA 90017
Telephone: (213) 488-7100

*Attorneys for Defendants*
*Steve B. Mikhov and Roger Kirnos*

**FOLEY & LARDNER LLP**
Pamela L. Johnston (CA State Bar No. 132558)
Kendall E. Waters (CA State Bar No. 329963)
Tam C. Wheat (CA State Bar No. 352916)
pjohnston@foley.com
kwaters@foley.com
twheat@foley.com
555 South Flower Street
Suite 3300
Los Angeles, CA 90071
Telephone: (213) 972-4632

*Attorneys for Defendant Amy Morse*

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................9

ARGUMENT ....................................................................................................10

I.     THE FIRST AMENDMENT'S *NOERR-PENNINGTON* DOCTRINE BARS FORD'S RICO COMPLAINT ........................................................................10

II.    FORD FAILS TO STATE A RICO CLAIM IN COUNT ONE............................15

       A.     Ford Has Not Adequately Alleged A RICO Enterprise.................................16

       B.     Ford Has Not Adequately Alleged Racketeering Activity............................20

       C.     Ford Has Not Stated a Claim Against the Individual Defendants ...............23

III.   FORD FAILS TO PLEAD A RICO CONSPIRACY IN COUNT TWO..............28

IV.    FORD DOES NOT OBJECT TO A DISCOVERY STAY ....................................28

CONCLUSION....................................................................................................28

## TABLE OF AUTHORITIES

**Cases** ............................................................................................................**Page(s)**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    744 F.3d 595 (9th Cir. 2014) ........................................................ 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................ 24, 27

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
    237 F.3d 394 (4th Cir. 2001) ............................................. 12, 13, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................... 27

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
    727 F.3d 917 (9th Cir. 2013) ..................................................... 23, 26

*Buesa v. City of Los Angeles*,
    177 Cal. App. 4th 1537 (2009) ..................................................... 23

*Cedars-Sinai Med. Ctr. v. Super. Ct.*,
    954 P.2d 511 (Cal. 1998)............................................................. 22

*Chavez v. United States*,
    683 F.3d 1102 (9th Cir. 2012) ..................................................... 24

*Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.*,
    690 F.2d 1240 (9th Cir. 1982) ................................................. 10, 11

*Coast Surgery Ctr. v. Cigna Health & Life Ins. Co.*,
    2023 WL 10405133 (C.D. Cal. Aug. 1, 2023) .............................. 26

*Conerly v. Westinghouse Elec. Corp.*,
    623 F.2d 117 (9th Cir. 1980) ....................................................... 20

*Drummond Co. v. Collingsworth*,
    2024 WL 5056621 (N.D. Ala. Dec. 10, 2024) .............................. 19

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ................................................... 19, 20

*Evans v. Celotex Corp.*,
    194 Cal. App. 3d 741 (1987) ........................................................ 22

*Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*,
   873 F. Supp. 2d 288 ................................................................................25

*Ford Motor Co. v. Knight Law Grp.*,
   2025 WL 3306280 (C.D. Cal. Nov. 24, 2025) .......................................*passim*

*Freeman v. Lasky, Haas & Cohler*,
   410 F.3d 1180 (9th Cir. 2005) ...............................................................12

*Gomez v. Guthy-Renker, LLC*,
   2015 WL 4270042 (C.D. Cal. July 13, 2015)...........................................17

*Handeen v. Lemaire*,
   112 F.3d 1339 (8th Cir. 1997) ..........................................................19, 25

*Hanna v. Mercedes-Benz USA, LLC*,
   36 Cal. App. 5th 493 (2019) ...................................................................12

*In re Jamster Mktg. Litig.*,
   2009 WL 1456632 (S.D. Cal. May 22, 2009) ......................................18, 25

*JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*,
   2007 WL1159637 (S.D.N.Y. Apr. 18, 2007) ............................................19

*Kamal v. Cnty. of Los Angeles*,
   2018 WL 4328467 (C.D. Cal. Sept. 6, 2018) ...........................................23

*Kearney v. Foley & Lardner, LLP*,
   590 F.3d 638 (9th Cir. 2009) ...........................................................10, 14

*Khanna v. State Bar of Cal.*,
   505 F. Supp. 2d 633 (N.D. Cal. 2007).....................................................22

*Kottle v. Nw. Kidney Ctrs.*,
   146 F.3d 1056 (9th Cir. 1998) ...........................................................11, 13

*Kruse v. Repp*,
   611 F. Supp. 3d 666 (S.D. Iowa 2020) ...............................................19, 25

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) ..................................................................14

*Masterson v. Cheetah Mobile, Inc.*,
   2018 WL 5099505 (C.D. Cal. June 27, 2018)...........................................23

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Mazzocco v. Lehavi*,
    2015 WL 12672026 (S.D. Cal. Apr. 13, 2015) ............................................ 23

*McDonald v. Smith*,
    472 U.S. 479 (1985) .................................................................................. 10

*Mercatus Grp., LLC v. Lake Forest Hosp.*,
    641 F.3d 834 (7th Cir. 2011) ............................................................... 12, 13

*Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union*,
    215 F.3d 923 (9th Cir. 2000) ............................................................... 22, 23

*Napoli v. United States*,
    32 F.3d 31 (2d Cir. 1994) .......................................................................... 19

*In re Outlaw Lab'y, LP Litig.*,
    2020 WL 5552558 (S.D. Cal. Sept. 16, 2020) .......................................... 25

*In re Outlaw Lab'y, LP Litigation*,
    2020 WL 1953584 (S.D. Cal. Apr. 23, 2020) .............................. 18, 19, 25

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
    514 F.3d 856 (9th Cir. 2007) .................................................................... 17

*Rodriguez v. Kwok*,
    2014 WL 889570 (N.D. Cal. Mar. 3, 2014) .............................................. 25

*Roos v. Red*,
    130 Cal. App. 4th 870 (2005) .................................................................... 22

*Rotella v. Wood*,
    528 U.S. 549 (2000) .................................................................................. 21

*Russell v. Rolfs*,
    893 F.2d 1033 (9th Cir. 1990) .................................................................. 16

*Shaw v. Nissan N. Am., Inc.*,
    220 F. Supp. 3d 1046 (C.D. Cal. 2016) .................................................... 18

*United States ex rel. Silingo v. WellPoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) .................................................................... 24

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) .......................................... 11, 12, 14, 15

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ...................................................................... 23

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) .................................................................... 12

*Tortilla Factory, LLC v. Health-Ade LLC*,
   2018 WL 6174708 (C.D. Cal. July 13, 2018) ............................................ 24

