UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:    Ford Motor Company v. Steve B. Mikhov *et al.*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) Order GRANTING Defendants' Motion to Dismiss WITHOUT LEAVE TO AMEND (Dkt. [160]) JS-6**

    Before the Court is a motion filed by Defendants Steve B. Mikhov, Amy Morse, and Roger Kirnos (collectively, "Defendants") to dismiss Plaintiff Ford Motor Company's ("Plaintiff") Second Amended Complaint ("SAC").  *See* Dkt. # 160 ("*MTD*").  Plaintiff opposed, *see* Dkt. # 161 ("*Opp.*"), and Defendants replied, *see* Dkt. # 164 ("*Reply*").  On March 6, 2026, the Court heard oral argument on the motions.  After considering the papers and the parties' oral arguments, the Court **GRANTS** Defendants' motion to dismiss **WITHOUT LEAVE TO AMEND**.

I.    <u>Background</u>

    A.    <u>Factual Background</u>

    This case arises out of allegedly inflated billing statements in "Lemon Law" cases. *See* Dkt. # 157 ("*SAC*").  The SAC alleges as follows:

    Mr. Mikhov is a founding partner and former managing partner of Knight Law Group.  *Id.* ¶ 20.  Mr. Mikhov was the "ringleader" of Defendants' activities, responsible for creating Knight Law Group's "Fee Motion Department" and the practices that department used, which included billing time for work not performed or contemporaneously billed.  *See id.*  Mr. Mikhov's responsibilities at Knight Law Group included marketing activities, client intake, and approval of settlements.  *Id.*  Though Mr. Mikhov claims to have separated from Knight Law Group several years ago, Mr. Mikhov

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                              Date: March 10, 2026

Title:    Ford Motor Company v. Steve B. Mikhov *et al.*

"has maintained his role working with other Defendants" on the activities alleged and continues to profit from those activities.  *See id.*  Ms. Morse is a partner at Knight Law Group who supervises the firm's litigation department.  *Id.* ¶ 21.  Ms. Morse testified that she rarely performed many of the billable tasks for which she later requested compensation, so Plaintiff concludes that Ms. Morse must have known that many of the time entries submitted in her name were false.  *Id.*  Mr. Kirnos is a partner at Knight Law Group, who also participated in the activities that Plaintiff alleges.  *Id.* ¶ 22.

Knight Law Group was "an enterprise."  *See id.* ¶ 23.  Defendants and other attorneys and employees worked in tandem to conduct Knight Law Group's operations, "including by creating fictitious time sheets that misrepresent tasks completed and the amount of time spent on cases, and regularly split the proceeds unlawfully obtained by relying on these false and fraudulent billing records to obtain fee awards."  *See id.*  Defendants provided direction to others at Knight Law Group, including members of the Fee Motion Department.  *Id.*  The Fee Motion Department created "time records in which they falsely add[ed] fictious tasks, assign[ed] the amounts to be billed to the fictitious task, and [chose] a billing attorney to whom the fictitious task [would] be attributed."  *See id.*  Those records supported fee demands and applications.  *See id.*

California's Lemon Law, the Song-Beverly Consumer Warranty Act, Civil Code § 1790 *et seq.*, allows prevailing attorneys to recover fees and expenses from defendants, provided that the prevailing attorneys submit fee applications reflecting the work they performed on the case and support those applications with timesheets and other billing records.  *Id.* ¶ 26; *see* Cal. Civ. Code § 1794(d).  Those fee applications are necessary only if the parties do not reach a settlement.  *See id.* ¶ 26.  From 2015 through the present, Defendants submitted fake time records to support their fee applications, on which Plaintiff and courts relied, in addition to making inflated demands for payment from Plaintiff to extract settlements.  *Id.* ¶¶ 27, 30.  As a result of Plaintiff's reliance on those records, Plaintiff wrongfully paid more than $100 million to Defendants.  *Id.* ¶ 28.  Through its limited preliminary discovery in this action, Plaintiff learned that members of Knight Law Group testified that the firm's attorneys frequently did not record time contemporaneously.  *Id.* ¶ 31.  Instead, Defendants "oversaw a process by which the purported time entries . . . were generated by non-lawyer members of a dedicated Fee Motion Department after the fact—often years after the purported work in question—to support [the firm's] fee demands against Ford and other auto manufacturers."  *Id.*  Knight Law Group admitted that it did not begin keeping contemporaneous time records until 2018.  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:25-cv-04550-MWC-PVC                                    Date: March 10, 2026

Title:    Ford Motor Company v. Steve B. Mikhov *et al.*

---

In various depositions, Plaintiff learned about Defendants' billing practices. *See id.* ¶ 32. Mr. Kirnos, "who testified that his duties as partner included 'supervising and addressing matters involving settlement of cases [and] fee motion[s],' claimed he did not know whether attorneys contemporaneously entered their time." *Id.* ¶ 33. Ms. Morse "testified that 'a lot of what [she did was] on the administrative end of things, and [] would not be billed to a case,'" but Plaintiff found that "she billed unnatural and sometimes impossible amounts" on certain cases. *See id.* ¶ 34. Mr. Mikhov testified that "he would only record his time spent working on cases 'from time to time' and in a 'hodgepodge' fashion, and that he would 'recreate' 'what [time he could] remember' sometimes a month or two after he would have done the purported task." *Id.* ¶ 35. After doing so, Mr. Mikhov would provide a piece of paper with that time to Mr. Kirnos "or Guadalupe Lopez, a non-lawyer employee of Knight Law Group who worked in the Fee Motion Department, to enter into fee motions." *See id.* Mr. Mikhov "also testified that 'the fee motion department . . . ha[d] authority to enter time for various tasks for [Mr. Mikhov] absent [Mr. Mikhov] handing them a written sheet or Mr. Kirnos handing them a written sheet' with purported time entries." *See id.*

Another Knight Law Group employee, Elin Howard, provided testimony that members of the Fee Motion Department were "divided by role into 'drafters,' 'reviewers,' and 'finalizers'" and tasked with "'prepar[ing] to file the motion for attorney's fees and costs after a case had settled,' and to that end would 'review attorney time billing.'" *See id.* ¶ 36. "Members of the team would review attorney tasks that [Knight Law Group] attorneys had input into [the firm's] billing software to compile an invoice in a new, separate document for filing a fee petition." *See id.* Ms. Howard stated that where information as to time allocation was insufficient, the firm permitted team members to "'input an attorney task and identify a particular set of hours for that attorney.'" *See id.* Ms. Howard estimated that "'on a regular basis'" and "for '[m]ore than 50 percent' of case files she handled," she would input an estimate in support of Knight Law Group's fee petitions as to how long an attorney spent on a task. *See id.* Though the firm provided guidelines to determine the amounts that employees should add for specified tasks, Ms. Howard eventually "began to 'rely on [her] experience' and 'history with the company' to 'set a certain amount of time' for a particular task." *Id.* For example, Ms. Howard would input one hour for "'Initial communication with client,' nine-tenths of an hour for 'Analyze vehicle documentation,' and half an hour for 'Draft Complaint,'" though Ms. Howard did not confirm the accuracy of those entries with the relevant attorneys. *See id.*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                          Date: March 10, 2026

Title:     Ford Motor Company v. Steve B. Mikhov *et al.*

      Mr. Mikhov stated that the Fee Motion Department had authority to enter time for
various tasks for him even if he did not hand them a "written sheet," and Mr. Kirnos had
testified that his responsibilities included supervising the preparation of fee motions. *See
id.* ¶ 37. Defendants all received payment for their work at Knight Law Group. *See id.*
¶ 39. Defendants also intended that Plaintiff rely on the records that the Fee Motion
Department created when paying fee awards and negotiating settlements. *Id.* ¶ 41.