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   826 F. Supp. 2d 1180 (C.D. Cal. 2011) ..................................................... 18

*United States v. Alvarez*,
   567 U.S. 709 (2012) .................................................................................... 10

*United States v. Exec. Health Res., Inc.*,
   196 F. Supp. 3d 477 (E.D. Pa. 2016) ......................................................... 11

*United States v. Philip Morris USA*,
   566 F.3d 1095 (D.C. Cir. 2009) ................................................................. 11

*United States v. Turkette*,
   452 U.S. 576 (1981) ............................................................................. 15, 16

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) .................................................................... 26

*Whelan v. Abell*,
   48 F.3d 1247 (D.C. Cir. 1995) ................................................................... 11

*Williams v. Doctors Med. Ctr. of Modesto, Inc.*,
   100 Cal. App. 5th 1117 (2024) ................................................................... 21

*United States ex rel. Wilson v. Maxxam, Inc.*,
   2009 WL 322934 (N.D. Cal. Feb. 9, 2009) ............................................... 10

**Statutes**

18 U.S.C. § 1503 ............................................................................................. 14, 15

18 U.S.C. § 1621 .................................................................................................. 14

18 U.S.C. § 1961(1) ............................................................................................. 14

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

18 U.S.C. § 1962(c) ............................................................................................... 28

C.D. Cal. L.R. 7-3 ................................................................................................. 16

Fed. R. Civ. P. 9(b) ......................................................................................... *passim*

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**PRELIMINARY STATEMENT**

Ford's opposition ("Ford Opp.") confirms that the Second Amended Complaint ("SAC") is an effort to relitigate what this Court has already carefully considered and ruled must be dismissed, not to cure the defects the Court identified. Ford does not grapple with the Court's well-reasoned, 33-page Opinion dismissing the FAC, which included allegations just like those pressed here. *Ford Motor Co. v. Knight Law Grp.*, 2025 WL 3306280, at *1 (C.D. Cal. Nov. 24, 2025) ("Op."). Instead, Ford barely mentions the Court's Opinion and proceeds as if it does not exist. *E.g.*, Ford Opp. at 17 n.3, 23 n.6.

That omission reflects Ford's overall strategy in this case. Across three complaints, Ford has advanced broad and unsupported accusations of billing fraud, yet it still has not alleged facts showing that Knight Law's underlying Lemon Law cases were shams, that Knight Law's clients were not entitled to fees, or that any alleged misstatement deprived any proceeding of legitimacy. When confronted with its pleading failures, Ford does not conform its case to the facts or the law—it sidesteps the Court's Opinion, ignores governing case law, contorts its own allegations, and substitutes rhetoric for well-pleaded allegations.

Ford's clear objective is to taint Defendants' reputations with hyperbolic allegations of fraud irrespective of what the evidence shows. Ford's complaint targets media headlines with claims of a "$100 million fraud," but when forced to show its math, it describes alleged billing inaccuracies totaling a miniscule fraction of that number. Ford's approach has had devastating consequences for the lawyers and law firms who have been dragged through the mud based on Ford's hyperbolic pleadings. Ford does not even attempt to explain why it previously named other lawyers, law firms, and a paralegal as necessary defendants only to drop them in a ploy to salvage its claims. This case has always been about destroying the reputation and business of Ford's primary Lemon Law adversary regardless of the facts or the law.

The Court should dismiss the SAC with prejudice.

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1

## ARGUMENT

2

## I. THE FIRST AMENDMENT'S *NOERR-PENNINGTON* DOCTRINE BARS FORD'S RICO COMPLAINT

3

4    Ford's opposition largely rehashes arguments this Court rejected in its Opinion.

5    Nothing in Ford's opposition requires this Court to reverse itself. The First Amendment's

6    Petition Clause, as discussed in the Supreme Court's *Noerr-Pennington* jurisprudence, bars

     this case from proceeding.

7

8    1.    *Burden on Petitioning.* The SAC still imposes an impermissible burden on

9    protected petitioning activity. Ford (at 14-19) begins by recycling its prior argument that

10   its RICO lawsuit imposes no "cognizable burden" on petitioning rights "[b]ecause

11   Defendants had no petitioning 'right' to engage in fraud and perjury." *Id.* at 18. Ford again

12   mistakenly conflates the question of burden with the sham litigation exception. "The

13   question of burden is separate from the question of whether the conduct challenged

14   included intentional misrepresentations or fraud," which "should be analyzed under the

15   sham exception." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 645 (9th Cir. 2009).

16   This Court, citing *Kearney* and other Ninth Circuit precedent, rejected Ford's principal

     argument already. Op. at *7.

17

18   Ford (at 13-19) argues again that the First Amendment does not protect fraud, citing

19   the same cases, including *United States ex rel. Wilson v. Maxxam, Inc.*, 2009 WL 322934,

20   at *8 (N.D. Cal. Feb. 9, 2009). But *Wilson* explains that *Noerr-Pennington* cases do not

21   "hold that misrepresentations to the government are themselves protected by First

22   Amendment; they hold merely that unless the misrepresentations strip the underlying

23   petition of legitimacy, *Noerr-Pennington* immunity continues to protect the act of

24   petitioning." *See also* Dkt. 114, at 12 & n.3 (distinguishing *Pyanskova*, *San Antonio Comty.*

     *Hosp.*, *Amphastar Pharms Inc.*, *Pepper*).[1]

25

---

26   [1] Ford also cites a handful of new cases, but two do not even address *Noerr-Pennington*.

27   *United States v. Alvarez*, 567 U.S. 709 (2012); *McDonald v. Smith*, 472 U.S. 479 (1985).

28   The rest provide no support. *Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.*,

1    2.    *Petitioning Activity.* The SAC still fails to explain how Defendants' advocacy

2    in Lemon Law litigation does not constitute protected petitioning activity. Instead, Ford

3    alleges that Defendants violated RICO by "creating and submitting fraudulent billing

4    records, including to Ford in settlement demands and to federal and state courts across

5    California in fee petition proceedings."  SAC ¶ 109. Because this Court already held that

6    "Defendants' conduct in preparing billing records and submitting fee petitions was based

7    on petitioning activity," Op. at *8, Ford argues only (at 15 & n.2) that Defendants'

8    "settlement demands" are not protected because they "were not adjudicated in courts."

9    Ninth Circuit precedent forecloses this argument. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923,

10   942 (9th Cir. 2006) ("Prelitigation communications demanding settlement of claims must

11   be afforded *Noerr-Pennington* protection . . . .").