      Plaintiff has reviewed thousands of Knight Law Group's billing invoices and time
records between 2013 and 2024, which Plaintiff believes represent roughly 11–12% of all
consumer warranty cases that Defendants worked during that time. *Id.* ¶ 42. Plaintiff has
identified various indications that Defendants' billing records were false. *Id.* Ms. Morse
testified under oath that since becoming a "supervising attorney" at Knight Law Group in
2016, she has not propounded written discovery, drafted motions, or directly
communicated with clients. *Id.* ¶ 44. But Knight Law Group's billing statements "include
many hundreds of entries for [Ms.] Morse that purport to attribute her time for performing
these very tasks during this period, including frequent entries for communicating with
clients and opposing counsel and hundreds of entries claiming to have drafted written
discovery and complaints." *Id.* Despite those admissions, Ms. Howard noted that she
reviewed attorney billing statements as recently as 2021 stating that Ms. Morse prepared
complaints and drafted discovery. *See id.* ¶ 45.

      Individual attorneys, including Mr. Kirnos and Ms. Morse, worked more than 24
billable hours in a day several times. *Id.* ¶ 46. Those attorneys also worked more than 20
billable hours in a day on several occasions. *Id.* Ms. Morse worked more than 24 hours in
a day on 34 separate occasions. *Id.* ¶ 47. One of those days, November 30, 2016, shows
Ms. Morse as having worked 57.5 hours, and another day, March 23, 2017, indicates that
Ms. Morse worked 31.3 hours. *Id.* Time entries also represent that Ms. Morse worked
between 20 and 23.9 hours in a day 38 different times. *Id.* Between February and April
2017, Ms. Morse averaged 16.5 hours of work per day (including weekends). *Id.* In 2016,
Plaintiff can identify that Ms. Morse billed 3,106.45 hours, and that Ms. Morse billed
3,975.4 hours in 2017. *Id.* ¶ 48. Ms. Morse has testified that since 2016 she worked 60
hours per week and dedicated at least 70% of her time to non-billable administrative and
supervisory work. *Id.* Ms. Morse was the billing attorney on 95% of the cases that Plaintiff
has reviewed, and she was the billing attorney on 92% of the entries with the description
"Draft Complaint," even though Ms. Morse testified that she spent little time drafting legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                          Date: March 10, 2026

Title:   Ford Motor Company v. Steve B. Mikhov *et al.*

documents. *Id.* ¶ 50. Between 2016 and 2024, billing records show more than 4,600 distinct entries with the description "Communicate with Client," though Ms. Morse testified that she never billed or recorded time for client communications. *Id.* Kristina Stephenson-Cheang, an associate with Knight Law Group, is shown to have worked more than 24 hours on seven different occasions. *Id.* ¶ 51. Ms. Stephenson-Cheang was the billing attorney on 90% of the cases that Plaintiff has reviewed. *Id.*

Plaintiff includes compilations of questionable entries. *See id.* ¶¶ 53–54. Exhibit A "is a chart of 489 task descriptions in which an attorney billed to draft a meet-and-confer letter and perform unspecified legal research." *Id.* ¶ 53. Plaintiff avers that "[t]here is no plausible reason why those two separate tasks should so frequently be combined other than to mask the time actually spent on the two tasks." *Id.* Many of the entries in Exhibit A overlap with the 24-plus hour days previously referenced. *Id.*; *see* Dkt. # 157-1. Plaintiff identifies that "many letters were drafted without any economy of scale reduction in time allotments." *See id.* ¶ 53. Exhibit B is a chart detailing entries for drafting Requests for Admissions, and Plaintiff here too highlights that "there are no economies of scale over time . . . ." *See id.* ¶ 54. Knight Law Group has relied on entries of this kind to obtain payments from Plaintiff, including as recently as August 2025. *See id.* ¶ 55.

Moreover, Mr. Mikhov has submitted hundreds of invoices that contain fee entries with no date. *Id.* ¶ 56. "Such no-date entries exceed 1,200 hours," and "[n]early all entries are a combination of (i) initial communication with client, (ii) initial evaluation of client's claims, and (iii) analysis of vehicle documents," which "describe identical tasks with only slight wording differences." *Id.* In 2016, Mr. Mikhov was Knight Law Group's second-highest biller, with a total of 1,350.10 hours in just the cases for which Plaintiff has invoices. *Id.* ¶ 57. From 2016 to 2025, Mr. Mikhov had 487 separate time entries for "Initial communications with client and evaluation of clients' claims," which totaled approximately 518.6 hours. *Id.* ¶ 58. 388 of those entries were for either exactly 1.0 hours or 0.8 hours. *Id.* Over the same period, Mr. Mikhov "made vague entries for 'analyze vehicle documentation' on all or nearly all of the matters in which Ms. Morse" billed for "Draft Complaint." *Id.* In 2017, Plaintiff has access to records showing that Mr. Mikhov logged 1,799 hours. *Id.* And on July 31, 2017, Mr. Mikhov billed a total of 18.1 hours based on 84 separate entries in 59 separate cases. *Id.* Defendants' actions extended to the settlement process, causing Plaintiff to overpay "not just for attorney's fees, but for compensatory damages and civil penalties as well . . . ." *Id.* ¶ 61. Large fee requests also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                              Date: March 10, 2026

Title:      Ford Motor Company v. Steve B. Mikhov *et al.*

"disincentivize auto manufacturers from proceeding to fee hearings—where auto manufacturers end up paying both sides to fight over how much more to pay . . . ."  *See id.*

Plaintiff could not have identified such billing inaccuracies when reviewing matters in isolation.  *Id.* ¶ 62.  Courts would have provided smaller fee awards to Defendants, and Plaintiff would not have settled fee claims had it known of Defendants' billing irregularities.  *Id.*  Mr. Kirnos stated in *Pedante v. Ford Motor Company et al.* (ML 18-02814-AB) that "[t]here is a presumption attached to our billing because there is a presumption that we are going to be ethical, that we are not going to submit lies to this Court.  And we did not."  *Id.* ¶ 63.  Still, Mr. Kirnos represented that Knight Law Group had kept billing records contemporaneously even though it had not done so.  *Id.*

In certain cases, courts reduced Defendants' fee requests.  For *In re Volkswagen "Clean Diesel" Marketing, Sales Practice and Product Liability Litigation* (MDL No. 2672 CBR (JSC)), United States District Judge Charles R. Breyer reduced Defendants' requested attorneys' fees.  *Id.* ¶ 64.  Judge Breyer highlighted that the plaintiffs' attorneys worked a significant number of hours while the case was stayed.  *Id.*  Judge Breyer also "excluded bills for vague entries and clerical tasks, as well as work performed for other plaintiffs, not involved in the fee application, whose cases actually went forward to trial."  *Id.*  Separately, for instances when Defendants have received fee awards, their receipt has created "a snowball effect by leading to less scrutiny of their time records."  *Id.* ¶ 65.  Mr. Mikhov and Mr. Kirnos have signed declarations attaching previous fee awards and identifying various judges who had approved their fee applications, many of which are included as exhibits to the SAC.  *Id.*

After Plaintiff filed this lawsuit, Knight Law Group altered its actions in certain cases.  Shortly after Plaintiff filed this case, Knight Law Group submitted a supplemental billing invoice in *Solisperez v. Ford*, Los Angeles Superior Court Case No. 23PSCV01411, which removed time attributed to Ms. Morse.  *Id.* ¶ 69.  Since Plaintiff filed this lawsuit, Knight Law Group "has begun withdrawing requests for payment for time entries" attributed to Ms. Morse and other Knight Law Group attorneys.  *Id.*

As part of cases comprising *In Re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*, No. 2:18-ml-02814 (C.D. Cal.) (collectively, the "DPS6 Cases"), Knight Law Group submitted multiple declarations that Plaintiff believes to constitute perjury.  *See id.* ¶ 71.  One of those cases was *Pedante*, where Mr. Mikhov

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                          Date: March 10, 2026