12   3.    *Sham Exception.* Ford continues to ignore the law and the Court's Opinion

13   concerning the applicability of the sham litigation exception.  Ford (at 19) invokes only the

14   "third circumstance" of the sham litigation exception—misrepresentations to a court

15   depriving the litigation of its legitimacy. To fit within this circumstance, a complaint's

16   allegations must demonstrate that the defendant "so misrepresented the truth" in the

17   underlying litigation that "the ***entire*** . . . proceeding was deprived of its legitimacy." *Kottle*

18   *v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir. 1998). The SAC, like the FAC, fails to

19   meet this standard.

20   a.    Recognizing that Knight Law's Lemon Law suits as a whole were legitimate,

21   Ford argues (at 19), as it did before, that when the Ninth Circuit said misrepresentations

22   must deprive the "***entire***" proceeding of legitimacy, it really meant whatever portion of the

23   proceeding a plaintiff decides to cherry pick. According to Ford (at 19), the "relevant

24   proceeding" is not the ***entire*** Lemon Law litigation, but rather the "fee petition" portion.

25   ―――――――――――――――

26   690 F.2d 1240 (9th Cir. 1982) (sham litigation exception applied when protests filed without regard to success and all were unsuccessful); *United States v. Philip Morris USA*,

27   566 F.3d 1095, 1124 (D.C. Cir. 2009) (involving false marketing to consumers); *Whelan v. Abell*, 48 F.3d 1247, 1255 (D.C. Cir. 1995) (involving entirely false claim); *United States*

28   *v. Exec. Health Res., Inc.*, 196 F. Supp. 3d 477, 483, 505 (E.D. Pa. 2016) (same).

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Were Ford correct, the "narrow" sham exception would swallow the rule; *Noerr-Pennington* immunity, which "overprotects baseless petitions," *Sosa*, 437 F.3d at 934, would be stripped away whenever a plaintiff alleges misrepresentations in any single portion of a litigation. That is not the law. *See Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 n.19 (9th Cir. 2005) ("Our conclusion that the defense as a whole was not a sham also establishes that this isolated instance of litigation misconduct would not, if proven, deprive the defense ***as a whole*** of its legitimacy."). Ford (at 20) again cites *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004), but that case addressed the first sham litigation circumstance (objectively baseless lawsuit), not the third (misrepresentations to a court). As Ford acknowledges in its brief (at 23 n.6), these two circumstances are "distinct." *Theofel* also involved a subpoena to a third party that had no other involvement in the case; thus, as to the third party, the subpoena was the "entire proceeding." Here, the fee petition portions of the litigation involved the same parties as the lawsuits as a whole. Defs.' Mem. Supp. Mot. to Dismiss SAC ("Br.") at 19-20, Dkt. 160-1.[2]

      b.    Even if the fee petition portion of the litigation were the proper unit of measurement, the SAC fails to allege misrepresentations depriving even that ***entire*** portion of legitimacy. Ford (at 21) argues that because materiality is an element of fraud and perjury, any allegation of fraud or perjury in connection with fee petitions is, by definition, sufficient to trigger the sham litigation exception. *Id.* (citing *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834 (7th Cir. 2011); *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394 (4th Cir. 2001)). To the contrary, the Ninth Circuit holds that the sham litigation exception is not triggered by just any material misrepresentation, but only those

---

[2] Ford's reliance on the collateral order doctrine and *Hanna v. Mercedes-Benz USA, LLC*, 36 Cal. App. 5th 493, 506 (2019), as suggesting that Lemon Law fee petitions are separate proceedings from the Lemon Law cases in which they were filed, is bizarre. If they were in fact separate, there would have been no need in *Hanna* to rely on the collateral order doctrine, which is an "exception to the one final judgment rule" and permits appeals of interlocutory orders in the same case. *Id.* The question of what constitutes an appealable collateral order also has nothing to do with the sham litigation exception.

1    that "so misrepresented the truth" they deprived the "entire" litigation of legitimacy.

2    *Kottle*, 146 F.3d at 1063.  None of the cases Ford cites contradicts *Kottle*.

3         The Fourth Circuit in *Baltimore Scrap Corp.* was dubious about whether a fraud-on-

4    the-court exception to *Noerr-Pennington* immunity even exists, but if it does, "it ***extends***

5    ***only to the type of fraud that deprives the litigation of its legitimacy***." 237 F.3d at 401-02.

6    "Alleged frauds that 'do not infect the core' of a case will receive *Noerr-Pennington*

7    immunity because regardless of the alleged fraud, the outcome would have been the same."

8    *Id.* at 402. *Accord Mercatus Grp., LLC*, 641 F.3d at 843 (citing *Baltimore Scrap Corp.*).

9    This extremely high, outcome-determinative standard is necessary because a "broad fraud

10   exception would allow federal collateral litigation over conduct in state courts that never

11   infected the core of a state judgment." *Baltimore Scrap Corp.*, 237 F.3d at 404. The alleged

12   misrepresentations here were not outcome-determinative as to the Lemon Law litigation or

13   even as to the fee petitions alone. ***Because Knight Law's clients were entitled to fees,***

14   ***Defendants would have recovered fees with or without the alleged misrepresentations***.

15   That is the fatal flaw this Court identified already: Ford fails to allege that "Defendants

16   lacked any entitlement to fees in the relevant Lemon Law cases." Op. at *11. Indeed, Ford

17   concedes (at 23) that "Defendants were entitled to *some* fees."

18        Ford does not even allege that the fees were substantially overstated; it admits that

19   the supposedly inflated amounts were "nearly undetectable" in any given case, amounting

20   to a "few extra hundred in fees here and a few extra thousand in fees there." Dkt. 103 at

21   14; SAC ¶¶ 4, 18, 52, 64 (alleging scheme of small misstatements spread across thousands

22   of cases to avoid detection). Ford's assertion (at 23)—that by alleging any "***discernable***"

23   increase in the amount of fees paid, it triggers the sham litigation exception—is refuted by

24   *Kottle* and the authorities cited above and would cause the exception to swallow the rule.