Title:    Ford Motor Company v. Steve B. Mikhov *et al.*

submitted numerous time entries and attested that "[a]ll time billing entries were completed
contemporaneously with each dated entry or near in time to the work performed" and that
he "personally reviewed the billing entries to ensure that they appropriately reflected the
time expended." *See id.* Some of the time entries for Ms. Morse in that case listed
"Communication with Client" and "Draft Complaint," although Ms. Morse testified that
she did not conduct such tasks at the time of those entries (July 17). *See id.* For Mr.
Mikhov, the billing entries reflected "one hour for 'Initial communication with Client;
Analyze Vehicle documentation,'" along with other non-contemporaneous time records
that the Fee Motion Department created. *See id.* The SAC highlights that these time entries
comport with Ms. Howard's testimony. *See id.* The same billing and attestations were
present in *Fort v. Ford Motor Company*, No. 2:17-cv-06631 (C.D. Cal.) and *Bagwell v.
Ford Motor Company*, No. 2:17-cv-06632 (C.D. Cal.). *See id.* ¶ 72. In *Fort* and *Bagwell*,
Mr. Kirnos submitted a declaration "attaching 'revised billing' to support a 'revised . . . fee
request'" after Plaintiff opposed the fee request. *See id.* ¶ 73. Mr. Kirnos swore that the
time sheets were "true and correct." *See id.* Across the two cases, Plaintiff agreed to pay
Knight Law Group and associated firms a total of $146,978.48. *See id.*

Mr. Mikhov submitted a declaration attesting to the truth, contemporaneous nature,
and personal review of timesheets in *Medina v. Ford Motor Company*, No. 2:29-cv-00078
(C.D. Cal.). *See id.* ¶ 74. Those timesheets included entries for Ms. Morse beginning in
December 2018 showing "Communication with Client," "Draft Complaint" and "Draft
[Notice of Deposition]," although Ms. Morse has testified that she did not perform those
tasks during this period. *See id.* The entries also include line items from Mr. Mikhov
showing one hour for "Initial communication with Clients and evaluation of Clients'
claims." *See id.* Ultimately, Plaintiff paid Knight Law Group $30,000 for fees in that case.

In *O'Brien v. Ford Motor Company*, No. 2:24-cv-04969 (C.D. Cal.) and *Daggett v.
Ford Motor Company, et al.*, No. 2:24-cv-04970 (C.D. Cal.), both of which were DPS6
cases, Mr. Kirnos submitted a sworn declaration attaching timesheets and attesting that
"[a]ll time billing entries were completed contemporaneously with each dated entry or near
in time to the work performed" and that he "personally reviewed the billing entries to
ensure that they appropriately reflect the time expended." *See id.* ¶ 75; *see id.*, Exs. P, Q.
Those applications included time entries for those specific payments, but also for work
performed across all DPS6 cases. *See id.*, Exs. P, Q. This documentation included time
entries for Ms. Morse beginning in July 2016 stating that she had attended numerous
hearings. *See id.* ¶ 75. The applications also included time created or supplemented by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:     Ford Motor Company v. Steve B. Mikhov *et al.*

the Knight Law Group Fee Motion Department, and Plaintiff ultimately paid the firm and associated firms $73,600.58 in fees. *See id.*

Defendants used the U.S. mail and interstate wires to file fee applications, negotiate settlements, and receive payments for their billing records. *Id.* ¶ 77. These include the following cases:

- *Buck v. Ford Motor Company*, Stanislaus County Superior Court Case No. 2008745, where the court ordered Plaintiff to pay Defendants $135,500 based on records that Knight Law Group filed and which included entries by Ms. Morse for March 23, 2017, when she billed 31.3 hours.
- *Duk v. Ford Motor Company*, San Diego County Superior Court Case No. 2016-00012779, where the court ordered Plaintiff to pay Defendants $101,450.78 based on records that Knight Law Group filed and included entries by Ms. Morse for November 30, 2016, when she billed 57.5 hours.
- *Burgess v. Ford Motor Company*, San Bernardino County Superior Court Case No. CIVDS1620111, where Ms. Morse's billing records contributed to a $10,675.16 fee award that Plaintiff paid to Defendants.
- *Duenas v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC638306, where Ms. Morse's billing records contributed to a $12,405.20 award that Plaintiff paid to Defendants.
- *Orosco v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC638222, where Ms. Morse's billing records contributed to a $15,005 award that Plaintiff paid to Defendants.

*Id.* Knight Law Group also included Ms. Morse's billing records in cases against other auto manufacturers. *Id.* ¶ 77 n.1.

In *Berroteran v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC542525, Mr. Kirnos submitted a declaration that Knight Law Group had recorded time contemporaneously or "near in time to the work performed," even though many of the entries predated when Knight Law Group began recording time contemporaneously. *Id.* ¶ 78. The court awarded $807,127.50 in attorneys' fees, and Plaintiff issued a $851,493.51 check to Knight Law Group. *Id.* And in *Coon v. Ford Motor Company*, Riverside County Superior Court Case No. MCC1300767, Mr. Mikhov submitted a declaration in support of Defendants' fee application representing that Defendants recorded

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                              Date: March 10, 2026

Title:      Ford Motor Company v. Steve B. Mikhov *et al.*

time contemporaneously, even though many of the time entries predated when Knight Law Group began doing so. *Id.* ¶ 79. The court awarded Knight Law Group $543,554 in attorneys' fees, and Plaintiff mailed a check for $709,004.12. *Id.* The same was true in *Brown v. Ford Motor Company*, Butte County Superior Court Case No. 160060, and *Margeson v. Ford Motor Company*, Los Angeles County Superior Court Case No. BC549430, where Plaintiff ultimately mailed checks for $843,528.13 and $481,744.53 (total), respectively. *Id.* ¶¶ 80–81. Mr. Mikhov did the same in *Anderson v. Ford Motor Company*, San Joaquin County Superior Court Case No. 39-2013-00299512-CU-BC-STK, and Plaintiff mailed a check for $813,554.48 to Plaintiff. *Id.* ¶ 82. In each case where Plaintiff paid Defendants' fee awards, Plaintiff sent checks via FedEx. *See id.* ¶¶ 77–82. Reliance on Defendants' representations has harmed Plaintiff both financially and reputationally. *See id.* ¶¶ 84–87.

As to the elements of a RICO claim, "Defendants and Unnamed Enterprise Members have associated with one another in the Enterprise for the common purpose of preparing and  filing fraudulent billing records in support of fee demands, inflating the value of negotiated settlements, unethically splitting fraudulently obtained fees," and working in pursuit of the other harms that flow from falsified records. *Id.* ¶ 89. Mr. Mikhov, Mr. Kirnos, and Ms. Morse oversaw the firm's operations and directed employees to create the fee statements in question, and they were financially intertwined as partners at Knight Law Group. *Id.* ¶¶ 90–91. Defendants engaged in business "involving clients in different states, auto manufacturers engaged in interstate commerce, and the federal courts' interstate e-filing system." *Id.* ¶ 82.

B.      Procedural Background

On May 21, 2025, Plaintiff filed its original complaint against Knight Law Group LLP, Steve B. Mikhov, Amy Morse, Roger Kirnos, Dorothy Becerra, The Altman Law Group, Bryan C. Altman, Wirtz Law APC, and Richard M. Wirtz. *See* Dkt. # 1. After the Defendants had filed motions to dismiss, *see* Dkts. # 61, 65, 66, but before the Court heard the motions, Plaintiff filed the First Amended Complaint ("FAC") on August 22, 2025. *See* Dkt. # 83 ("*FAC*"). On September 12, 2025, all listed defendants moved to dismiss the FAC. *See* Dkts. # 88, 89, 92. On November 24, 2025, the Court granted the motions to dismiss. *See* Dkt. # 147 ("*First MTD Order*"). On January 5, 2026, Plaintiff filed the SAC against only Mr. Mikhov, Ms. Morse, and Mr. Kirnos, pleading two causes of action:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                          Date: March 10, 2026

Title:     Ford Motor Company v. Steve B. Mikhov *et al.*

Civil RICO (under 18 U.S.C. § 1962(c)) and Civil RICO Conspiracy (under 18 U.S.C. § 1962(d)).