25   Furthermore, this Court has already rejected that very same argument: "Here, even

26   accepting as true the allegation that some of Defendants' purported work entitling them to

27

28

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

fees was fictitious, that misrepresentation is not sufficient on its own to deprive the entire fee petition process—let alone the entire lawsuit—of legitimacy." Op. at *11.[3]

As one of the cases Ford cites makes clear, "[i]t is simply not the role of federal courts . . . to reconsider the underlying validity of a state [proceeding]. We would have to immerse ourselves in the minutiae of state civil proceedings and in effect relitigate the claims that the state courts have already decided." *Baltimore Scrap Corp.*, 237 F.3d at 402. That is exactly what Ford wants this Court to do—relitigate "thousands" of fee petitions to determine whether any were inflated at the margins. SAC ¶ 4. "For federal courts to entertain this type of . . . action would impermissibly impact the right to petition a coordinate system of justice." *Baltimore Scrap Corp.*, 237 F.3d at 402.

4. *First Amendment Dismissal Requirement*. Where a "***plausible construction*** of the applicable statute is available that avoids the burden" on petitioning, a court "***must give the statute the reading that does not impinge on the right of petition***." *Sosa*, 437 F.3d at 932.[4] As set forth in the opening brief, RICO and its predicates do not unambiguously reach the conduct at issue. Br. at 20-21. Ford does not claim RICO unambiguously applies, but contends instead (at 24) that the perjury statute (18 U.S.C. § 1621) applies to the filing of allegedly false declarations. Ford's contention underscores why RICO and its predicate statutes do not unambiguously reach Defendants' alleged conduct—***perjury is not a RICO predicate***. 18 U.S.C. § 1961(1). Ford does not argue (and therefore waived any argument) that 18 U.S.C. § 1503 *must* be construed to impose civil RICO liability for the allegedly

---

[3] This case is unlike those involving litigation misconduct resulting in a significant difference in an award or settlement. *Kearney*, 590 F.3d at 642-43 (improperly suppressed testing results "***significant to valuation*** and supported a higher value of the property"); *cf. Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 368 (9th Cir. 2005) (not a *Noerr-Pennington* case, but cited in *Sosa*) (plaintiffs' knowledge of the withheld evidence "would have ***increased the settlement value of the case substantially***").

[4] "Only where the statutes clearly provide for the burden posed by the lawsuit will we address whether the statute may be applied to the petitioning conduct consistently with the Constitution." *Id.* That is not necessary here because "a reasonable construction of RICO or the predicate act statutes exists that avoids the burden." *Id.*

false declarations, and for good reason. Section 1503 does not unambiguously reach the conduct at issue and does not reference court filings. *See* 18 U.S.C. § 1503 ("Whoever . . . corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished . . . ."). Section 1503 is subject to a "fairly possible," *Sosa*, 437 F.3d at 939, interpretation that excludes filing declarations relating to whether Lemon Law billing entries are appropriate or contemporaneous. For the same reasons the Court (following *Sosa*) found that the text of the mail and wire fraud statutes did not "unambiguously reach the submission of inflated fee petitions," RICO and its predicate act statutes, including Section 1503, "must be construed to avoid burdening protected petitioning activity." Op. at *12.

*    *    *

Ford has not modified its Complaint to allege a new or different kind of petitioning activity in the SAC that differs from the activity that resulted in the Court's dismissal of the FAC. Accordingly, the Court's Opinion stands: "Defendants are entitled to *Noerr-Pennington* immunity for their petitioning activity, and dismissal is appropriate on this basis alone." *Id.*

## II.    FORD FAILS TO STATE A RICO CLAIM IN COUNT ONE

Even if Ford could get past *Noerr-Pennington*, its attempt to state a RICO claim by characterizing Defendants' routine legal activity as a racketeering enterprise fails as a matter of law. As the Court already concluded, Congress did not intend the RICO statute to be used in this manner. *United States v. Turkette*, 452 U.S. 576, 584 (1981) (RICO addresses establishment of "wholly illegal enterprises" or "infiltration" of legitimate business organizations). Ford has offered no basis to depart from the Court's Opinion.[5]

---

[5] The Court should reject Ford's request (at 13 n.1) to strike the motion under Local Rule 7-3. This motion raises the same grounds for dismissal as the two prior motions, and because the parties met and conferred concerning these arguments, Defendants complied with the rule. *See* Laroche Decl. ¶¶ 2-5. Ford also cannot claim any prejudice, as Ford

### A. Ford Has Not Adequately Alleged A RICO Enterprise

1. *Ford's new enterprise allegations are false and a sham.* Ford does not dispute that its new allegation that Knight Law alone is the enterprise directly contradicts its prior allegations and arguments to the Court that Knight Law "couldn't do this alone." MTD Tr. at 96:8-11. In fact, Ford does not address the contradictory arguments it made in Court that Defendants quoted in their motion to dismiss. Br. at 11-12, 22. Rather than provide an explanation for its contradictory arguments and allegations, Ford simply ignores them.

Ford suggests (at 27) that its opportunistic pleading strategy is acceptable because the Ninth Circuit has allowed inconsistent allegations in amended pleadings and, when it has not, the reason was the plaintiff sought to plead a new claim. *See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014). But the problem in *Airs Aromatics* was that the new claim depended on allegations that directly contradicted arguments plaintiff made in prior briefing, which is exactly what Ford is doing here. *Id.* at 600 (citing *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). The principles that support rejecting contradictory allegations, which are grounded in judicial estoppel, are "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings." *Russell*, 893 F.2d at 1037 (cleaned up). These principles are "intended to protect against a litigant playing fast and loose with the courts." *Id.* (citation modified).

If there ever was a case to apply those principles, it is this one. Across its first two complaints, Ford alleged a RICO theory that is fundamentally inconsistent with the one in the SAC—that the purported RICO enterprise was an association in fact involving numerous defendants and law firms who, according to Ford, each operated the enterprise and played necessary roles in the scheme. Ford argues (at 28) that Defendants have not

---

refused to make any changes to its pleadings following the earlier meet-and-confers and, unsurprisingly, does not claim that it would have done so this time. Ford also declined Defendants' offer to meet and confer before filing this motion, apparently because it preferred to preserve this argument.

identified allegations in the FAC making its new theory implausible, but that is not true. Defendants quoted Ford's counsel defending the FAC's allegations and arguing that Knight Law was not an enterprise on its own. Br. at 11-12, 22. The entire premise of the FAC was that Knight Law was a RICO person, the scheme was "concealed by spreading [] fictitious billing across multiple clients, cases, and law firms," FAC ¶ 59, and as a result, all the non-Knight Law firms and lawyers were, in Ford's words, "critical to the success of the alleged scheme." MTD Tr. 92:20-93:7; FAC ¶¶ 4, 10, 19-20, 27-29, 50, 57, 80-85.