The Court assumes familiarity with its November 24, 2025, order dismissing Plaintiff's FAC and incorporates its analysis from that order herein. *See First MTD Order*.

II.     Legal Standard

Rule 8 requires a complaint to clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008). Pleadings that are "verbose, confusing and conclusory" are subject to dismissal. *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). A plaintiff fails to comply with Rule 8 if "all defendants are lumped together in a single, broad allegation." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a cause of action's elements that are "supported by mere conclusory statements[] do not suffice." *Id*. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the false representations' time, place, and specific content. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). A pleader must "'identify

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:    Ford Motor Company v. Steve B. Mikhov *et al.*

the who, what, when, where, and how of the misconduct charged . . . .'" *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)).   The allegations "must set forth more than neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  In essence, the defendant must be able to adequately answer the fraud allegations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

III.    Discussion[1]

    A.    *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine stems from the First Amendment's guarantee of "the right of the people . . . to petition the Government for redress of grievances."  U.S. Const. amend. I; *see E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).  "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa*, 437 F.3d at 929 (citing *Empress LLC v. City & Cnty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)).  This immunity extends to the use of "the channels and procedures" of state and federal courts to advocate causes. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009).

---

[1] Plaintiff argues that the Court should deny Defendants' motion because they failed to meet and confer under Local Rule 7-3. *See Opp.* 13 n.1.  Defendants argue that they complied with the Local Rules because "[t]his motion raises the same grounds for dismissal as the two prior motions," and the parties met and conferred concerning arguments on those prior motions. *See Reply* 15–16 n.5.  The Local Rules do not contemplate that meeting and conferring on an earlier motion to dismiss negates the need for meeting and conferring on later motions of the same kind. *See* L.R. 7-3.  And the Court takes seriously litigants' obligation to meet and confer, so Defendants' argument as to Plaintiff's lack of prejudice does not cure their violation.  Because the Court prefers to decide issues on the merits, it will do so, but the Court admonishes Defendants to scrupulously comply with the Local Rules in all future proceedings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:      Ford Motor Company v. Steve B. Mikhov *et al.*

"Under the *Noerr-Pennington* rule of statutory construction, we must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Sosa*, 437 F.3d at 931. The Supreme Court has counseled that courts must not "lightly impute to Congress an intent to invade" the freedoms protected by the Bill of Rights. *Noerr*, 365 U.S. at 138. "In determining whether the burdened conduct falls under the protection of the Petition Clause, we must give adequate 'breathing space' to the right of petition." *Sosa*, 437 F.3d at 931–32 (quoting *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 531 (2002)); *cf. Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341–42 (1974) (pronouncing that "[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters," since such protection "assure[s] to the freedoms of speech and press that 'breathing space' essential to their fruitful exercise."). As a result, the "breathing space principle" protects "activities that do not come within the protection of the speech clause in their own right." *Sosa*, 437 F.3d at 933 (identifying "certain classes of speech not meriting protection in themselves," like certain false statements (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)), and "certain conduct, not in itself speech" (citing *Buckley v. Valeo*, 424 U.S. 1, 17 (1976)) that "is protected in order adequately to protect the actor's ability to exercise his free speech rights"). "Consistent with the breathing space principle, we have recognized that, in the litigation context, not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected by the *Noerr-Pennington* doctrine." *Sosa*, 437 F.3d at 934 (citing *Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, 944 F.2d 1525, 1528–29 (9th Cir. 1991)); *see United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021) ("The constitutional right to petition includes the right of access to the courts and therefore most litigation activities . . . are immunized from statutory liability." (citation omitted)).

Courts apply a three-part analysis to determine if the *Noerr-Pennington* doctrine immunizes a defendant's allegedly illegal conduct. *See B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022). First, a court must ask "whether the lawsuit imposes a burden on petitioning rights," after which it must analyze "whether the alleged activities constitute protected petitioning activity." *Kearney*, 590 F.3d at 644. Lastly, a court must analyze "whether the statute[] at issue must be construed to [avoid] that burden." *Id.* "If the answer to each step is 'yes,' then a defendant's conduct is immunized under *Noerr-Pennington*." *B&G Foods*, 29 F.4th at 535 (citing *Sosa*, 437 F.3d at 932). "But such immunity is not absolute, as 'neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham petitions.'" *Id.* (citing *Sosa*, 437 F.3d at 932). Courts analyze the whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:      Ford Motor Company v. Steve B. Mikhov *et al.*

the "sham exception" is applicable under step two of the *Noerr-Pennington* analysis. *See Sosa*, 437 F.3d at 938.

   i.  *Whether Plaintiff's Claims Burden Petitioning Rights*

  Because many of Plaintiff's arguments echo those of its opposition to Defendants' first set of motions to dismiss, *see generally* Dkt. # 103 ("*Opp. to First MTD*"), the Court incorporates by reference the analysis of its prior order, *see generally First MTD Order*.

  Plaintiff first argues in its latest opposition that "the lawsuit does not target petitioning activity, but instead alleges a scheme to defraud Ford of millions of dollars by making fraudulent settlement demands and submitting perjured declarations." *Opp.* 14. It argues that because perjury lacks First Amendment protection, any declarations to courts which could be considered perjury and any false statements to Plaintiff while settling cases would fall outside the ambit of *Noerr-Pennington* protection. *See id.* 14–15.

  Plaintiff's argument incorrectly attempts to reframe the scope of the *Noerr-Pennington* analysis and places the cart before the horse. "The question at this stage is not whether the conduct at issue is fraudulent and abusive, but instead whether the success of [Plaintiff's] lawsuit would constitute a burden on petitioning rights." *Kearney*, 590 F.3d at 645. Plaintiff's lawsuit focuses on Defendants' ability to recover fees when pursuing Lemon Law cases, including the representations that Defendants make to courts when doing so. Filings "in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something, can be described as petitions without doing violence to the concept." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005). Plaintiff does not contend that Defendants lack the right to seek fees stemming from these cases, nor could it. *See* Cal. Civ. Code § 1794(d) (stating, as part of the Song-Beverly Act, that a plaintiff can recover attorneys' fees). And even if the Court assumes *arguendo* that it should focus on only the declarations that Defendants filed in support of their fee petitions rather than the act of seeking fees generally, those declarations must constitute "representations" or "arguments to support their request that the court do or not do something . . . ." *See Freeman*, 410 F.3d at 1184.

  Because *Kearney* is the most relevant example of the Ninth Circuit engaging Plaintiff's argument, the Court will reiterate the application of that precedent here. In that case, the plaintiff "contend[ed] that, if her lawsuit were successful, it would not discourage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:       Ford Motor Company v. Steve B. Mikhov *et al.*

future eminent domain proceedings, just fraudulent behavior in those lawsuits." *See Kearney*, 590 F.3d at 645. Plaintiff echoes the same argument when stating that its "lawsuit does not target petitioning activity, but instead . . . making fraudulent settlement demands and submitting perjured declarations." *See Opp.* 14. Following the example of *Kearney*, the Court here must remind Plaintiff that "this question of burden is separate from the question of whether the conduct challenged included intentional misrepresentations or fraud." *See Kearney*, 590 F.3d at 645.