Ford has abandoned the enterprise theory it previously pleaded—twice—and defended in filings and to this Court. It is unacceptable for Ford to drag other law firms, lawyers, and a paralegal through reputationally devastating RICO litigation, only to drop them as defendants and delete all allegations about them—not because it received new information, but simply to try to salvage its case.[6] *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015) (plaintiff cannot avoid dismissal through "sophistic pleading practices"). Even the cases Ford relies on explain that contradictory pleading may result in judicial estoppel, sanctions, and "a loss of credibility before the trier of fact." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 n.2 (9th Cir. 2007).

2.    *Ford's new enterprise theory fails on its own terms.* Ford claims (at 27) that Defendants did not address the viability of Ford's new enterprise theory, but Defendants spent pages doing so. Br. at 23-24. Ford never grapples with Defendants' arguments, or the fact this Court rejected the FAC's enterprise allegations because they would turn the ordinary business of a law firm into a RICO enterprise. Op. at *13-15. Ford also argues (at 28) that its new allegations about the Fee Motion Department show a common purpose beyond representing consumers in Lemon Law cases, but Defendants explained why those allegations are contradicted by the underlying deposition testimony, which is incorporated

---

[6] The SAC describes allegations concerning, for example, purportedly fraudulent time entries as the product of "deposition testimony of KLG witnesses recently produced in discovery," but Ford was in possession of and relied on this information when it filed the FAC. *Compare* FAC ¶¶ 1, 5, 46, *with* SAC ¶¶ 3, 34.

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1 by reference into the SAC. Br. at 16; *see also* Ex. 16, Howard Tr. 15:15-24; 56:1-15. Ford

2 ignored those points too.

3      Regardless, even accepting Ford's grossly misleading characterizations of the

4 depositions, the SAC still states, at best, that Knight Law's "billing—the primary activity

5 at any for-profit law firm hoping to stay in business—was conducted fraudulently." Op. at

6 *14. That Ford has now alleged that Knight Law has a separate billing department does not

7 save the SAC. The Court rejected the same exact allegations in the FAC as "'incompatible

8 with the types of conduct RICO was enacted to prevent.'" Op. at *14 (quoting *In re Toyota*

9 *Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods. Liab. Litig.*, 826 F.

10 Supp. 2d 1180, 1202-03 (C.D. Cal. 2011)). Ford, again, ignores the Court's Opinion.

11      Ford cites cases (at 25-26 & n.9) in which a law firm or lawyers were deemed to be

12 members of a RICO enterprise, but this is a red herring. Defendants never argued (and the

13 Court never held) that lawyers are immune from RICO liability. Rather, the case law is

14 abundantly clear that what Ford is doing here—alleging that the legitimate activity of a law

15 firm was conducted fraudulently—does not on its own establish a RICO enterprise. *See In*

16 *re Toyota UA*, 826 F. Supp. 2d at 1202-03 (dismissing complaint that allege[d] no more

17 than that Defendants' primary business activity . . . was conducted fraudulently); Op. at

18 *14-15 (collecting cases). More is required, including "particularized allegations" that

19 defendants came together or were "bound by" the alleged fraudulent purpose. *In re Jamster*

20 *Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (first quote); *Shaw v.*

21 *Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016) (second quote).

22      Ford's cases are not to the contrary. In *In re Outlaw Lab'y, LP Litigation*, the

23 allegations were that a lawyer associated together with a company and its executives to

24 send fraudulent demand letters with no expectation of ever bringing a claim, which goes

25 far beyond the ordinary conduct of a law firm. 2020 WL 1953584, at *3 (S.D. Cal. Apr.

26 23, 2020). The underlying allegations in the complaint were also much more specific and

27 detailed than those here, and included (i) screenshots of communications involving the

28 defendants; (ii) quotes of alleged enterprise members' correspondence in furtherance of the

scheme; (iii) summaries of judicial opinions finding that alleged enterprise members' conduct amounted to a "shakedown"; (iv) information about the alleged scheme derived from FOIA requests; and (v) allegations that enterprise members never actually sold the product for which they demanded compensation through demand letters. *See* Second Amended Counterclaims of Roma Mikha, Inc. and Third-Party Claims of NMRM, Inc. and Skyline Market Inc. ¶¶ 7, 19, 26-29, 47, 59, 62-63, 66-68, 71, No. 3:18-cv-840, Dkt. 114. As to the attorney members of the enterprise in particular, the allegations included quotes of communications in furtherance of the scheme, allegations that attorneys specifically drafted correspondence in furtherance of the scheme, admissions from those attorneys that the correspondence contained false statements, and a summary of attorney statements during a phone call in furtherance of the scheme. *See* Second Amended Counterclaims of Roma Mikha, Inc. and *id.* ¶¶ 7, 69-73.[7]

The conclusory allegations here—that Defendants were involved in filing fee applications in meritorious Lemon Law actions—are not remotely similar. Ford needed "a significant level of factual specificity [to show] that [facially legitimate] conduct is plausibly part" of a RICO enterprise. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014). Ford has had three chances to do so, but the SAC has the weakest allegations yet. The FAC at least attempted to allege (albeit in conclusory fashion) meetings involving enterprise members and directions given to specific individuals in furtherance of the scheme. FAC ¶¶ 20, 29, 69, 82. Those allegations were all omitted from the SAC, which does not include a single allegation of any communications

---

[7] The other cases Ford cites all involved facially illegitimate conduct of lawyers and non-lawyer members of the enterprise, such as (i) paying witnesses to obtain favorable testimony or testify falsely (*Drummond Co. v. Collingsworth*, 2024 WL 5056621, at *3 (N.D. Ala. Dec. 10, 2024); *Napoli v. United States*, 32 F.3d 31, 36 (2d Cir. 1994)); (ii) instructing clients to falsify records (*Handeen v. Lemaire*, 112 F.3d 1339, 1344 (8th Cir. 1997)); *Kruse v. Repp*, 611 F. Supp. 3d 666, 710 (S.D. Iowa 2020)); or (iii) engaging in money laundering (*JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*, 2007 WL1159637, at *10 (S.D.N.Y. Apr. 18, 2007)).

or meeting involving the Defendants, or directions given to any individual in furtherance of the scheme. Ford cannot make any factual allegations because there is no basis to allege that Defendants came together to engage in fraudulent billing, rather than to represent clients in meritorious Lemon Law cases.