     *Sosa* buttresses this conclusion. Not only did *Sosa* determine that "[a] successful RICO claim would quite plainly burden [defendant's] ability to settle legal claims short of filing a lawsuit," *see Sosa*, 437 F.3d at 932, but the *Sosa* court did not question the validity or truthfulness of the defendant's demand letters in the first step of the *Noerr-Pennington* analysis, *see id.* at 932–33. In avoiding a conflation of step one with the sham litigation inquiry under step two, the court asked only whether petitioning activity included the defendant's "ability to settle legal claims short of filing a lawsuit." *See id.* Because it did, the plaintiff's RICO suit "pose[d] a burden on [the defendant's] communication of demand letters . . . ." *Id.* at 933. The step one inquiry requires no more, and the Court will not short-circuit the larger *Noerr-Pennington* analysis by collapsing the relevant questions.

     Plaintiff's authority does not change the Court's conclusion. Plaintiff relies heavily on *U.S. ex rel. Wilson v. Maxxam, Inc.*, No. C 06-7497 CW, 2009 WL 322934 (N.D. Cal. Feb. 9, 2009). The crux of *Wilson* is that the plaintiffs sought "to impose liability, not for the act of 'petitioning' the government, but for specific acts committed in the course of 'petitioning' the government." *See Wilson*, 2009 WL 322934, at *6. In attempting to draw a distinction between petitioning and the acts committed while petitioning, *Wilson* reads out the Ninth Circuit's guidance that, under the *Noerr-Pennington* doctrine, "'conduct incidental to' a petition is protected by *Noerr-Pennington* if the petition itself is protected." *Freeman*, 410 F.3d at 1184 (citing *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078–79 (9th Cir. 2004)). Plaintiff does not contend that fee petitions are not protected, only that Defendants' submissions in the course of seeking fees lacked protection. *See generally SAC*. And *Wilson* hinges its step one analysis on *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir. 1982). First, and especially important given the context here, when evaluating "protests with the [Interstate Commerce Commission] that were 'spurious, baseless, and prosecuted without regard to their merit,'" *Clipper Exxpress* relied on the sham exception at step two rather than the step one inquiry. *See Wilson*, 2009 WL 322934, at *7 (citing *Clipper Exxpress*, 690 F.2d at 1253). The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                          Date: March 10, 2026

Title:      Ford Motor Company v. Steve B. Mikhov *et al.*

*Clipper Exxpress* court only engaged step one when evaluating whether the *Walker Process* doctrine was relevant, holding that "when there is a conspiracy prohibited by the antitrust laws, and the otherwise legal litigation is nothing but an act in furtherance of that conspiracy prohibited by the antitrust laws, general antitrust principles apply, notwithstanding the existence of Noerr immunity." *See Clipper Exxpress*, 690 F.2d at 1263 (referencing *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965)).  Plaintiff's theory of the case renders *Clipper Exxpress* inapposite.  Rather than arguing that legal fee declarations were part of a larger unlawful scheme, the entirety of Plaintiff's case hinges on the specific fee declarations being unlawful, *see generally SAC*, inverting the *Clipper Exxpress* analysis.  Stated differently, in *Clipper Exxpress*, the lack of protection for litigation activity is based on unlawful actions beyond the scope of any litigation; here, Defendants' actions overall would not be unlawful but for the allegedly illegal litigation activity.

Plaintiff's other source of relevant authority comes from *Pyankovska v. Abid*, 65 F.4th 1067 (9th Cir. 2023), a case that the Court already deemed an inappropriate comparator.  *See First MTD Order* 13–14.  In addition to incorporating by reference the same analysis here, the Court clarifies one source of contention stemming from its previous order.  Plaintiff argues that the Court should deem an inaccurate declaration to be of the same ilk as illegally intercepted evidence.  *See Opp.* 17 n.3.  But the Court understands the use of evidence stemming from the insertion of a recording device into a child's backpack to surreptitiously record private conversations without consent to do so, *see Pyankovska*, 65 F.4th at 1072, as being different in kind from the misrepresentations that the SAC chronicles.  That is especially true when considering *Pyankovska*'s incorporation of *Freeman*'s description that documents "'in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something[] can be described as petitions without doing violence to the concept.'"  *See id.* at 1077 (quoting *Freeman*, 410 F.3d at 1184).  Even assuming *arguendo* that Plaintiff is correct in its attempt to exclude Defendants' suits or larger fee petitions from the inquiry, a declaration in support of a fee petition constitutes the kind of representation that *Freeman* contemplates; the product of a secret recording device does not.

For these reasons, Plaintiff's claims burden petitioning rights.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                           Date: March 10, 2026

Title:     Ford Motor Company v. Steve B. Mikhov *et al.*

          ii.     *Whether Defendants' Conduct Was Based on Protected Petitioning Activity*

          a.     *Petitioning Activity*

Plaintiff offers no argument as to the first inquiry in step two, and the Court's analysis from its previous dismissal order applies. *See First MTD Order* 14–15. The lone argument in Plaintiff's opposition potentially applicable to this inquiry is that "[e]ven if petitioning activity were implicated at all, Ford's lawsuit clearly imposes no plausible burden on such activity to the extent it involves fee requests that were not adjudicated in courts." *See Opp.* 15 n.2. But *Sosa* foreclosed this contention by determining that "[p]relitigation communications demanding settlement of legal claims must be afforded *Noerr–Pennington* protection . . . ." *See Sosa*, 437 F.3d at 942. Plaintiff offers no way to distinguish a prelitigation settlement demand from a post-litigation fee demand—if anything, the fact that the latter arose out of litigation would place it more comfortably inside the tent of petitioning activity. The logic of the Ninth Circuit's *Sosa* conclusion applies equally here. "Even though the prelitigation settlement demands were not themselves litigation, they were part of the 'breathing space required' for effective exercise of petitioning rights." *Kearney*, 690 F.3d at 645 (quoting *Sosa*, 437 F.3d at 933).

Accordingly, Defendants' conduct was based on protected petitioning activity, regardless of whether Defendants directly petitioned a court when seeking fees.

          b.     *Application of "Sham Exception"*

"A party cannot claim the protection of the *Noerr-Pennington* doctrine if it engaged in 'sham' litigation." *Easton Diamond Sports, LLC v. Monsta Athletics, LLC*, 720 F. Supp. 3d 849, 861 (C.D. Cal. 2024) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014)). There are three circumstances in which the sham litigation exception may apply: "first, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful," *Sosa*, 437 F.3d at 938 (citing *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)), "second, where the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' and for unlawful purposes," *id.* (quoting *Kottle*, 146 F.3d at 1060), and third, if the purportedly unlawful conduct "consists of making intentional misrepresentations to the court, litigation can be deemed a sham if 'a party's knowing fraud upon, or its intentional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:      Ford Motor Company v. Steve B. Mikhov *et al.*

misrepresentations to, the court deprive the litigation of its legitimacy,'" *Kottle*, 146 F.3d at 1060 (quoting *Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 159 (9th Cir. 1993)).

Again, the parties disagree on whether the proper scope of the inquiry is the whole Lemon Law litigation or just the fee petition portion of that litigation. *Compare MTD* 19, *with Opp.* 19. The Court understands the entire Lemon Law litigation to be the correct scope of analysis. The Song-Beverly Act provides that:

> If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

Cal. Civ. Code § 1794(d). The statute deems a fee award to be a portion of the overall judgment and pays those fees not to the lawyer, but to the client. *See id.* (stating that "the buyer shall be allowed . . . to recover as part of the judgment" the relevant fees). Plaintiff does not offer any textual or structural indication that the Song-Beverly drafters understood the fee petition process to be a proceeding distinct from the larger case. And even if a party can appeal a grant of attorneys' fees alone, the subject of that appeal can still comfortably fall within the ambit of the "entire proceeding." *See Kottle*, 146 F.3d at 1063 (stating that the third possibility under the sham exception applies only if the party "so misrepresented the truth . . . that the entire . . . proceeding was deprived of its legitimacy").