### B.    Ford Has Not Adequately Alleged Racketeering Activity

Ford (at 29-33) does not dispute the applicable pleading requirements: it must allege at least one predicate act that caused an injury to Ford within the limitations period; that predicate act must be pled with particularity under Rule 9(b); and the alleged RICO claim arising out of that predicate act must be actionable and, therefore, cannot be precluded. Br. at 24-30. Ford wrongly contends (at 29-33) that the 16 "representative samples" in the SAC satisfy these requirements.

1.    *Statute of Limitations*. Ford does not address the SAC's failure to allege the payment dates in *Pedante*, *Fort*, *Bagwell*, *Medina*, *O'Brien*, and *Daggett*. Ford therefore cannot rely on those petitions to establish a viable RICO claim. Br. at 26. Ford instead seeks (at 29-30) to toll the statute of limitations as to the untimely 2018 payments in *Buck*, *Duk*, *Burgess*, *Duenas*, and *Orosco* on the basis that Defendants submitted declarations stating that the fee invoices were accurate. But a statute of limitations can be tolled only by pleading fraudulent concealment with particularity under Rule 9(b). *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980). That requires particularized, plausible factual allegations supporting that, among other things, the plaintiff was not at fault for failing to discover the alleged fraud, the plaintiff had no information creating a duty of inquiry, and the plaintiff could not have discovered the alleged fraud at an earlier date by exercising reasonable diligence. *Id.* Ford (at 29) cites SAC ¶¶ 27-30, 43-44, 59-65, and 70-76 as the bases for tolling, but those allegations do not come close to establishing fraudulent concealment, let alone with the particularity required by Rule 9(b).

In any event, Ford cannot claim that it was misled to believe the fee invoices were accurate when they were filed in 2018: back then, Ford was already arguing in court that the invoices were "unduly inflated," reflected "overcharging," "overbilling," and "double

billing," and included work never performed. Br. at 28-29; Dkt. 160-6, 160-7. And Ford told the press in 2021 that it believed there was widespread fraud in Knight Law's fee invoices. Br. at 26 n.5. RICO's statute of limitations begins running when a plaintiff discovers the **injury**—not the alleged pattern of RICO activity. *Rotella v. Wood*, 528 U.S. 549, 553 (2000). Ford was shouting about its alleged injuries in response to every fee petition filed in 2018—and since then.

2.    *Rule 9(b)*. SAC ¶¶ 77-82 contain conclusory allegations of fraud without identifying the specific content of the alleged misrepresentations. Br. at 27. Ford concedes (at 30) that "not every example [in the SAC] provides the same degree of specificity," but tries to brush over that deficiency by arguing that "all of KLG's fee petitions, including the ones cited as representative examples, were fraudulent." That misses the point. Ford must allege at least one predicate act, pled with particularity, causing an actionable injury within the limitations period; because Rule 9(b) requires identification of the "specific content" of the alleged misrepresentations, and the SAC does not allege the specific content in *Burgess*, *Duenas*, *Orosco*, *Berroteran*, *Coon*, *Brown*, *Margeson*, or *Anderson*, Ford does not state a viable RICO claim based on those petitions.

3.    *Preclusion*. Ford challenges issue preclusion on four grounds. *First*, Ford says (at 31) the issues are not identical because the fee petitions "focused on the lodestar method of determining a reasonable fee," while the SAC alleges that Defendants "populate[d] fee applications with fake time entries for work never performed." But the courts adjudicating the fee petitions necessarily decided whether the attorneys actually worked the billed hours, an issue that is also central to Ford's claims here. Br. at 28-29. Ford's opposition skips past this point. Ford's reliance (at 31) on *Williams v. Doctors Med. Ctr. of Modesto, Inc.*, 100 Cal. App. 5th 1117 (2024), is misplaced. There, the trial court awarded fees because allegations in the complaint violated the anti-SLAPP rule. *Id.* at 1127. The plaintiff filed a second suit without those allegations, but the trial court, applying issue preclusion, held the second suit violated the anti-SLAPP rule. *Id.* at 1128-29. The court of appeal reversed

because the second suit omitted the problematic allegations, so the anti-SLAPP motions in each case were based on different issues. *Id.* at 1137.

That is not the situation here. Ford's RICO claims are predicated on the allegation that Knight Law attorneys did not actually work the hours they billed. SAC ¶ 4 (alleging "wholly fictitious billings for time never worked"); MTD Tr. 84:12–14 ("[T]he issue . . . in this case . . . is the very specific issue of whether there was fraudulently claimed time for tasks not worked . . . ."); *id.* at 85:19-21 (similar). But in awarding Knight Law's fees, the underlying courts necessarily decided the attorneys worked those hours. Br. at 28-30. The issues are identical.

*Second*, Ford argues (at 32) the SAC "alleges substantial new facts." But "[a]n exception to collateral estoppel cannot be grounded on the alleged discovery of more persuasive evidence. Otherwise, there would be no end to litigation." *Evans v. Celotex Corp.*, 194 Cal. App. 3d 741, 748 (1987); *Roos v. Red*, 130 Cal. App. 4th 870, 888 (2005) (same); *Khanna v. State Bar of Cal.*, 505 F. Supp. 2d 633, 650 (N.D. Cal. 2007) (same). *Roos* illustrates the point: new testimony obtained between two cases could not defeat issue preclusion because it went only to the "weight of the evidence," not to a new issue or a change in the parties' rights. 130 Cal. App. 4th at 888. Ford's purported acquisition of new transcripts does the same. The transcripts do not change the underlying factual issue (whether fee petitions were inflated); Ford merely claims to have obtained more evidence.

*Third*, Ford argues (at 32) issue preclusion does not apply because the proceedings involve "different substantive law." But whether attorneys worked the billed hours is a question of fact, not law, and Ford does not explain how that factual analysis differs in a fee petition hearing versus a RICO case. Courts consistently apply issue preclusion when a party tries to turn a previously decided issue into a new RICO claim. *See, e.g.*, *Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union*, 215 F.3d 923, 928 (9th Cir. 2000); *Mazzocco v. Lehavi*, 2015 WL 12672026, at *9 (S.D. Cal. Apr. 13, 2015); *Kamal v. Cnty. of Los Angeles*, 2018 WL 4328467, at *11 (C.D. Cal. Sept. 6, 2018), *R&R adopted*, 2018 WL 4292190 (C.D. Cal. Sept. 7, 2018).