*Theofel* does not persuade the Court otherwise. There, the defendant subpoenaed plaintiffs' internet service provider, and a court determined the subpoena "was massively overbroad," "patently unlawful," a "transparent[] and egregious" violation of the Federal Rules, and suggestive of at least gross negligence. *See Theofel*, 359 F.3d at 1071–72. Defendants are correct that because the company subject to the subpoena was a third party,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:    Ford Motor Company v. Steve B. Mikhov *et al.*

as to that party, the subpoena was the entire proceeding.[2]  *See id.*; *Reply* 12.  The same cannot be said as to the relationship between Defendants' fee petitions and Plaintiff here.

Plaintiff asserts that the third circumstance of the sham exception applies, which is "when the at-issue conduct 'consists of making intentional misrepresentations to the court'" such that those misrepresentations "'deprive the litigation of its legitimacy.'"  *See Opp.* 19 (quoting *Kottle*, 146 F.3d at 1060).  Plaintiff does not argue that Defendants' actions so deprived the whole Lemon Law litigation of its validity.  *See generally id.*  Accordingly, the sham exception does not apply because Defendants' actions did not so infect the Lemon Law proceedings as to render them illegitimate.  *See First MTD Order* 15–21.

Even if the proper analysis focused on only the fee petitions, the third prong of the sham exception remains inapplicable to these facts.  The parties disagree on the standard the Court should use when evaluating whether a misrepresentation deprived the fee process of legitimacy—Plaintiff believes that the Court should "require no more than materiality," *see Opp.* 21, while Defendants argue that "the sham litigation exception is not triggered by just any material misrepresentation, but only those that 'so misrepresented the truth' they deprived the 'entire' litigation of legitimacy," *see Reply* 12–13 (quoting *Kottle*, 146 F.3d at 1063).  Plaintiff's argument proceeds by relying on authority from the Seventh and Fourth Circuits.  *See Opp.* 21 (citing *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 843 (7th Cir. 2011) and *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 401–03 (4th Cir. 2001)).  The Seventh Circuit opinion did not reach the question as to whether an exception to the *Noerr-Pennington* doctrine applied.  *See Mercatus Grp.*, 641 F.3d at 849 ("We need not address whether the Hospital's alleged misrepresentations rendered the Board proceedings a sham.").  The Fourth Circuit reasoned that "[a]lleged frauds that 'do not infect the core' of a case will receive *Noerr-Pennington* immunity because regardless of the alleged fraud, the outcome would have been the same."  *See Baltimore Scrap*, 237 F.3d at 402.  In that case, as here, "[w]hether to condemn [defendants'] activities . . . is a different question than whether to abrogate *Noerr-Pennington* immunity for conduct that does not deprive the lawsuit of legitimacy."  *See id.*  And because the outcome of the lawsuit in question would have been the same regardless

---

[2] Defendants also correctly identify that *Theofel* addressed the objective baselessness inquiry under the first prong of the sham exception, rather than the misrepresentation inquiry under the third prong; Plaintiff bases its argument on the latter.  *See Reply* 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:    Ford Motor Company v. Steve B. Mikhov *et al.*

of the defendants' actions, the *Baltimore Scrap* court deemed the misrepresentation exception inapt.  *See id.* at 403.

The same is true here.  Plaintiff argues that "the fact that Defendants were entitled to some fees is of no moment, as the materiality inquiry is not binary . . . ."  *See Opp.* 23. But Plaintiff's argument lacks a limiting principle.  Plaintiff's theory of the case is that Defendants spread their scheme across many different cases, making it possible for the increase in their fees to go undetected.  *See SAC* ¶¶ 4, 11, 18, 52, 64.  Assuming the truth of Plaintiff's allegations, the Court can only conclude that the outcome—granting the vast majority of Defendants' fee requests—would remain the same.  Since Plaintiff asks the Court to apply an outcome-determinative standard, *see Opp.* 21, but does not explain what constitutes "a discernable and objective financial impact," *see id.* 23, the Court is left wanting.[3]  Moreover, Defendants identify that "[t]he six fee petitions attached to Ford's SAC alone include 21 unique billers other than Ms. Morse, Ms. Stephenson-Cheang, and Mr. Mikhov, and the SAC does not allege that any of those billers had false billing entries." *See MTD* 20.  Plaintiff offers no way for the Court to determine that Defendants' actions infected the core of their fee applications when their representations were only one part of those applications, and admittedly a part so insignificant that they were "undetect[able]." *See SAC* ¶ 4.

The Court's issues with Plaintiff's application of its own standard is not an acceptance of that standard.  Instead, the Court must follow the guidance of this Circuit, which *Kottle* offers and from which Plaintiff's standard departs—that the relevant misrepresentations must have deprived the "entire . . . proceeding of its legitimacy."  *See Kottle*, 146 F.3d at 1063; *cf. Freeman*, 410 F.3d at 1185 n.2 ("Our conclusion that the defense as a whole was not a sham also establishes that this isolated instance of litigation misconduct would not, if proven, deprive the defense as a whole of its legitimacy.").  For the same reasons the Court has outlined above and those identified in its previous dismissal order, *see First MTD Order* 19–20, the third prong of the sham exception does not apply.

---

[3] Though the Court gave Plaintiff an opportunity to clarify its standard at oral argument, Plaintiff was unable to provide a limiting principle for its "discernable and objective" standard. Accordingly, the Court can only wonder why a wrongful $1 increase—objectively discernable— would differ from a wrongful $100, $1,000, or $10,000 increase under Plaintiff's description of materiality.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:    Ford Motor Company v. Steve B. Mikhov *et al.*

iii.    *Whether Statute Must Be Construed to Avoid Burden*

Plaintiff argues that the *Noerr-Pennington* doctrine is "nonetheless inapplicable [because] the statute at issue 'unambiguously applies to [Defendants'] conduct." *See Opp.* 24 (quoting *Pyankovska*, 65 F.4th at 1078). As the Court detailed previously, the Ninth Circuit explained that "RICO's general definition of racketeering activity does not in terms clearly reach the conduct at issue here," so "we turn to the particular RICO predicates alleged here to determine whether they do so or whether, instead, they are susceptible of a construction that avoids the serious constitutional question of Petition Clause immunity." *See Sosa*, 437 F.3d at 939; *First MTD Order* 21. Presumably because the Court previously quoted the Ninth Circuit's conclusion in *Sosa* that the mail and wire fraud statutes "[did] not unambiguously reach demands to settle reasonably based legal claims," *Sosa*, 437 F.3d at 940, and thus did not unambiguously reach the submission of inflated fee petitions, *see First MTD Order* 21, Plaintiff has focused on an entirely different RICO predicate.

Now, Plaintiff asserts, the relevant statute is 18 U.S.C. § 1621. *See Opp.* 24. But Defendants identify a fundamental flaw in Plaintiff's contention—for all of the RICO predicates that 18 U.S.C. § 1961(1) lists to define "racketeering activity," 18 U.S.C. § 1621 is not among them. *See* 18 U.S.C. § 1961(1). And Plaintiff offers no basis for the Court to find atextual RICO predicates. *See Opp.* 24; *Pac. Recovery Sols. v. United Behavioral Health*, 481 F. Supp. 3d 1011, 1027 (N.D. Cal. 2020) ("Offenses that can constitute predicate acts for a RICO violation are listed in 18 U.S.C. § 1961(1)."). To be sure, a separate portion of Plaintiff's brief once cites 18 U.S.C. § 1503, which is a RICO predicate. But the plain text of the statute does not unambiguously reach the conduct at issue, *see* 18 U.S.C. § 1503, and "[i]t is not the role of the Court to make parties' arguments for them," *Cordon v. Wachovia Mortg., a Div. of Wells Fargo Bank, N.A.*, 776 F. Supp. 2d 1029, 1040 (N.D. Cal. 2011) (citation omitted).[4] As a result, the Court must construe the RICO statute to avoid burdening protected petitioning activity.