*Finally*, Ford's policy argument (at 32-33) about "the integrity of the judicial system" ignores binding California preclusion law. Contrary to Ford's argument, "a judgment may not be collaterally attacked on the ground that evidence was falsified." *Cedars-Sinai Med. Ctr. v. Super. Ct.*, 954 P.2d 511, 516 (Cal. 1998); *see also Buesa v. City of Los Angeles*, 177 Cal. App. 4th 1537, 1545 (2009) ("[I]ntrinsic fraud cannot be used to overthrow a judgment, even where the party was unaware of the fraud at the time and did not have a chance to raise it at trial."). Because California law requires application of issue preclusion even where a plaintiff shows intrinsic fraud in the prior action, Ford's policy arguments must be rejected.

In sum, Ford was required to allege examples of predicate acts, pled with particularity, that caused an actionable injury to Ford within the limitations period. None of the SAC's 16 exemplar fee petitions satisfies those criteria.

## C. Ford Has Not Stated a Claim Against the Individual Defendants

Ford cannot state a RICO claim against the Defendants premised on group pleading, conclusory statements unsupported by facts, and information-and-belief allegations. "Rule 9(b) . . . requires plaintiffs to differentiate their allegations when suing more than one defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Ford argues (at 33) that it should be excused from heightened pleading requirements because certain facts are within Defendants' possession. But Ford cannot trumpet a multi-year investigation, rely on Defendants' deposition testimony, and cite information obtained from third parties "that purportedly have personal knowledge of [Defendants'] fraud" while simultaneously offering only group pleading, conclusory claims, and unfounded information-and-belief allegations. *Masterson v. Cheetah Mobile, Inc.*, 2018 WL 5099505, at *3 (C.D. Cal. June 27, 2018). Even if it could, the SAC still must—yet does not—"state the facts upon which its belief is founded." *Tortilla Factory, LLC v. Health-Ade LLC*, 2018 WL 6174708, at *8 (C.D. Cal. July 13, 2018) (citation modified). Ford also argues that group pleading is permissible where a RICO claim resembles a "wheel conspiracy," which is characterized by each participant "engag[ing] in precisely the same conduct." But the

SAC (like the FAC) alleges a "chain conspiracy" in that "each person is [purportedly] responsible for a distinct act within the overall plan." *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 678 (9th Cir. 2018). Ford's "complaint must separately identify which defendant was responsible for what distinct part of the plan" with particularity. *Id.* It does not.

Ford argues (at 33-34) that it adequately alleged that "Defendants" "oversaw," "supervised," and "directed" the purported enterprise. Here, again, Ford fails to address that the Court rejected nearly identical allegations in the FAC (Op. at *15), or that Ford's own counsel acknowledged during oral argument that these kinds of allegations fail to state a claim (MTD Tr. 76:3-6). Instead, Ford claims that these allegations have factual support because Defendants "owned and managed" Knight Law. But that exact argument—that holding a management position is enough to plausibly allege involvement in a scheme—has been repeatedly rejected, including by the Supreme Court and Ninth Circuit. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) (conclusory allegations that a supervisory official had discriminatory intent do not state a claim); *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 927 (9th Cir. 2013) (similar); *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012) (similar).

By any measure, Ford's allegations against each Defendant fail.

1.    *Mr. Mikhov*. As to RICO conduct, Ford simply repeats (at 34-35) its conclusory allegations, made on information and belief and without factual support, that Mr. Mikhov was the "ringleader" and "responsible for creating KLG's Fee Motion Department." The Court already rejected this approach in the FAC. Op. at *15. Ford also argues (at 35) that allegations about Mr. Mikhov's deposition testimony are "specific" enough to show he "arbitrarily" told the Fee Motion Department to "fabricate" his and other attorneys' time. But that is not what Mr. Mikhov actually testified, or even what is quoted in the SAC. Mr. Mikhov said he occasionally recorded time based on memory and that the fee motion department could enter time for tasks he performed absent a written timesheet. That is not tantamount to fabricating false time entries. There are also no factual

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

allegations that Mr. Mikhov directed the fee motion department to do anything with respect to other attorneys' time records. Ford is inventing allegations where none exist.[8] *See Rodriguez v. Kwok*, 2014 WL 889570, at *6 (N.D. Cal. Mar. 3, 2014) ("[A]n opposition brief cannot amend the complaint."); *Jamster*, 2009 WL 1456632, at *5 ("Pleading by adjective does not comply with Rule 9(b).").

Ford's attempt to establish that Mr. Mikhov participated in a pattern of racketeering activity also fails. Ford does not dispute that it failed to satisfy Rule 9(b) by alleging that Mr. Mikhov's time entries were "suspicious," "vague," or repetitive. Br. at 33. Instead, Ford simply recycles the same argument it made as to RICO conduct contending (at 35) that Mr. Mikhov must have known his declarations were false because he "is alleged to have created the Fee Motion Department and authorized it to fabricate time." As explained above, the SAC includes no factual allegations supporting that Mr. Mikhov did either of those things, which distinguishes this case from those cited by Ford. *See supra* Part II.A (distinguishing *In re Outlaw*); *Kruse*, 611 F. Supp. 3d at 711 (attorney defendants instructed clients to falsify records and fraudulently conceal assets); *Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 316 & n.16 (alleging series of payments that served no purpose other than to pay off witness); *Handeen*, 112 F.3d at 1344 (alleging law firm instructed debtor to falsify debts).

Finally, Ford claims (at 34 n.13) that its allegations about Mr. Mikhov purportedly relocating to avoid paying taxes were not inflammatory and inaccurate because they are relevant to show he is still involved in Knight Law. This is a thin reed of relevance in an electronic world. Regardless, Ford has no apparent basis for the allegation given that it was made on information and belief, prefaced with "apparently," and has no factual basis

---

[8] Ford cites (at 35) the decision denying summary judgment in *In re Outlaw Lab'y, LP Litig.*, 2020 WL 5552558, at *1 (S.D. Cal. Sept. 16, 2020). Whether there was a material factual dispute following discovery in that case does not help assess whether Ford stated a claim against Defendants at the motion to dismiss stage. The more apt comparison is to the complaint and motion to dismiss decision in *In re Outlaw*, which does not support Ford. *Supra* Part II.A.

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1    supporting it. SAC ¶ 20. The Court instructed Ford to exclude impertinent attacks and to

2    set forth the basis for its allegations, which it failed to do here. Op. at *17 n.5, *19 n.6.

3        2.    *Mr. Kirnos*. Ford halfheartedly defends its sparse allegations about Mr.

4    Kirnos. Ford does not dispute that it failed to plausibly allege that Mr. Kirnos engaged in

5    enterprise conduct. *Compare* Br. at 34, *with* Ford Opp. at 35-36 (addressing racketeering

6    activity but not RICO conduct). This alone requires Mr. Kirnos's dismissal from this case.