_____

[4] At oral argument, Plaintiff suggested that it should have the opportunity to file a surreply to respond to Defendants' argument regarding 18 U.S.C. § 1621 and provide new arguments regarding 18 U.S.C. § 1503. Plaintiff lacks any entitlement to a surreply on this issue. Defendants argued that "RICO and its predicates do not unambiguously cover the conduct at issue," *see MTD* 21, and Plaintiff opted to focus the entirety of its opposition argument on 18 U.S.C. § 1621 without addressing that this statute is not a listed RICO predicate, *see Opp.* 24. Plaintiff may be dissatisfied with its own briefing on the issue, but that dissatisfaction does not entitle it to a do-over.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:    Ford Motor Company v. Steve B. Mikhov *et al.*

---

### iv.    Determination

Based on the Court's findings above, Defendants are entitled to *Noerr-Pennington* immunity for their petitioning activity, and dismissal is appropriate on this basis alone. Still, to the extent that there is any doubt as to the appropriate application of the *Noerr-Pennington* doctrine when evaluating Plaintiff's motion to dismiss, the Court finds below that the SAC fails to plead a substantive RICO claim.

### B.    Civil RICO

Under 18 U.S.C. § 1962(c), to successfully plead a claim Plaintiff must plausibly allege that Defendants participated in (1) the conduct (2) of an enterprise that affects interstate commerce, (3) through a pattern (4) of racketeering activity (5) causing injury to the plaintiff's business or property by the conduct constituting the violation.  *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).  Failure to plead even one of these elements precludes a plaintiff from stating a claim.  *See, e.g.*, *Ruggles v. Ige*, No. 20-cv-00247-DKW-KJM, 2020 WL 6731704, at *2 n.2 (D. Haw. Nov. 16, 2020) ("Because failure to satisfy this element alone sinks [plaintiff's] Section 1962(c) claim, analysis of the other elements is unnecessary." (citing *Living Designs*, 431 F.3d at 361)).

### i.    RICO Enterprise[5]

An enterprise under the RICO statute "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals

---

[5] Defendants identify that the SAC contradicts Plaintiff's previous pleading, providing sufficient grounds for the Court to reject those allegations as false.  *See MTD* 22.  "A party cannot amend pleadings to 'directly contradict[t] an earlier assertion made in the same proceeding.'"  *Air Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).  And there may be grounds for the Court to determine that Plaintiff's latest pleading contradicts its previous pleadings.  *Compare FAC* ¶ 19 (detailing enterprise consisting of Knight Law Group and "a consortium of other Defendants, retained experts, and legal professionals, including other law firms and attorneys who are brought in as co-counsel to handle trial work on purposefully overstaffed cases"), *with SAC* ¶ 88 (limiting enterprise definition solely to individuals associated with Knight Law Group).  But

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                                  Date: March 10, 2026

Title:     Ford Motor Company v. Steve B. Mikhov *et al.*

associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "To show the existence of [a RICO] enterprise . . . plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish that purpose." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Though the Court incorporates its previous analysis by reference, *see First MTD Order* 22–26, it will again analyze each of those elements in turn.

> a.     *Common Purpose*

To plead a common purpose sufficient to prove the existence of a RICO enterprise, a plaintiff typically must show more than the parties engaging in ordinary business conduct and an ordinary business purpose. *See In re Ariz. Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1060 (D. Ariz. 2018) (citation omitted). Instead, the defendants engaged in the enterprise must have been "bound by common purpose . . . ." *See Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016) (citation omitted). "Courts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises." *Gomez v. Guthy-Renker, LLC*, No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015).

The Court previously identified that Plaintiff's allegations "lack[ed] an indication that the parties came together for the purpose of fraudulently inflating their billing, rather than having formed for the purpose of bringing Lemon Law cases but having utilized poor billing practices in doing so." *See First MTD Order* 23. The SAC suffers from the same principal defect.

Still, Plaintiff begins by attacking a strawman: that a lawyer could not be subject to RICO liability. *See Opp.* 25. The Court never suggested otherwise, but instead rejected Plaintiff's reliance on a "syllogism that because there are allegations of fraudulent billing, and the parties co-counseled on cases involving such billing, then the parties must have co-counseled with the purpose of billing fraudulently." *First MTD Order* 25. Though Plaintiff has dropped its claims against counsel outside of Knight Law Group, it still fails to plead that the Defendants came together for the common purpose of creating fictitious billing records. Instead, Plaintiff's allegations "lack an indication that the parties came together for the purpose of fraudulently inflating their billing, rather than having formed for the

---

because the Court prefers to decide issues on the merits, it will not rule on this question at this juncture.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:     Ford Motor Company v. Steve B. Mikhov *et al.*

purpose of bringing Lemon Law cases but having utilized poor billing practices in doing so." *See id.* 23.

The SAC describes the "common purposes" of the alleged enterprise to be "preparing and filing fraudulent billing records and perjured declarations in support of fee demands, fraudulently inflating the value of negotiated settlements, delaying and/or depriving clients of compensation due to them or increasing their clients' tax liability to advance their own financial interests, and funneling fraud proceeds into attorney distributions and extravagant purchases." *SAC* ¶ 89. As an initial matter, the SAC includes no specific allegations as to Defendants delaying or depriving clients of compensation, increasing their clients' tax liability, or funneling fraud proceeds into attorney distributions and extravagant purchases. *See generally id.* The extent of Plaintiff's argument on the remaining two "purposes" is that there was a "consistent pattern of fraud." *See Opp.* 28. Stripping the SAC of its conclusory allegations, *see Maye v. Online Land Sales LLC*, No. 2:23-cv-00173-DAD-CKD, 2024 WL 382294, at *10 (E.D. Cal. Feb. 1, 2024) (citing *Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1174–75 (E.D. Cal. 2017)), Plaintiff has not pleaded that the purpose binding Defendants was to conduct the alleged scheme.

The Supreme Court has explained that although "proof used to establish the[] separate elements [of enterprise and pattern] may in particular cases coalesce, proof of one does not necessarily establish the other." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also id.* ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."). And Plaintiff offers no justification as to why the Court should decide that this case is one where proof of a pattern "necessarily" establishes proof of common purpose. *See id.* That defect is especially fatal when alternative explanations as to what binds Defendants abound. *See Iqbal*, 556 U.S. at 681 (finding that the court must draw all reasonable inferences in favor of the non-moving party but must also assess whether there are "more likely explanations" for defendant's conduct); *GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 447 (N.D. Cal. 2017) ("Among other things, when faced with two possible explanations for a defendant's behavior, a plaintiff cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the defendant's alternative explanation." (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1008 (9th Cir. 2013))).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:     Ford Motor Company v. Steve B. Mikhov *et al.*

    Although Plaintiff relies heavily on *In re Outlaw Laboratory, LP Litigation*, that case is not to the contrary.  There, the various entities associated with the enterprise came together to pursue litigation against a number of websites that sold male enhancement products, and the court found the demand letters at the center of the plaintiff's allegations in those demand letters to be "objectively baseless as a matter of law such that no reasonable litigant could realistically expect success on the merits."  *See* No. 18-cv-840-GPC-BGS, 2020 WL 5552558, at *2–4 (S.D. Cal. Sept. 16, 2020).  Given the volume of that litigation—with the relevant law firm sending an estimated 4,000 demand letters—and the lack of an alternative explanation as to the association and actions among the relevant actors, there were sufficient facts to infer that these actors were bound together by the common purpose of threatening frivolous litigation.  *See generally id.*  Those actions are far afield of Defendants' actions here, since the SAC does not dispute that Defendants brought meritorious Lemon Law cases, were entitled to some fees, but relied on inappropriate billing practices when doing so.  *See generally SAC.*  There was not a more plausible explanation for the *Outlaw* defendants' common purpose, while the SAC indicates several more plausible purposes for Defendants' association here.