7    *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008); *Coast Surgery Ctr. v. Cigna*

8    *Health & Life Ins. Co.*, 2023 WL 10405133, at *7 (C.D. Cal. Aug. 1, 2023) (failing to

9    respond "may be deemed abandonment of the issue and justify dismissal of the claim").

10       As to racketeering acts, Ford argues (at 36) that Mr. Kirnos must have known his

11   declarations were fraudulent and that he acted with an intent to defraud because he

12   "oversaw" the fee motion department and was for a time managing partner of the firm.

13   These conclusory allegations are insufficient for all the reasons discussed throughout this

14   memorandum, in the Court's Opinion, and by Ford's own counsel. *See supra* Part II.B.2,

15   II.C; Op. at *14; MTD Tr. 76:3-6. Ford also overlooks cases cited by Defendants holding

16   that an allegation that a law firm partner may have "supervised" or "overseen" an internal

17   legal department does not state a RICO claim as a matter of law. Br. at 34-35 (collecting

18   cases).

19       Finally, Ford argues that it was false for Mr. Kirnos to state in his declaration that

20   he "personally reviewed" timesheets based on his deposition testimony. This is absurd and

21   another example of Ford inventing allegations that do not appear in the SAC. Mr. Kirnos

22   did not testify that he did not review the timesheets submitted with his declarations. He

23   was not even being asked about his declarations or fee motions. When asked whether other

24   attorneys entered their time pursuant to Knight Law's billing program, he said he could not

25   "speak for what other attorneys do" to bill time, which plainly he cannot. He went on to

26   explain that he recorded his time contemporaneously and understood other Knight Law

27   attorneys did so as well because he has "seen results." This is entirely consistent with his

28   declarations and undermines Ford's case.

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

3.      *Ms. Morse*. Ford likewise fails to state a claim against Ms. Morse. Ford alleges, in conclusory fashion, that Ms. Morse **knowingly** created falsified time records that she knew were submitted to courts in underlying cases, but pleads no plausible facts to support such a conclusion. This Court has already held that generic "direction" allegations are legally inadequate and that "Plaintiff cannot just allege that various defendants 'directed the other defendants to take the actions that form the basis of the complaint'" to survive dismissal. Op. at *15 (quoting *Blantz* at 926-27). Ford's information-and-belief assertion that Ms. Morse "knew" about and "allowed" fabricated entries—without specifying a single date, communication, or concrete act—falls squarely within what the Opinion has already deemed insufficient as a matter of law. Ford's conclusory allegations are also striking given that Ms. Morse testified that she has nothing to do with fee motions at Knight Law. Br. at 36; Ex. 15.

Ford also expressly conceded in the prior round of motion practice that Ms. Morse may have been "somehow duped by others at KLG into having her name used in fraudulent evidence submitted in support of fee applications without her knowledge." Dkt. 103, Opp. to FAC MTD, at 76. Ms. Morse could not have knowingly engaged in racketeering activity in those circumstances, and conclusory assertions otherwise are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007).

The SAC still includes no substantiated allegation that Ms. Morse engaged in the fee-petition conduct that supposedly drove the "enterprise." Ford does not allege that Ms. Morse drafted declarations used in fee motions, drafted fee motions, reviewed fee motions, negotiated fee settlements, or instructed anyone to falsify her time. Under *Reves* and *Odom*, Ford must allege that Morse actively participated in the enterprise's affairs, and the Court has already held that Ford's "direction" and "delegation" allegations "suffer from the same defects as those of the complaint in *Blantz*." Op. at 15. Ford overlooks the Court's Opinion and the numerous other cases holding that simply alleging that a lawyer held a supervisory position is not enough to state a RICO claim. *Id.*; Br. at 38-39 (collecting cases).

Under the framework the Court has already articulated—rejecting RICO claims based on ordinary business conduct for an ordinary business purpose—these allegations describe nothing more than a supervising litigator whose name appears on internal time records. Repleading the same theory with more rhetoric and fewer defendants does not transform Ms. Morse into someone who "conduct[ed] or participate[d], directly or indirectly, in the conduct of [an] enterprise's affairs." 18 U.S.C. § 1962(c). The claims against her should be dismissed.

## III.   FORD FAILS TO PLEAD A RICO CONSPIRACY IN COUNT TWO

The deficiencies in Ford's substantive RICO claim are reason enough to dismiss Count Two. Op. at *17. Regardless, Ford's contention that a RICO conspiracy can be "inferred" from the SAC is meritless. Ford cites conclusory allegations from Count Two's claim language (SAC ¶¶ 116-22), but it does not explain how those allegations plausibly state a RICO conspiracy claim, let alone satisfy Rule 9(b)'s requirement of particularized allegations of such an agreement. Br. at 39 (citing cases). Ford's conspiracy claim fails.

## IV.   FORD DOES NOT OBJECT TO A DISCOVERY STAY

Ford does not object to Defendants' motion to continue the discovery stay pending resolution of the motion to dismiss. Br. at 39. Thus, the Court should continue the stay.

## <u>CONCLUSION</u>

The Court should dismiss the claims against Defendants with prejudice.

1    DATED: February 20, 2026

2                                              MILBANK LLP

3

4                                      By: */s/ Neal K. Katyal*

5                                              Attorneys for Steve B. Mikhov and
                                               Roger Kirnos
6

7                                      PILLSBURY WINTHROP SHAW
                                       PITTMAN LLP
8

9

10                                     By: */s/ Aaron S. Dyer*

11                                             Attorneys for Steve B. Mikhov and
                                               Roger Kirnos
12

13                                     WILLIAMS & CONNOLLY LLP

14

15

16                                     By: */s/ Zachary K. Warren*

17                                             Attorneys for Steve B. Mikhov and
                                               Roger Kirnos
18

19                                     FOLEY & LARDNER LLP

20

21                                     By: */s/ Pamela L. Johnston*

22                                             Attorneys for Amy Morse

23

24

25

26

27

28

## **FILER'S ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Neal K. Katyal, attest under penalty of perjury that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: February 20, 2026                    */s/ Neal K. Katyal*

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## LOCAL RULE 11-6.2 CERTIFICATION

The undersigned, counsel of record for Steve B. Mikhov and Roger Kirnos certifies that this brief complies with the page limit set by the Court in its order dated February 19, 2026, Dkt. 163.


DATED: February 20, 2026                    /s/ Neal K. Katyal