    The cases the Court cited in its previous order on this issue apply in equal force to the SAC.  *See First MTD Order* 23–26; *see In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., and Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202–03 (C.D. Cal. 2011) (determining that the complaint alleged "no more than that Defendants' primary business activity—the design, manufacture, and sale or lease of Toyota vehicles—was conducted fraudulently," which is "incompatible with the types of conduct RICO was enacted to prevent"); *In re Jamster Mktg. Litig.*, No. 05-cv-0819, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) ("Without the adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose."); *see also id.* ("Plaintiffs cannot meet their particularized pleading burden by artfully inserting modifiers such as 'unauthorized charges' or 'fraudulently collecting monies' in an attempt to show a common purpose."); *Eclectic Props.*, 751 F.3d at 997–98 (highlighting need for "a significant level of factual specificity" for a court to reasonably infer that ordinary business conduct is plausibly part of a fraudulent scheme).  Plaintiff's allegations are again limited to the idea that Defendants' billing—the primary activity at any for-profit law firm hoping to stay in business—was conducted fraudulently.  These allegations are "incompatible with the types of conduct RICO was enacted to prevent."  *See In re Toyota*, 826 F. Supp. 2d at 1203.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                          Date: March 10, 2026

Title:    Ford Motor Company v. Steve B. Mikhov *et al.*

Without more, the SAC has not alleged a common purpose among Defendants.

### b.    Structure / Organization

"An ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'"  *Odom*, 486 F.3d at 552 (quoting *U.S. v. Cagnina*, 697 F.2d 915, 921–22 (11th Cir. 1983)).  For purposes of § 1962(c), a single individual or entity cannot be both the RICO enterprise and an individual defendant.  *See Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) (holding that plaintiff could not assert RICO claim against defendant bank because bank was alleged to be a RICO enterprise).  "While accepting the 'distinctness' principle, . . . . [t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001); *see also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992) (explaining that "if the enterprise was a corporation, the fact that there was but one stockholder would not shield that individual from suit," so long as the enterprise was "'either formally'" or "'practically . . . separable from the individual.'" (quoting *United States v. Benny*, 786 F.2d 1410, 1416 (9th Cir. 1986)).  In California, "[a] partnership is an entity distinct from its partners."  Cal. Corp. Code § 16201.

The SAC explains that Defendants are associated with Knight Law Group LLP.  *See SAC* ¶ 88.  It notes that "the Enterprise has a governing structure that operates a command hierarchy led by" Mr. Mikhov, Ms. Morse, and Mr. Kirnos, with different roles for members, and a governing set of rules and practices.  *See id.*  The SAC alleges that Mr. Mikhov was "the scheme's ringleader," since "he was responsible for creating [Knight Law Group's] Fee Motion Department as a formal system to create fictitious time entries in Lemon Law cases for work never performed or contemporaneously billed."  *Id.* ¶ 20.  Ms. Morse "supervises [Knight Law Group's] litigation department" who "knowingly [made] and/or [allowed] the creation of fraudulent entries."  *Id.* ¶ 21.  Mr. Kirnos is alleged to have done the same.  *See id.* ¶ 22.  The SAC includes allegations as to roles within the Fee Motion Department.  Ms. Elin Howard provided testimony that members of the Fee Motion Department were "divided by role into 'drafters,' 'reviewers,' and 'finalizers'" and tasked with "'prepar[ing] to file the motion for attorney's fees and costs after a case had settled,' and to that end would 'review attorney time billing.'"  *See id.* ¶ 36.  "Members of the team would review attorney tasks that [Knight Law Group] attorneys had input into [the firm's]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:     Ford Motor Company v. Steve B. Mikhov *et al.*

billing software to compile an invoice in a new, separate document for filing a fee petition." *See id.*

Defendants argue that the Court cannot accept that Knight Law Group as a legal entity satisfies the structure / organization prong. They first refer to inconsistencies between the FAC and the SAC, an issue the Court will not rule on at this juncture considering its preference for deciding on the merits. *See supra* Section III.B.i n.3. Defendants' other argument is that "the allegations still sound as an association-in-fact enterprise with Knight Law as a RICO person." *See MTD* 23. But Defendants read in a distinctiveness requirement more stringent than the RICO statute and case law require. The statute states that "[i]t shall be unlawful for any person *employed by* . . . an enterprise . . . to conduct or participate, directly or indirectly, *in the conduct of such enterprise's affairs* through a pattern of racketeering activity . . . ." *See* 18 U.S.C. § 1962(c) (emphasis added). And § 1961(4) provides that an enterprise "includes any individual, *partnership*, corporation, association, or other legal entity . . . ." *See* 18 U.S.C. § 1961(4) (emphasis added). Defendants' briefing does not identify another case where a court determined that a pleading failed to satisfy the structure / organization prong despite alleging that the defendants operated through a legal entity that was not itself a defendant. The SAC alleges that Defendants operated through Knight Law Group, a partnership, which satisfies the definition of an enterprise for this portion of the inquiry. And allowing Knight Law Group—which is not a defendant—to serve as the relevant legal entity under this prong of the enterprise analysis comports with the purpose of the RICO statute. *See Cedric Kushner Promotions*, 533 U.S. at 162 ("Whether the Act seeks to prevent a person from victimizing, say, a small business, . . . or to prevent a person from using a corporation for criminal purposes, . . . the person and the victim, or the person and tool, are different entities, not the same." (citations omitted)).

Accordingly, the SAC has satisfied the structure / organization prong of the enterprise inquiry.

        *c.*    *Longevity*

The Court previously determined that Plaintiff had satisfied the longevity element despite its shortcomings as to the other elements of the enterprise inquiry. *See First MTD Order* 28–29. Defendants' briefing does not attempt to change this conclusion. Accordingly, the SAC satisfies the longevity element.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:      Ford Motor Company v. Steve B. Mikhov *et al.*

 

       *ii.*    *Determination*

Because Plaintiff has not alleged a RICO enterprise since it failed to plead a common purpose, Plaintiff cannot state a RICO claim. *See Stitt v. Citibank, N.A.*, 748 Fed. Appx. 99, 101 (9th Cir. 2018) ("By failing to plead an enterprise, Appellants did not state a plausible RICO claim under 18 U.S.C. § 1962(c) or (d)."). As a result, the Court does not reach the remaining factors and **GRANTS** Defendants' motion to dismiss Plaintiff's RICO claim under 18 U.S.C. § 1962(c).

C.    RICO Conspiracy

Plaintiff second claim is one for RICO Conspiracy under 18 U.S.C. § 1962(d). *See generally SAC*. "There can be no RICO conspiracy without having committed a RICO violation." *Flores v. Emerich & Fike*, 416 F.2d 885, 912 (E.D. Cal. 2006); *see Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (identifying that "the district court held that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy. We agree."). Here, the Court has already determined that the SAC fails to adequately plead a substantive RICO violation under 18 U.S.C. § 1962(c). Because Plaintiff's "allegations under 1962(c) are insufficient . . . their allegation under 1962(d) fails as well." *Flores*, 416 F. Supp. 2d at 912. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's RICO Conspiracy claim.

IV.    Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). In the Ninth Circuit, courts should grant leave to amend with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotation marks and citation omitted). Where a party does not request leave to amend, the Court need not grant it. *See Armbruster v. WageWorks, Inc.*, 953 F. Supp. 2d 1072, 1078 (D. Ariz. 2013) ("Armbruster has not requested leave to amend

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-04550-MWC-PVC                    Date: March 10, 2026

Title:   Ford Motor Company v. Steve B. Mikhov *et al.*

and recent Ninth Circuit authority suggests the Court need not grant leave to amend when no request is made." (citing *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012))). Plaintiff here has not requested leave to amend, and the Court already granted leave to amend in its previous dismissal order. *See generally Opp.*; *First MTD Order.* In light of these two considerations, in addition to the extensive time and resources that Plaintiff has already dedicated to drafting its complaints, leave to amend is inappropriate.

V.    Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss **WITHOUT LEAVE TO AMEND**. This Order closes the case.

**IT IS SO ORDERED.**

                                                                                    :

**Initials of Preparer**    TJ